## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| NATURAL PRODUCTS GROUP, LLC, et al.,[1] | ) Case No. 10-____ (  ) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS NOTICING, CLAIMS AND BALLOTING AGENT IN THESE CHAPTER 11 CASES NUNC PRO TUNC TO THE PETITION DATE

Natural Products Group, LLC ("NPG") and its affiliated debtors and debtors in possession (collectively, the "Debtors") file this application (the "Application") for entry of an order, the proposed form of which is attached as **Exhibit A**, pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving the employment and retention of AlixPartners, LLP ("AlixPartners") as claims, noticing, and balloting agent in the above-captioned cases (the "Chapter 11 Cases"), to be effective *nunc pro tunc* as of the Petition Date (as defined below). The facts and circumstances supporting this Application are set forth below and attested to by the Declaration of Michelle C. Campbell (the "Campbell Declaration"), attached hereto as **Exhibit B** and incorporated by reference herein. In further support of this Application, the Debtors respectfully represent as follows:

---

[1]     The debtors and debtors in possession in these cases are Natural Products Group, LLC (Fed. EIN 86-1119470); Arbonne Intermediate Holdco, Inc. (Fed. EIN 87-0735363); Levlad Intermediate Holdco, Inc. (Fed. EIN 87-0735367); Arbonne International, LLC (Fed. EIN 33-0762250); Levlad, LLC (Fed. EIN 95-2973496); Arbonne Institute of Research and Development, LLC (Fed. EIN 33-0762250); Arbonne International Holdings, Inc. (Fed. EIN 20-5585671); and Arbonne International Distribution, Inc. (Fed. EIN 20-5585608).

## I.     Jurisdiction, Venue & Statutory Predicate

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     The statutory predicate for the relief requested herein is 28 U.S.C. § 156(c), as supplemented by Bankruptcy Rule 2002 and Local Rule 2002-1(f).

## II.     Background

3.     On January 27, 2010 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases pursuant to the filing of voluntary petitions for relief under chapter 11 of 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have, pursuant to a separate motion, moved this Court for an order authorizing the joint administration of these Chapter 11 Cases.

4.     As of the date hereof, no request for appointment of a chapter 11 trustee or examiner has been made and no official committee has been appointed in connection with these Chapter 11 Cases.

5.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the Chapter 11 Cases, are set forth in detail in the Affidavit of Mark I. Lehman in Support of First Day Motions and Applications sworn to on the 27th day of January, 2010 previously filed in these Chapter 11 Cases and incorporated herein by reference.

## III.     Relief Requested

6.     The Debtors seek entry of an order, in the proposed form attached hereto as **Exhibit A**, authorizing and approving the employment and retention of AlixPartners as the

official claims, noticing, and balloting agent in connection with these Chapter 11 Cases, pursuant to 28 U.S.C. § 156(c) and its appointment as an agent of the Court under Bankruptcy Rule 2002 and Local Rule 2002-1(f), all of the foregoing (collectively, the "<u>Claims Agent</u>") under the proposed terms of employment as set forth in the engagement letter between AlixPartners and Arbonne International, LLC,[2] dated as of November 18, 2009 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as **Exhibit C**.

## IV. **Basis for Relief**

### A. Basis Under Statute and Bankruptcy Rules

7. Under Bankruptcy Rule 2002, the Bankruptcy Court may direct that a person other than the Clerk of the Court serve notices upon creditors and parties in interest. Similar authorization is found under Local Rule 2002-1(f). Moreover, 28 U.S.C. § 156(c), which governs the staffing and expenses of the Court, authorizes the Court to procure the services of third parties to assist with noticing and other chapter 11 administrative matters:

> Any court may utilize facilities or services, either on or off of the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the cost of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

8. The employment and retention of AlixPartners as Claims Agent is therefore expressly authorized under the Bankruptcy Code, the Bankruptcy Rules and Local Rule 2002-1(f).

---

[2] Although the Engagement Letter was executed by one of the Debtors, AlixPartners has been directed to provide services to all Debtors and, correspondingly, this Application seeks AlixPartners' retention as Claims Agent on behalf of all Debtors.

**B. AlixPartners is Well-Qualified to Act as Claims Agent**

9.     AlixPartners is one of the country's premier chapter 11 administrators with substantial experience in, among other things, noticing, ballot tabulation, claims processing, and claims reconciliation. AlixPartners has acted as official claims, balloting and/or noticing agent in several recent bankruptcy cases, from a variety of jurisdictions, including Delta Financial, Global Power Equipment Group Inc., Communication Dynamics, Inc., Ameriserve Food Distribution, Coram Healthcare Corporation, FoxMeyer Corporation, Sleepmaster, PhyAmerica Physicians Group, and Outsourcing Solutions, among others.

10.     In light of AlixPartners' experience and the efficient and cost-effective methods that it has developed, the Debtors, their estates and their creditors will clearly benefit from the appointment of AlixPartners as the Claims Agent in these Chapter 11 Cases.

**C. The Need for the Services to be Provided by AlixPartners**

11.     The creditor matrices in the Debtors' cases include a large number of parties to whom notices must be sent. The Debtors will need assistance in managing and addressing the myriad of administrative issues amongst the Debtors and the parties in interest that will likely arise in these Chapter 11 Cases. The Debtors anticipate seeking court approval to utilize an electronic proof of claim and noticing procedure.

12.     In view of the Debtors' expansive product distribution network, there is an unprecedented number of parties, exceeding 1 million, with whom contact is anticipated during the pendency of these Chapter 11 Cases. The parties in interest in the Chapter 11 Cases will benefit from AlixPartners' expertise in bankruptcy case management, coupled with its expertise in electronic, internet, and computer based methods and systems used within bankruptcy cases for communication purposes.

13.     In addition, this large number of creditors and parties in interest will

4

undoubtedly impose heavy administrative and other burdens on the Court and the Office of the Clerk of the Court (the "Clerk's Office"). The Debtors believe that the employment of AlixPartners as Claims Agent will (a) relieve the Clerk's Office of a significant administrative burden, (b) avoid delay in processing proofs of claim and interests, (c) reduce legal fees that would be otherwise incurred in connection with the retrieval of proof of claim copies from the Clerk's Office and responding to numerous claim-related inquiries and (d) reduce costs of notice to parties and provide an efficient medium to communicate case information.

## D. Scope of Services to be Provided by AlixPartners

14. To relieve and assist with the burdens described above, this Application seeks entry of an order appointing AlixPartners as Claims Agent in these Chapter 11 Cases and authorizing AlixPartners, through its professionals as well as its electronic, internet and computer-based methods and systems, to render the following services:

- Assist the Debtors with preparing and filing of the bankruptcy schedules and statements of financial affairs.
- Process and mail all notices including the initial bankruptcy notices and bar date notice.
- Receive and process all proofs of claim and maintain the claims register.
- Track all claims transfers and update ownership of claims in the claims register accordingly.
- Assist with the overall claims and contracts resolution process and provide both the Debtors and its counsel access to the claims and contracts data.
- Provide all voting ballots to necessary parties; quantify the ballot results and provide a final report to the Court.
- Develop and host a case management and communications website.
- Work at the direction of the Debtors and counsel to assist with planning and directing Chapter 11 related communications to employees, vendors, customers and parties in interest.
- Be available for testimony as necessary.

- Provide various bankruptcy information management, claims processing, noticing, back-office and administrative services throughout the Chapter 11 Cases as requested by the Debtors that fall within AlixPartners' expertise and that are mutually agreeable.

- Provide continued assistance as a solicitation agent in connection with the Chapter 11 process.[3]

15. Upon the Court's entry of such an order, AlixPartners will comply with all requests of the Clerk's Office and follow the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c). The Debtors also request that the Clerk's Office release all filed claims directly to AlixPartners at that time.

16. In connection with performance of the Claims Agent services listed above, the Debtors understand and AlixPartners acknowledges that, among other things:

   a. AlixPartners will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent in these Chapter 11 Cases;
   b. AlixPartners will not be an agent of the United States and will not act on behalf of the United States; and
   c. AlixPartners will not employ any past or present employees of the Debtors in connection with its work as the Claims Agent in these Chapter 11 Cases.

## E. Compensation for the Services

17. The Debtors propose that compensation to be provided to AlixPartners for services rendered as set forth in detail within the Engagement Letter (the "Fee Structure"), which is incorporated herein for all purposes.

18. AlixPartners' hourly-based services for its work in the Chapter 11 Cases will be charged at the following discounted hourly rates:

| | |
|---|---|
| Managing Directors | $685 |
| Directors | $595 |
| Vice Presidents | $425 |

---

[3] This is not an exhaustive list of services. Further, it should be noted that the Debtors anticipate requesting AlixPartners to provide certain claims and noticing services on a fully electronic basis.

|                   |       |
|-------------------|-------|
| Associates        | $335  |
| Analysts          | $235  |
| Paraprofessionals | $120  |

19.     Additionally, AlixPartners' case management and website-related services will include non-hourly charges as set forth below:

| Description | Charge |
|-------------|--------|
| Develop a case management and communications website | $10,000 one-time charge |
| Data hosting | $2,500 per month |

20.     The Fee Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to fairly compensate AlixPartners for its work and to cover fixed and routine overhead expenses.

21.     AlixPartners reviews and revises its billing rates on January 1 of each year.

22.     In addition to the above compensatory fees for professional services rendered by AlixPartners personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses (subject to limits and approvals within the Engagement Letter[4]) incurred in connection with these Chapter 11 Cases, including transportation costs, lodging, food, telephone, copying and messenger services. In addition, AlixPartners may use third-party vendors for

_____

[4] The aggregate amount of travel, lodging and meals expenses to be reimbursed shall not exceed $25,000 without the consent of the Debtors, which consent shall not be unreasonably withheld. For any mailing expenses or group of mailing related expenses that exceeds $25,000 in the aggregate, AlixPartners shall request that the Debtor review, approve and advance those expenses to AlixPartners prior to the required date of payment. Upon receipt of any such request, the Debtors agree to immediately advance AlixPartners the amount of such expense(s), and AlixPartners shall not be responsible for any delays caused by the failure of the Debtors to timely respond to such request.

7

certain services, which will be billed to the Debtors at the cost incurred by AlixPartners. Further, as part of the Fee Structure payable to AlixPartners under the terms of the Engagement Letter, the Debtors have agreed to certain limitations of liability and indemnification obligations as described therein.

23.     As set forth in the Engagement Letter, AlixPartners has relationships with and may periodically find it desirable to augment its consulting staff with independent contractors (an "Independent Contractor") in these Chapter 11 Cases.     In such cases, (i) AlixPartners will file, and require the Independent Contractor to file, Rule 2014 affidavits indicating that the Independent Contractor has reviewed the list of the interested parties in this case, disclosing the Independent Contractor's relationships, if any, with the interested parties and indicating that the Independent Contractor is disinterested; (ii) the Independent Contractor must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Debtors; and (iii) the Independent Contractor must represent that he/she will not work for the Debtors or other parties in interest in these Chapter 11 Cases during the time AlixPartners is involved in providing services to the Debtors. AlixPartners' standard practice is to charge for an Independent Contractor's services at the rate AlixPartners pays the Independent Contractor.

24.     As AlixPartners is not being retained in these Chapter 11 Cases as a "professional person" under section 327(a) of the Bankruptcy Code,[5] and because AlixPartners will only be charged with administrative functions in these Chapter 11 Cases, the Debtors do not believe that AlixPartners should be required to file fee applications or otherwise seek Court approval for payment for fees earned or reimbursement for expenses incurred.

---

[5] As an administrative agent and an adjunct to the Court, the Debtors do not believe that AlixPartners is a "professional" whose retention is subject to approval under Bankruptcy Code section 327 or whose compensation is subject to approval of the Court under Bankruptcy Code sections 330 and 331.

25.     In the event these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, the Debtors request that AlixPartners continue to be paid for its services until the claims filed in these Chapter 11 Cases have been completely processed, and that if claims agent representation is necessary in the converted chapter 7 cases, that AlixPartners would continue to be paid in accordance with 28 U.S.C. section 156(c).

26.     The Debtors believe that the proposed rates to be charged by AlixPartners are reasonable and appropriate for services of this nature. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the Debtors hereby request that the fees to be charged by AlixPartners together with AlixPartners' necessary and actual expenses be allowed as administrative expenses of the Debtors' estates.

27.     Therefore, the Debtors propose to pay AlixPartners, in the ordinary course and without need for further notice or order of the Court, its billing rates as set forth above and in the Engagement Letter and to reimburse AlixPartners for its expenses according to its customary reimbursement policies.

## V.     Other Matters Pertaining to the Retention of AlixPartners

### A. Pre-Petition Dealings with the Debtors

28.     Beginning on or about November 10, 2009 and extending to the Petition Date, AlixPartners has from time to time provided a variety of services to the Debtors pursuant to the Engagement Letter, which services included, without limitation, those related to the Claims Agent role listed in paragraph 14 above.

29.     Pursuant to the terms of the Engagement Letter, AlixPartners was provided an advance retainer in the initial amount of $100,000.00 (the "Retainer"). The Retainer was received on or about November 20, 2009 from the Debtors' funds and is in the current

9

amount of $100,000.00.[6]  As reflected in AlixPartners' books and records and the actual and estimated invoices sent to the Debtors, $381,351.41[7] was received from, or otherwise credited to the account of, the Debtors for fees earned and expenses incurred relating to AlixPartners' activities assisting the Debtors in preparing for the Chapter 11 Cases in the 90 days up to and including the Petition Date.  Subsequent to the Petition Date, the actual amount of such fees and expenses will be compared with any estimated amounts and the Retainer and the Debtors' accounts will be accordingly adjusted.

## B. Disclosures and Other Information as to Eligibility for Retention

30.     There are no arrangements between AlixPartners and any other entity for the sharing of compensation received or to be received in connection with these Chapter 11 Cases.

31.     The Debtors do not owe AlixPartners any amount for services performed or expenses incurred prior to the Petition Date and, thus, AlixPartners is not a prepetition creditor of the Debtors.

32.     AlixPartners is not being retained in these Chapter 11 Cases as a "professional person" under section 327(a) of the Bankruptcy Code.  However, to the best of the Debtors' knowledge, and except as set forth in the Disclosed Matters (as defined in the Campbell Declaration)[8], (A) AlixPartners is a "disinterested person" under sections 101(14) and 1107(b) of the Bankruptcy Code, and (B) AlixPartners does not (i) hold or represent any interest adverse to the Debtors or the estates; (ii) have any connection with the Debtors, creditors, any other party in

---

[6] The balance of the Retainer will continue to be held by AlixPartners to apply to its final invoice for fees earned and expenses incurred at the end of this engagement.

[7] Reflects a write-off of $10,358.00 for fees and expenses relating to November, 2009.

[8] AlixPartners will periodically review its files during the pendency of these Chapter 11 Cases and, to the extent that AlixPartners discovers any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention, AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; or (iii) employ any person that is related to a judge of this Court or the United States Trustee.

33. For all of the foregoing reasons, the Debtors believe that the retention of AlixPartners as the Claims Agent in these Chapter 11 Cases is appropriate and in the best interests of the Debtors and their estates and creditors.

## VI. Notice

34. Notice of this Application has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the agents for the Prepetition Lenders, the Debtors' 30 largest unsecured creditors on a consolidated basis (including counsel if known), and all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## VII. No Prior Request

35. No prior motion for the relief requested herein has been made to this or any other court.

*[signature page follows]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, (a) authorizing and approving the employment and retention of AlixPartners, effective as of the Petition Date, as Claims Agent pursuant to 28 U.S.C. § 156(c) to perform the services described herein; and (b) granting such further relief as the Court deems just and proper.

Dated: January 27, 2010

NATURAL PRODUCTS GROUP, LLC,
(for itself and on behalf of each of its
affiliated debtors as debtors and debtors in
possession)

By: _____

Mark I. Lehman
Chief Financial Officer and Secretary

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| NATURAL PRODUCTS GROUP, LLC, <u>et al.</u>,[1] | Case No. 10-_____ (   ) |
| | Jointly Administered |
| Debtors. | |

## ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS NOTICING, CLAIMS AND BALLOTING AGENT IN THESE CHAPTER 11 CASES <u>NUNC PRO TUNC TO THE PETITION DATE</u>

Upon the application (the "<u>Application</u>")[2] of the above-captioned debtors and debtors in

possession (the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), pursuant to 28 U.S.C. § 156(c)

and Bankruptcy Rule 2002 and Local Rule 2002-1(f), authorizing and approving the employment

and retention of AlixPartners, LLP ("<u>AlixPartners</u>") as Claims Agent in these Chapter 11 Cases

pursuant to the terms of that certain engagement letter, dated as of November 18, 2009, attached

to the Application as **Exhibit C** (the "<u>Engagement Letter</u>"); and upon consideration of the

representations made in the Application and the Campbell Declaration attached to the

Application as **Exhibit B**; and the Court having jurisdiction to consider the Application and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Application and the relief requested therein being a core proceeding pursuant to

---

[1]     The debtors and debtors in possession in these cases are Natural Products Group, LLC (Fed. EIN 86-1119470); Arbonne Intermediate Holdco, Inc. (Fed. EIN 87-0735363); Levlad Intermediate Holdco, Inc. (Fed. EIN 87-0735367); Arbonne International, LLC (Fed. EIN 33-0762250); Levlad, LLC (Fed. EIN 95-2973496); Arbonne Institute of Research and Development, LLC (Fed. EIN 33-0762250); Arbonne International Holdings, Inc. (Fed. EIN 20-5585671); and Arbonne International Distribution, Inc. (Fed. EIN 20-5585608).

[2]     Capitalized terms used herein as defined terms and not otherwise defined shall have those meanings ascribed to them in the Application.

1

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the parties listed therein; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the evidence and statements of counsel regarding the Application and to determine that the legal and factual bases set forth in the Application establish just cause for the relief requested in the Application (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that AlixPartners is eligible for retention as Claims Agent under the Bankruptcy Code, the Bankruptcy Rules and Local Rule 2002-1(f) and that such retention and other relief sought in the Application is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and it appearing to the Court that good, adequate and sufficient cause has been shown to justify the immediate entry of this order; and after due deliberation and sufficient cause appearing therefor:

IT IS ORDERED that, except to the extent modified herein, the Application and the Engagement Letter are approved and the Debtors are authorized to employ and retain AlixPartners as Claims Agent, rendering services through its professionals as well as its electronic, internet and computer-based methods and systems, in accordance with the terms and conditions set forth therein; and it is further

ORDERED that, in connection with any matters adverse to the Debtors' interests in these Chapter 11 Cases, AlixPartners will not represent any entities or individuals (other than the Debtors) in such matters; and it is further

ORDERED that the indemnification provisions in the Engagement Letter are approved,

subject to the following modifications, applicable during the pendency of these cases:

a.   AlixPartners shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification therefor are approved by the Bankruptcy Court;

b.   The Debtors shall have no obligation to indemnify AlixPartners, or provide contribution or reimbursement to AlixPartners, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from AlixPartners' gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of AlixPartners' contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which AlixPartners should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, AlixPartners believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, AlixPartners must file an application therefor in this Court, and the Debtors may not pay any such amounts to AlixPartners before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by AlixPartners for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify AlixPartners. All parties in interest shall retain the right to object to any demand by AlixPartners for indemnification, contribution or reimbursement;

and it is further

ORDERED that the Debtors are authorized to pay AlixPartners' fees and expenses upon

the submission by AlixPartners of monthly invoices to the Debtors describing, in reasonable

detail, the services for which compensation is sought, in accordance with the Engagement Letter

3

attached to the Application; provided, however, that the U.S. Trustee and any official committee appointed in this case, if any (collectively, the "Notice Parties"), shall be provided copies of all of AlixPartners' invoices and shall have a period of ten (10) days to object to the amount of such invoice prior to the Debtors' payment of such amounts or such shorter time as agreed to by the Notice Parties; and it is further

ORDERED that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order in accordance with the Application; and it is further

ORDERED that, if these Chapter 11 Cases convert to cases under chapter 7 of the Bankruptcy Code, AlixPartners shall continue to be paid for its services until the claims filed in these Chapter 11 Cases have been completely processed, and that if claims agent representation is necessary in the converted chapter 7 cases, AlixPartners shall continue to serve as Claims Agent and shall continue to be paid in accordance with 28 U.S.C. § 156(c) on the terms set forth in this Order; and it is further

ORDERED that any dispute with respect to the fees and expenses by AlixPartners shall be brought before this Court for a final determination; and it is further

ORDERED that, notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, and 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, nunc pro tunc to the Petition Date; and it is further

ORDERED that all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a); and it is further

ORDERED that the Court shall retain jurisdiction over all matters arising from or related to the interpretation or enforcement of this Order.

*[signature page follows]*

4

DATED: _____, 2010
        Wilmington, Delaware

By: _____,
        United States Bankruptcy Judge

# EXHIBIT B

## Campbell Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| NATURAL PRODUCTS GROUP, LLC, et al.,[1] | ) Case No. 10-_____ (   ) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**DECLARATION OF MICHELLE C. CAMPBELL IN SUPPORT OF
DEBTORS' APPLICATION FOR ORDER AUTHORIZING AND APPROVING THE
EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS NOTICING,
CLAIMS AND BALLOTING AGENT IN THESE CHAPTER 11 CASES
NUNC PRO TUNC TO THE PETITION DATE**

I, Michelle C. Campbell, hereby declare the following under penalty of perjury.

1.      I have been employed by AlixPartners, LLP ("AlixPartners"), which has

as its principal place of business 2000 Town Center, Suite 2400, Southfield, Michigan 48075,

since October 2006 and became a managing director of AlixPartners effective January 1, 2010.

2.      I submit this declaration (the "Declaration") in support of the application

(the "Application") of the above-captioned debtors (collectively, the "Debtors") for an order

pursuant to 28 U.S.C. § 156(c) (the "Order") authorizing and approving the employment and

retention of AlixPartners as Claims Agent in these Chapter 11 Cases, nunc pro tunc to the

Petition Date.   Except as otherwise noted, I have personal knowledge of the matters set forth

herein and, if called as a witness, would testify competently thereto.

---

[1]      The debtors and debtors in possession in these cases are Natural Products Group, LLC (Fed. EIN 86-1119470); Arbonne Intermediate Holdco, Inc. (Fed. EIN 87-0735363); Levlad Intermediate Holdco, Inc. (Fed. EIN 87-0735367); Arbonne International, LLC (Fed. EIN 33-0762250); Levlad, LLC (Fed. EIN 95-2973496); Arbonne Institute of Research and Development, LLC (Fed. EIN 33-0762250); Arbonne International Holdings, Inc. (Fed. EIN 20-5585671); and Arbonne International Distribution, Inc. (Fed. EIN 20-5585608).

**Scope of Services**

3.     As provided in the Application and subject to the Order, AlixPartners will provide services as Claims Agent under the terms of the Engagement Letter.

4.     Such services shall be as deemed appropriate and feasible in order to provide Claims Agent services during the pendency of the Chapter 11 Cases, including, without limitation, the following:

- Assist the Debtors with preparing and filing of the bankruptcy schedules and statements of financial affairs.

- Process and mail all notices including the initial bankruptcy notices and bar date notice.

- Receive and process all proofs of claim and maintain the claims register.

- Track all claims transfers and update ownership of claims in the claims register accordingly.

- Assist with the overall claims and contracts resolution process and provide both the Debtors and its counsel access to the claims and contracts data.

- Provide all voting ballots to necessary parties; quantify the ballot results and provide a final report to the Court.

- Develop and host a case management and communications website.

- Work at the direction of the Debtors and counsel to assist with planning and directing Chapter 11 related communications to employees, vendors, customers and parties in interest.

- Be available for testimony as necessary.

- Provide various bankruptcy information management, claims processing, noticing, back-office and administrative services throughout the Chapter 11 Cases as requested by the Debtors that fall within AlixPartners' expertise and that are mutually agreeable.

- Provide continued assistance as a solicitation agent in connection with the Chapter 11 process.[2]

---

[2] This is not an exhaustive list of services. Further, it should be noted that the Debtors anticipate requesting AlixPartners to provide certain claims and noticing services on a fully electronic basis.

5.     AlixPartners will use reasonable efforts to ensure that the services AlixPartners will provide to the Debtors will not be duplicative of efforts by professionals retained in these Chapter 11 Cases.

## Compensation

6.     AlixPartners will receive compensation for professional services rendered and reimbursement of expenses incurred by AlixPartners as Claims Agent in connection with these Chapter 11 Cases consistent with the compensation as described below (the "Fee Structure") and including the terms and conditions as more fully set forth in the Engagement Letter, to which the Court is respectfully referred.

7.     As part of the Fee Structure, AlixPartners shall charge the Debtors, on a monthly basis based on the number of hours worked, at the following discounted hourly rates for the professionals anticipated to be assigned to these Chapter 11 Cases:

| | |
|---|---|
| Managing Directors | $685 |
| Directors | $595 |
| Vice Presidents | $425 |
| Associates | $335 |
| Analysts | $235 |
| Paraprofessionals | $120 |

8.     Additionally, AlixPartners' case management and website-related services will include non-hourly charges as set forth below:

| Description | Charge |
|---|---|
| Develop a case management and communications website | $10,000 one-time charge |
| Data hosting | $2,500 per month |

9.     The Fee Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms in connection with the rendering of similar services under similar circumstances. AlixPartners believes that the Fee

3

Structure is in fact reasonable, market-based, and designed to fairly compensate AlixPartners for its work and to cover fixed and routine overhead expenses.

10.    AlixPartners reviews and revises its billing rates on January 1 of each year.

11.    In addition to the above compensatory fees for professional services rendered by AlixPartners personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses (subject to limits and approvals within the Engagement Letter[3]) incurred in connection with these Chapter 11 Cases, including transportation costs, lodging, food, telephone, copying and messenger services.    In addition, AlixPartners may use third-party vendors for certain services, which will be billed to the Debtors at the cost incurred by AlixPartners. Further, as part of the Fee Structure payable to AlixPartners under the terms of the Engagement Letter, the Debtors have agreed to certain limitations of liability and indemnification obligations as described therein.

12.    Beginning on or about November 10, 2009 and extending to the Petition Date, AlixPartners has from time to time provided a variety of services to the Debtors pursuant to the Engagement Letter, which services included, without limitation, those related to the Claims Agent role listed in paragraph 4 above.

13.    Pursuant to the terms of the Engagement Letter, AlixPartners was provided an advance retainer in the initial amount of $100,000.00 (the "Retainer").  The Retainer was received on or about November 20, 2009 from the Debtors' funds and is in the current

---

[3] The aggregate amount of travel, lodging and meals expenses to be reimbursed shall not exceed $25,000 without the consent of the Debtors, which consent shall not be unreasonably withheld.  For any mailing expenses or group of mailing related expenses that exceeds $25,000 in the aggregate, AlixPartners shall request that the Debtor review, approve and advance those expenses to AlixPartners prior to the required date of payment.  Upon receipt of any such request, the Debtors agree to immediately advance AlixPartners the amount of such expense(s), and AlixPartners shall not be responsible for any delays caused by the failure of the Debtors to timely respond to such request.

4

amount of $100,000.00.[4] As reflected in AlixPartners' books and records and the actual and estimated invoices sent to the Debtors, $381,351.41[5] was received from, or otherwise credited to the account of, the Debtors for fees earned and expenses incurred relating to AlixPartners' activities assisting the Debtors in preparing for the Chapter 11 Cases in the 90 days up to and including the Petition Date. Subsequent to the Petition Date, the actual amount of such fees and expenses will be compared with any estimated amounts and the Retainer and the Debtors' accounts will be accordingly adjusted.

14. The Debtors do not owe AlixPartners any amount for services performed or expenses incurred prior to the Petition Date, and thus AlixPartners is not a prepetition creditor of the Debtors.

## Disclosures and Other Information as to Eligibility for Retention

15. In connection with the proposed employment and retention of AlixPartners as Claims Agent and the submission of the Application, AlixPartners undertook a lengthy analysis process to determine whether it had any connections, conflicts or other relationships that might impact its eligibility for retention as Claims Agent in these Chapter 11 Cases. In addition, AlixPartners sent a firm-wide email to all its professionals requesting information on potential relationships.

16. Specifically, to check and clear potential conflicts of interest in these Chapter 11 Cases, AlixPartners reviewed its client relationships to determine whether it had any relationships with the entities as were identified, listed and categorized by the Debtors; such categorized list of entities is set forth in the attached **Schedule 1** (the "Potential Parties in

---

[4] The balance of the Retainer will continue to be held by AlixPartners to apply to its final invoice for fees earned and expenses incurred at the end of this engagement.

[5] Reflects a write-off of $10,358.00 for fees and expenses relating to November, 2009.

Interest", incorporated by reference into this Declaration). Additional Potential Parties in Interest or other relevant information may be provided to AlixPartners during the pendency of the Chapter 11 Cases. Accordingly, I will update this Declaration as necessary and when I become aware of material information.

17.     Based on that analysis process, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to the Debtors. AlixPartners, however, wishes to disclose the matters set forth herein and in the attached **Schedule 2** incorporated by reference into this Declaration (collectively, the "Disclosed Matters").

18.     AlixPartners and its affiliates provide services and advice in many areas, including restructuring and distressed debt. As part of its diverse practice, AlixPartners appears in numerous cases, proceedings and transactions involving many different attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties in interest in these Chapter 11 Cases. Further, AlixPartners has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these Chapter 11 Cases. In addition, AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these Chapter 11 Cases in which it works with or against other professionals involved in these cases. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relations constitute interests adverse to the Debtors' estates.

19.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor any of AlixPartners' professional employees: (a) have any connection with the Debtors, their creditors, the United States Trustee (the "U.S. Trustee"), or any other Potential Parties in Interest in these Chapter 11 Cases or their

6

respective attorneys or accountants; or (b) are related or connected to any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware who handle bankruptcy cases, the U.S. Trustee, or any employee in the Office of the U.S. Trustee, except as otherwise set forth in the Disclosed Matters. In addition:

a. With respect to matters related to these Chapter 11 Cases, AlixPartners is not employed by, and has not been employed by, any entity other than the Debtors.

b. From time to time, AlixPartners has provided services, and likely will continue to provide services, to certain parties in interest of the Debtors and various other parties adverse to the Debtors in matters unrelated to these Chapter 11 Cases. As described herein, however, AlixPartners will undertake a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant customers, equity security holders, insiders or other parties in interest in such unrelated matters.

c. AlixPartners provides services in connection with numerous cases, proceedings and transactions unrelated to these Chapter 11 Cases. These unrelated matters involve numerous attorneys, financial advisors, and creditors, some of which may be claimants or parties with actual or potential interests in these cases or may represent such parties.

d. AlixPartners' personnel may have professional associations with certain parties in interest of the Debtors unrelated to these Chapter 11 Cases. In addition, in the ordinary course of its business, AlixPartners may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in these Chapter 11 Cases.

e. AlixPartners has hundreds of employees. It is possible that certain employees of AlixPartners hold interests in mutual funds or other investment vehicles that may own the Debtors' securities or have other business associations with the Debtors.

20. AlixPartners is not being retained in these Chapter 11 Cases as a "professional person" under section 327(a) of the Bankruptcy Code. However, to the best of my knowledge, insofar as I have been able to ascertain after reasonable inquiry, and except as set

forth in the Disclosed Matters,[6] (A) AlixPartners is a "disinterested person" under sections 101(14) and 1107(b) of the Bankruptcy Code, and (B) AlixPartners does not (i) hold or represent any interest adverse to the Debtors or the estates; (ii) have any connection with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; or (iii) employ any person that is related to a judge of this Court or the United States Trustee.

21. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to provide any assistance other than as Claims Agent on matters relating to, or in direct connection with, these Chapter 11 Cases. If this Court authorized the employment and retention of AlixPartners as Claims Agent in these Chapter 11 Cases, AlixPartners will not accept any engagement or perform any service for any other entity for matters relating to, or in direct connection with, these Chapter 11 Cases. AlixPartners will, however, continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or parties in interest in these Chapter 11 Cases, provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

22. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, neither AlixPartners, nor any employee thereof, holds any interest adverse as to the matters for which it is being employed in these Chapter 11 Cases. Certain individuals affiliated with AlixPartners may render restructuring advisory services in these Chapter 11 Cases on a part-time basis, while others have been or will continue to be engaged full-time. To the extent such individuals are employed on a part-time basis,

---

[6] AlixPartners will periodically review its files during the pendency of these Chapter 11 Cases and, to the extent that AlixPartners discovers any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention, AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

AlixPartners submits that there are no simultaneous engagements existing which would constitute a conflict or adverse interest as to the matters for which it is being employed in these Chapter 11 Cases.

23.     Despite the efforts described above to identify and disclose the connections that AlixPartners and its affiliates have with parties in interest in these Chapter 11 Cases, because the Debtors are a large enterprise with numerous creditors and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if AlixPartners discovers additional information that requires disclosure, AlixPartners will file promptly a supplemental declaration with the Court.

24.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these Chapter 11 Cases (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code. If any such agreement is entered into, AlixPartners undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

*[signature page follows]*

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

January 27, 2010

By: _____ *M.* _____

Name: Michelle C. Campbell

## Schedule 1 to Campbell Declaration

### "Potential Parties In Interest"

## "Potential Parties In Interest"

| Debtors & Affiliates<br>(including certain former Affiliates and Prior Names) |
| --- |
| |
| Natural Products Group, LLC |
| Arbonne Intermediate Holdco, Inc. |
| Levlad Intermediate Holdco, Inc. |
| Arbonne International, LLC |
| Levlad, LLC |
| Arbonne Institute of Research and Development, LLC |
| Arbonne International Canada Distributors, Ltd. |
| Arbonne International Holdings, Inc. |
| Arbonne International Canada, Inc. |
| Arbonne International Distribution, Inc. |
| Arbonne Global Holdings, Inc. |
| Arbonne UK Limited |
| Arbonne Europe Sàrl |
| Arbonne Australia Pty Ltd. |
| Arbonne Germany GmbH |

| Officers & Directors of Debtors & Affiliates |
| --- |
| |
| Christopher D. Whalen |
| Ira Kleinman |
| John Elstrott |
| Mark Lehman |
| Michael Annen |
| Michael B. DeFlorio |
| Paul Slocomb |
| Rita Davenport |
| Stephen Biroczky |
| Steven Biroczky |
| Timothy Molloy |
| Ashley Good |

| Lenders |
| --- |
| |
| Denali Capital |
| Katonah |

| Lenders |
| --- |
| Loomis Sayles |
| Comerica Bank |
| Columbus Nova Credit |
| ACA Management |
| Alliance Bernstein |
| Allied Capital Corp |
| Pennant Investments |
| CIBC |
| CIBC World Markets Corp |
| Canadian Imperial Bank of Commerce |
| Oppenheimer Funds |
| Canyon Capital Advisors |
| GSCP NJ LP |
| Halcyon |
| Freeport Financial |
| Wachovia Bank |
| Antares Capital Corp |
| Alcentra Inc |
| CIFC |
| Silver Point Capital |
| Kohlberg Capital |
| GXG/Stanfield |
| Goldman Sachs |
| ING |
| Alliance Capital |
| JP Morgan Chase |
| WestLB AG, New York Branch |
| TCW Advisors |
| Oaktree Capital Mgmt |
| CSAM |
| Ares Management |
| Aladdin Capital |
| CIT |
| Pequot Capital |
| IKB Capital |
| Tricadia Capital |
| Avenue Capital |
| CypressTree |
| Mountain Capital Advisors |
| Deerfield Capital |
| Lufkin Advisors |
| MJX Asset Management |

| Lenders |
| --- |
| Apidos Capital |
| Morgan Stanley |
| CSFB |
| Credit Suisse |
| USB Securities |
| General Electric |
| General Electric Capital |
| EOS Partners |
| CC Arbitrage |
| Apollo Mangement |
| Glenview Capital |
| AEA Investors |
| Canyon Partners |

| Top 30 Creditors |
| --- |
| |
| Blackstone Advisory Services LP |
| Compax |
| Creel Printing Company |
| Designworx Packaging, Inc. |
| Acupac Packaging, Inc. |
| Cosmolab Inc. |
| Croda |
| Berlin Packaging LLC |
| UBS Printing Group Inc. |
| Arista Industries, Inc. |
| Fusion Packaging |
| Tricorbraun Packaging, Inc. |
| Tri Print LLC |
| Kaufman Container |
| Meridian Graphics |
| Golden State Container |
| Chemtec Chemical |
| Univar USA Inc. |
| Corwood Labratories, Inc. |
| Select Personnel Services |
| Private Label Cosmetics, Inc. |
| DSM Nutritional Products Inc. |
| Ungerer and Company |
| Packaging Spectrum |

| Top 30 Creditors |
| --- |
| Consolidated Design West Inc. |
| Ashland Chemical |
| ISP Technologies Inc. |
| AI-Chain Limited |
| International Flora |
| Cognis Corporation |

| Utilities |
| --- |
| |
| AT&T |
| AT&T Mobility |
| Atmos Energy |
| The Gas Company |
| Johnson County REMC |
| Langsdale |
| McGraw Communications |
| Republic Waste |
| Shred-It |
| Southern California Edison |
| Sprint |
| Vectren Energy |
| Waste Management |
| Anglian Water |
| Scottish Power |
| Super Save Disposal (Alberta) Ltd. |
| Direct Energy Regulated SVCS |
| Enmax |
| Roger Wireless |
| Bell Canada |
| Energy Australia |
| Telstra Corporation Ltd. |
| Conference Plus Inc. |
| Jaroth Inc., d/b/a Pacific Telemanagement Services |
| TCast Communications |
| Los Angeles Department of Water & Power |
| Valencia Water Company |
| Time Warner Cable |

| Other Creditors |
| --- |

| |
|---|
| Argeville |
| Caribbean Natural Products |
| Classic Cosmetics Inc. |
| Em Industries, Inc. |
| Lubrizol Advanced Material |
| Schwan Cosmetics USA |
| Seppic Inc. |
| Thoro Packaging |

| **Five Percent Shareholders** |
|---|
| |
| Dennis Gonzalez – principal of NPG |

| **Professionals** |
|---|
| |
| Alston & Bird, LLP |
| Baker Hostetler |
| Barnes & Thornburg |
| Blackstone Advisory Services LP |
| Capstone Advisory Group LLC |
| CB Richard Ellis |
| Chapman Tripp Barristers and Solicitors, New Zealand |
| Covington & Burling, LLP |
| CSC Corporation Service Company |
| Deloitte & Touche LLP |
| Goug Hepfer & Associates |
| Gardere Wynne Sewell |
| Graf von Westphalen |
| Grimes & Reese PLLC |
| Haight, Brown & Bonesteel LLP |
| Hughes Hubbard & Reed LLP |
| Jones Day |
| Joseph La Costa |
| Julander, Brown & Bollard |
| K Chen & Associates |
| Kaye Scholer LLP |
| Klienberg & Lerner |
| Lane Powell |
| Latham & Watkins LLP |

| Professionals |
| --- |
| Lawrence Graham LLP |
| Lovells LLP |
| MacIntyre Hudson |
| Maples and Calder |
| Mercer |
| Merrill Communications |
| Miller Thomson LLP |
| Murray Devine & Co |
| O'Melveny & Myers LLP |
| PricewaterhouseCoopers |
| Real Tech |
| Robert Forbes and Associates Pty Ltd. |
| Russell Kennedy |
| Rutan & Tucker LLP |
| Schellenberg Wittmer |
| Skadden, Arps, Slate, Meagher & Flom LLP |
| TaxTechnology Services LLC |
| Wagner Anderson & Bright LLP |
| Welch Consulting Ltd. |
| Whale Rock Company Secretariat Limited (Lawrence Graham) |

| Contract/Lease Counterparties |
| --- |
| |
| Adecco |
| Adobe Systems Incorporated |
| Michael Annen |
| Ansafone Communications (division of Ephonamation.com, Inc.) |
| AppleOne |
| Automatic Data Processing, Inc. |
| B&G Executive Group |
| Pierre Bottiglieri |
| Chase Paymentech, LLC |
| Consultnet |
| Corwood Labs |
| Dalepak Limited |
| Deloitte Consulting |
| Delphi Executive Search |
| DGA, Inc. (d/b/a Pro-Form Laboratories) |

| **Contract/Lease Counterparties** |
| --- |
| Distribution Planning, Inc. |
| ebra.net |
| F&S Distributing Company, LLC |
| Free Radical Technology, Inc. |
| Freight and Distribution Management Systems Pty Ltd. |
| Frog Staffing |
| Guarantee Company of NA |
| Guthy-Renker Corporation |
| IBM |
| International Business Machines Corporation |
| Just Digital Online Ltd. |
| Kelly Services |
| KForce |
| Legal Network, Inc |
| Marsh Risk & Insurance Services |
| Merrill Communications |
| Oracle USA, Inc. |
| Parceline (division of GeoPost UK Limited) |
| Phoenix Marketing Group |
| Primrose Candy Co. |
| Private Label Cosmetics Co., Inc. |
| PSA |
| Randstad |
| Ranpak |
| Regan-Kaufman |
| Rhumbline |
| Robert Half Legal |
| RSP (D) Limited |
| Sharf, Woodward & Associates |
| Spherion |
| The Williams Company |
| TIGI Linea, LP |
| Trans Canada Distribution Inc. |
| Vegan Action |
| Vertex Inc. |
| Victory Packaging |
| Volt |

| **Office of the United States Trustee** |
| --- |

| Office of the United States Trustee |
|---|
| |
| Roberta A. Deangelis |
| Joanne E. Clausen |
| Mark Dreyer, MA |
| Dianne P. Dugan |
| Linda P. Logan |
| Andrew R. Vara |
| Bonnie Anemone |
| David Buchbinder |
| Diane Giordano |
| Christine Green |
| William K. Harrington |
| Jeffrey Heck |
| Mark Kenney |
| Jane Leamy |
| Joseph Mcmahon |
| James R. O'Malley |
| Lauren O'Neal |
| Michael Panacio |
| Richard Schepacarter |
| Ramona Vinson |
| Michael West |
| Shakima L. Williams |
| Dion Wynn |

**Schedule 2 to Campbell Declaration**

**"Disclosed Matters"**

.

Disclosed Matters

For the purpose of the "Disclosed Matters" set forth in this Exhibit, and unless otherwise expressly provided herein, the term "AlixPartners" shall mean AlixPartners, LLP together with each of its subsidiaries including, without limitation, AP Services, LLC.

- H&F Astro LLC and Hellman & Friedman Capital Associates V, LLC ("H&F Capital"), two private equity investment vehicles managed by Hellman & Friedman LLC ("H&F LLC", and collectively with H&F Astro LLC and H&F Capital, "H&F") own a controlling stake in AlixPartners, LLP, which the Debtors engaged prepetition to provide certain advisory services. No material nonpublic information about the Debtors has been furnished by AlixPartners to H&F. AlixPartners' conflict checking system has searched the names of each managing director of H&F LLC and each portfolio company of H&F LLC (the "H&F Conflict Parties") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge that there are no resulting disclosures other than as noted herein. The term "portfolio company" means any business in which H&F has a direct controlling or minority interest. The term "portfolio company" does not include indirect investments such as businesses owned or investments made by an H&F portfolio company. H&F invests primarily in equity-related investments. However, H&F, its members, affiliated fund entities or affiliates (collectively, the "H&F Entities") may have had, currently have or may in the future have business relationships or connections with the Debtors or other Potential Parties in Interest in matters related to or unrelated to the Debtors or their affiliates or these chapter 11 cases. AlixPartners operates independently of the H&F Entities, and does not share common employees or officers, except that certain H&F LLC managing directors or employees are on the Board of Directors of AlixPartners. AlixPartners' financial performance is not impacted by the success or failure of the H&F Entities. Accordingly, AlixPartners has not undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the H&F Entities may have with the Potential Parties in Interest, the Debtors and their affiliates or these chapter 11 cases, other than with respect to the H&F Conflict Parties. AlixPartners believes it continues to be disinterested and does not hold or represent an interest adverse to the estate with respect to the engagement, regardless of any direct or indirect relationship to or connection any of the H&F Entities may have with the Debtors. The engagement will be performed solely by AlixPartners, LLP.

- There is one confidential client of AlixPartners, who is a creditor and bondholder to the Debtors. The confidential client is a current and former AlixPartners client in matters unrelated to the Debtors.

- At least one current AlixPartners employee has family members that are associated with Arbonne as skin care product distributors (referred to as "Arbonne Independent Consultants"). These consultants are not actually employees of Arbonne although some of them bear the titles of "District/Area Managers" and "Regional/National Vice Presidents." According to its website, Arbonne had an average of 922,496 active Arbonne Independent Consultants worldwide during 2008.

- AEA Investors, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors.

- Apollo Management ("Apollo"), a lender to the Debtors, is a lender and bondholder to current AlixPartners clients in matters unrelated to the Debtors. Apollo is the parent of a current AlixPartners client in matters unrelated to the Debtors.

- Automatic Data Processing ("ADP"), a material lease party to the Debtors, is a bondholder and vendor to current and former AlixPartners clients in matters unrelated to the Debtors. ADP is a vendor to AlixPartners in matters unrelated to the Debtors.

- Alston & Bird, LLP, a professional in interest in this bankruptcy matter, is client counsel to a former AlixPartners client in matters unrelated to the Debtors. Alston &Bird, LLP is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors.

- AT&T and AT&T Mobility (collectively, "AT&T"), utility providers to the Debtors, are affiliated with entities that are creditors, executory contract counterparties, vendors, lenders and shareholders to current and former AlixPartners clients in matters unrelated to the Debtors. An affiliate of AT&T is a former AlixPartners client in matters unrelated to the Debtors. AT&T is a vendor to AlixPartners in matters unrelated to the Debtors.

- Avenue Capital, a lender to the Debtors, is a lender, bondholder, executory contract counterparty and creditors to current and former AlixPartners clients in matters unrelated to the Debtors. Avenue Capital is a client related party to a current AlixPartners client in matters unrelated to the Debtors.

- Baker Hostetler, a professional in interest in this bankruptcy matter, is a professional in interest, opposing counsel and client counsel to current and former AlixPartners clients in matters unrelated to the Debtors.

- Barnes & Thornburg, a professional in interest in this bankruptcy matter, is a professional in interest and opposing counsel to current and former AlixPartners clients in matters unrelated to the Debtors.

2

- Bell Canada, a utility provider to the Debtors, is affiliated with Bell South, a former AlixPartners client in matters unrelated to the Debtors.

- Blackstone Advisory Service LP ("Blackstone"), a creditor and professional in interest to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Affiliations of Blackstone are professionals in interest, significant shareholders, bondholders, creditors, parents and lenders to current and former AlixPartners clients and are landlords to AlixPartners all in matters unrelated to the Debtors.

- Canadian Imperial Bank of Commerce ("CIBC"), a lender to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors. Other CIBC affiliated entities are lenders, bondholders, creditors, shareholders and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors.

- CB Richard Ellis, a professional in interest in this bankruptcy matter, is a professional in interest to a former AlixPartners client in matters unrelated to the Debtors. CB Richard Ellis is an advisor and broker to AlixPartners in matters unrelated to the Debtors.

- CIT, a lender to the Debtors, is a lender, creditor, executory contract counterparty and lessor to current and former AlixPartners clients in matters unrelated to the Debtors. CIT was the previous employer of a current AlixPartners employee.

- Columbus Nova Credit, a lender to the Debtors, is a creditor to The Tribune UCC, a current AlixPartners client in matters unrelated to the Debtors.

- Comerica Bank ("Comerica"), a lender to the Debtors, is a former lender to AlixPartners and also a former AlixPartners client in matters unrelated to the Debtors. Comerica is a lender, creditor, co-defendant and bondholder to current and former AlixPartners clients in matters unrelated to the Debtors. Comerica is the previous employer of a current AlixPartners employee. Comerica provides banking services to AlixPartners.

- Covington & Burling, professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors.

- CSFB and Credit Suisse – Grand Cayman Branch (collectively, "CS"), a lender to the Debtors, are affiliates of current and former AlixPartners clients in matters unrelated to the Debtors. Other CS affiliated entities are lenders, creditors, bondholders, shareholders, limited partners and professionals in interest to current and former AlixPartners clients in

matters unrelated to the Debtors. CS is the previous employer of a current AlixPartners employee.

- Deloitte & Touche LLP and Deloitte Consulting, (collectively, "Deloitte"), professionals in interest in this bankruptcy matter and material contract parties to the Debtors, are vendors to AlixPartners, adverse to a former AlixPartners client, as well as a professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Deloitte is a current client of AlixPartners in matters unrelated to the Debtors. Additionally, Deloitte affiliated entities previously employed several current AlixPartners employees.

- Denali Capital ("Denali"), a lender of the Debtors, is a lender, material contract party and creditor to current and former AlixPartners clients in matters unrelated to the Debtors. Denali was the previous employer of a current AlixPartners employee.

- EOS Partners, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors.

- Gardere Wynne Sewell, a professional in interest in this bankruptcy matter, was client counsel to former AlixPartners clients in matters unrelated to the Debtors.

- General Electric Capital and General Electric (collectively, "GE"), lenders to the Debtors, are creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors and bondholders of current and former AlixPartners clients in matters unrelated to the Debtors. GE is a former AlixPartners client and in matters unrelated to the Debtors. GE is the previous employer of current AlixPartners employees.

- Goldman Sachs, a lender to the Debtors, is a lender, litigant, lessee, bondholder, professional in interest and shareholder to current and former AlixPartners clients in matters unrelated to the Debtors. Goldman Sachs is the previous employer of current AlixPartners employees.

- Harvest Partners, a sponsor to the Debtors, was a potential investor to a former AlixPartners client in matters unrelated to the Debtors.

- Hughes Hubbard & Reed LLP, a professional in interest in this bankruptcy matter, is client counsel and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors.

- IBM Corporation ("IBM"), a major lease party to the Debtors, is a lender, joint venture party, vendor, adverse party, client related party and creditor to current and former AlixPartners clients in matters unrelated to the

4

Debtors. IBM is the previous employer of current AlixPartners employees.

- ING, a lender to the Debtors, is a former AlixPartners clients in matters unrelated to the Debtors. ING affiliated entities are lenders, noteholders, creditors, bondholders, lessors and bank steering committee members to current and former AlixPartners clients in matters unrelated to the Debtors.

- Jones Day, a professional in interest in this bankruptcy matter, is client counsel to current and former AlixPartners clients in matters unrelated to the Debtors. Additionally, Jones Day was counsel to the Creditors' Committee of a former AlixPartners client in matters unrelated to the Debtors. Jones Day is a current and former AlixPartners client in matters unrelated to the Debtors.

- JP Morgan Chase, a lender to the Debtors, is affiliated with entities that are lenders, shareholders, vendors, bondholders and creditors to current and former AlixPartners clients in matters unrelated to the Debtors. JP Morgan Chase is a current and former AlixPartners client in matters unrelated to the Debtors. JP Morgan Chase affiliated entities previously employed several current AlixPartners employees.

- Kaye Scholer LLP, a professional in interest in this bankruptcy matter, is a professional in interest to a current AlixPartners client as well as co-counsel to a current AlixPartners client in matters unrelated to the Debtors. Kaye Scholer LLP is a current AlixPartners client in matters unrelated to the Debtors. Kaye Scholer LLP is the previous employer of a current AlixPartners employee.

- Latham & Watkins, a professional in interest in this bankruptcy matter, is legal counsel, opposing counsel and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Latham & Watkins is a current and former AlixPartners client in matters unrelated to the Debtors.

- Lovells LLP, a professional in interest in this bankruptcy matter, is client counsel and professional in interest to former AlixPartners clients in matters unrelated to the Debtors.

- Marsh Risk & Insurance Services, a major lease party to the Debtors, is affiliated with an entity that is a creditor and vendor to current and former AlixPartners clients in matters unrelated to the Debtors. An affiliate, Marsh & McLennan, is a vendor to AlixPartners.

- Mercer, a professional in interest in this bankruptcy matter, is affiliated with an entity that is the previous employer of current AlixPartners

employees. An affiliate, Mercer HR Consulting, is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors and is a vendor to AlixPartners.

- Miller Thomson LLP, a professional in interest in this bankruptcy matter, is a professional in interest to a current AlixPartners client in matters unrelated to the Debtors.

- Morgan Stanley, a lender to the Debtors, is a lender, bondholder, creditor, shareholder and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Morgan Stanley is a current and former AlixPartners client in matters unrelated to the Debtors. Morgan Stanley is the previous employer of a current AlixPartners employee.

- O'Melveny & Myers, a professional in interest to the Debtors, is a creditor, professional in interest and member of a creditor's committee of former AlixPartners clients in matters unrelated to the Debtors.

- Oaktree Capital Management, a lender to the Debtors, is affiliated with entities that were adverse parties to a former AlixPartners client in a litigated matter as well as bondholders and lenders to current and former AlixPartners clients in matters unrelated to the Debtors.

- Oppenheimer Funds, a lender to the Debtors, and affiliated entities are lenders, bondholders and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors. An affiliate, Oppenheimer & Co., is the previous employer of a current AlixPartners employee.

- Oracle USA ("Oracle"), a major lease party to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors. Oracle is a creditor and adverse party to former AlixPartners clients in matters unrelated to the Debtors. Oracle is the previous employer of a current AlixPartners employee.

- PricewaterhouseCoopers ("PWC"), a professional in interest in this bankruptcy matter, is a professional in interest, opposing counsel and creditor to current and former AlixPartners clients in matters unrelated to the Debtors. PWC is the auditor for AlixPartners and provides audit, tax and related consulting services. PWC is a former AlixPartners client in matters unrelated to the Debtors. PWC is the previous employer of a number of current AlixPartners employees. AlixPartners provides services to PWC in the ordinary course in matters unrelated to the Debtors.

- Randstad, a material lease party to the Debtors, is affiliated to Randstad Workbet GmbH. A current AlixPartners client owns an interest in Randstad Workbet GmbH.

- Rutan & Tucker LLP, a professional in interest in this bankruptcy matter, was co-counsel and opposing counsel to former AlixPartners clients in matters unrelated to the Debtors.

- Silver Point Capital, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Silver Point Capital is a lender and creditor to current and former AlixPartners clients in matters unrelated to the Debtors. Silver Point Capital was a member of the Unofficial Ad-Hoc Bondholders Committee to a former AlixPartners client in matters unrelated to the Debtors.

- Skadden, Arps, Slate, Meagher & Flom, a professional in interest in this bankruptcy matter, is a professional in interest and client counsel to current and former AlixPartners clients in matters unrelated to the Debtors. Skadden, Arps, Slate, Meagher & Flom, is a current and former AlixPartners client in matters unrelated to the Debtors.

- Southern California Edison, a utility provider to the Debtors, is a joint venture entity to a current AlixPartners client in matters unrelated to the Debtors. Southern California Edison is an insurance provider and creditor to former AlixPartners clients in matters unrelated to the Debtors.

- Sprint, a utility provider to the Debtors, is a creditor, vendor and executory contract counterparty to current and former AlixPartners clients in matters unrelated to the Debtors. An affiliate of Sprint is a related party to a current AlixPartners client in matters unrelated to the Debtors.

- Time Warner Cable, a utility provider to the Debtors, and affiliated entities, are litigation parties, vendors, adverse parties, creditors and director affiliated companies to current and former AlixPartners clients in matters unrelated to the Debtors.

- UBS Securities ("UBS"), a lender to the Debtors, is a creditor, customer, director affiliated company, lender, lessor and bondholder to current and former AlixPartners clients in matters unrelated to the Debtors. UBS is the previous employer of a current AlixPartners employee.

- Wachovia Bank, a lender to the Debtors, is a lender, bondholder, creditor, adverse party, co-defendant and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Wachovia is a current and former AlixPartners client in matters unrelated to the Debtors.

- Waste Management, a utility provider to the Debtors, is a creditor, adverse party and vendor to current and former AlixPartners clients in matters unrelated to the Debtors. Waste Management is a former client of AlixPartners in matters unrelated to the Debtors.

- WestLB AG-New York Branch, a lender to the Debtors, is a lender to a current AlixPartners client in matters unrelated to the Debtors. WestLB AG, is a joint venture party to a former AlixPartners client in matters unrelated to the Debtors.

- White & Case, a professional in interest in this bankruptcy matter, is a professional in interest to former AlixPartners clients in matters unrelated to the Debtors. White & Case is a current and former AlixPartners client in matters unrelated to the Debtors. White & Case is also a vendor to AlixPartners in matters unrelated to the Debtors. A current AlixPartners employee, specifically Michelle Campbell, was previously employed by White & Case.

**EXHIBIT C**

**Engagement Letter**



**AlixPartners** LLP
*When it really matters.*

November 18, 2009

Mark I. Lehman
Chief Financial Officer
Arbonne International, LLC
9400 Jeronimo Road
Irvine, CA 92618

Re:     Agreement for Consulting Services

Dear Mr. Lehman:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and Arbonne Intermediate Holdco, Inc. and Levlad Intermediate Holdco, Inc. (collectively, the "Company") for the engagement of AlixPartners to provide consulting services to the Company. AlixPartners understands that the Company plans to file for protection under Chapter 11 of the United States Bankruptcy Code.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions.

| OBJECTIVES AND TASKS |
| --- |

The objective of this engagement is to provide bankruptcy administration services including claims agent, notice agent and ballot agent services with respect to the overall bankruptcy process in connection with the Chapter 11 bankruptcy proceedings involving the Company.

AlixPartners will perform the following tasks in connection with serving as claims agent, notice agent and ballot agent:

- Assist the Company with administrative tasks necessary for the preparation for a potential bankruptcy filing under Chapter 11 of the United States Bankruptcy Code.
- Assist the Company with preparing and filing of the bankruptcy schedules and statements of financial affairs.
- Process and mail all notices including the initial bankruptcy notices and bar date notice.
- Receive and process all proofs of claim and maintain the claims register.
- Track all claims transfers and update ownership of claims in the claims register accordingly.
- Assist with the overall claims and contracts resolution process and provide both the Company and its counsel access to the claims and contracts data.

 **AlixPartners** LLP
When it really matters.

- Provide all voting ballots to necessary parties; quantify the ballot results and provide a final report to the Bankruptcy Court ("Court").

- Develop and host a case management and communications website.

- Work at the direction of the Company and counsel to assist with planning and directing Chapter 11 related communications to employees, vendors, customers and parties in interest.

- Be available for testimony as necessary.

- Provide various bankruptcy information management, claims processing, noticing, back-office and administrative services throughout the case as requested by the Company that fall within AlixPartners' expertise and that are mutually agreeable.

## STAFFING

Meade Monger will be the managing director responsible for the overall engagement. Michelle Campbell, Director, will oversee the day-to-day activities of the assignment. They will be assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

If AlixPartners finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company.

AlixPartners' standard practice is to charge for an I/C's services at a rate equal to the compensation provided by AlixPartners to such I/C.

## TIMING, FEES AND RETAINER

AlixPartners will commence this engagement on or about November 10, 2009 after receipt of a copy of the Agreement executed by the Company accompanied by the Retainer, as set forth on Schedule 1.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.



**AlixPartners** LLP
When it really matters.

In the event the Company seeks protection under the U.S. Bankruptcy Code, the Company will promptly seek approval of the Bankruptcy Court of the Company's retention of AlixPartners pursuant to 28 U.S.C. §156 nunc pro tunc to the date of filing. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

\*  \*  \*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement and wire transfer the amount to establish the Retainer.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Meade Monger
Managing Director

Acknowledged and Agreed to:

ARBONNE INTERMEDIATE HOLDCO, INC. By: _____

Its: _____ , CHIEF FINANCIAL OFFICER

Dated: 11/19/09

LEVLAD INTERMEDIATE HOLDCO, INC.

By: _____

Its: CHIEF FINANCIAL OFFICER

Dated: 11/19/09


**AlixPartners** LLP
When it really matters.

### SCHEDULE 1

#### FEES AND EXPENSES

1. **Fees:** AlixPartners' fees will be based on the hours worked by AlixPartners personnel at AlixPartners' discounted hourly rates, which are:

   | | |
   |---|---|
   | Managing Directors | $685 |
   | Directors | $595 |
   | Vice Presidents | $425 |
   | Associates | $335 |
   | Analysts | $235 |
   | Paraprofessionals | $120 |

   AlixPartners reviews and revises its billing rates on January 1 of each year.

   The following charges for developing and hosting a case management website will apply in addition to the hourly fees associated with the tasks:

   | Description | Charge |
   |---|---|
   | Develop a case management and communications website | $10,000 one-time charge |
   | Data hosting | $2,500 per month |

2. **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, and other indirect administrative costs such as postage, courier, routine black and white copying, telephone, messenger and facsimile charges; provided that the aggregate amount of travel, lodging and meals expenses to be reimbursed shall not exceed $25,000 without the consent of the Company, which consent shall not be unreasonably withheld. For any mailing expenses or group of mailing related expenses that exceeds $25,000 in the aggregate, AlixPartners shall request that the Company review, approve and advance those expenses to AlixPartners prior to the required date of payment. Upon receipt of any such request, the Company hereby agrees to immediately advance AlixPartners the amount of such expense(s), and AlixPartners shall not be responsible for any delays caused by the failure of the Company to timely respond to such request.

3. **Retainer:** The Company shall pay AlixPartners a retainer of $100,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions.



## SCHEDULE 2

### DISCLOSURES

AlixPartners has not completed a thorough check of the parties in interest with regard to the Company. However, as soon as practicable after beginning the engagement, AlixPartners will provide the Company with a listing of parties with which AlixPartners has current or prior relationships that may be related to the Company. AlixPartners will provide this so that the Company may assess the impact, if any, that the Company believes such relationships have.

# AlixPartners, LLP
## General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and AlixPartners to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Retainer, Billing and Payments.

**Retainer and Billing.** AlixPartners will submit semi-monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to AlixPartners shall be payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

### Section 4. Confidentiality.

AlixPartners shall use reasonable efforts to keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither AlixPartners nor its personnel will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from disclosure pursuant to a valid subpoena or court order, but AlixPartners shall not encourage, suggest, invite or request, or assist in securing, any such subpoena or court order; and AlixPartners shall promptly give notice of any such subpoena or court order by fax transmission to the Company. AlixPartners may make reasonable disclosures of Information to third parties in connection with the performance of AlixPartners' obligations and assignments hereunder. In addition, AlixPartners will have the right to disclose to prospective clients on an individual basis (e.g., not as part of any marketing materials or a general solicitation) only that it provided services to the Company, but shall not provide any other information about its involvement with the Company. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval except as required by law.

Rev. 01/01/2009

### Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of AlixPartners, and the Company shall not acquire any interest therein. AlixPartners shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to AlixPartners by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that AlixPartners creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. AlixPartners may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement (other than as a result of an indemnitees gross negligence, bad faith, self dealing or intentional misconduct). The Company shall pay such damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. In addition, the Company shall pay the costs of AlixPartners' professional time (AlixPartners' professional time will be reimbursed at AlixPartners' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. The indemnitees may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

AlixPartners is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring the third-party product or service.

AlixPartners shall not be liable to the Company except for actual damages resulting from gross negligence, bad faith, self-dealing or intentional misconduct.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. In the event the Company files under Chapter 11, the Company and AlixPartners agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

Notwithstanding the foregoing, for any claim relating to the non-payment of fees or expenses due to AlixPartners under this Agreement AlixPartners may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees.**

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of one year after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its subsidiaries agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors; provided that this Section shall not preclude the Company from hiring any of AlixPartners' Managing Directors, Directors, or other employees/contractors who responds to a general solicitation through a public medium or general or mass mailing the Company or on the Company's behalf and not targeted at AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its subsidiaries directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors (except as expressly permitted above), the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Section 11. General.**

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by AlixPartners and may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.** AlixPartners shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. AlixPartners' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of three times the fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of AlixPartners' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by AlixPartners among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against AlixPartners pursuant to this Agreement exceed the Liability Cap.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.