**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| NATURAL PRODUCTS GROUP, LLC, <u>et</u> <u>al.</u>, | ) Case No. 10-10239 (      ) |
| | ) |
| Debtors. | ) |
| | ) |

---

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**FOR NATURAL PRODUCTS GROUP, LLC AND ITS AFFILIATED DEBTORS**

---

Dated: January 27, 2010

WHITE & CASE LLP
Thomas E Lauria
Craig H. Averch
Matthew C. Brown
Wachovia Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
(305) 371-2700

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
919 Market Street, Suite 1600
Wilmington, Delaware 19801
(302) 654-7444

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN
POSSESSION

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION ............................................................1

    1.1.   Definitions....................................................................................................1
    1.2.   Interpretation................................................................................................1
    1.3.   Application of Definitions and Rules of Construction Contained in the
           Bankruptcy Code. ........................................................................................1
    1.4.   Other Terms. ................................................................................................1
    1.5.   Appendices and Plan Documents.................................................................1

ARTICLE II. RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES ..................................2

    2.1.   Settlement of Intercompany Claims.............................................................2
    2.2.   Treatment of Guaranty and Joint Liability Claims Against a Debtor.......................2
    2.3.   Intercompany Claims. ..................................................................................2

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..........................3

    3.1.   Administrative Claims and Tax Claims........................................................3
    3.2.   Claims and Equity Interests. .......................................................................3
    3.3.   Separate Classification of Secured Claims. .................................................3

ARTICLE IV. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
               EQUITY INTERESTS...........................................................................................4

    4.1.   Unimpaired Classes of Claims and Equity Interests....................................4
    4.2.   Impaired Classes of Claims and Equity Interests. .......................................4
    4.3.   Impairment Controversies............................................................................4

ARTICLE V. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
              INTERESTS UNDER THE PLAN .........................................................................4

    5.1.   Claims and Equity Interests. .......................................................................4

ARTICLE VI. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
              UNDER THE PLAN...............................................................................................6

    6.1.   Unclassified Claims. ...................................................................................6
    6.2.   Treatment of Administrative Claims. ..........................................................6
    6.3.   Treatment of Tax Claims. ...........................................................................8

ARTICLE VII. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
              REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
              INTERESTS ...........................................................................................................9

    7.1.   Classes Entitled to Vote. ............................................................................9
    7.2.   Class Acceptance Requirement....................................................................9
    7.3.   Cramdown....................................................................................................9
    7.4.   Confirmation of All Cases. ..........................................................................9

ARTICLE VIII. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................9

8.1.    Operations Between the Confirmation Date and the Effective Date. ......................9
8.2.    Implementing Transactions on or Prior to the Effective Date. ...............................10
8.3.    Corporate Action..................................................................................................10
8.4.    Re-Vesting of Assets..............................................................................................11
8.5.    Initial Boards of Directors. .....................................................................................11
8.6.    Management and Officers.......................................................................................12
8.7.    Director and Officer Liability Insurance..................................................................12
8.8.    Long Term Management Incentive Plan...................................................................12
8.9.    Causes of Action. ..................................................................................................12
8.10.   Appointment of the Disbursing Agent.....................................................................13
8.11.   Sources of Cash for Plan Distributions...................................................................13
8.12.   Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
        Disbursing Agent. .................................................................................................13
8.13.   Releases by the Debtors. .......................................................................................13
8.14.   Releases by Creditors and Equity Security Holders. ...............................................14

ARTICLE IX. PLAN DISTRIBUTION PROVISIONS ................................................................15

9.1.    Plan Distributions..................................................................................................15
9.2.    Timing of Plan Distributions. .................................................................................15
9.3.    Address for Delivery of Plan Distributions/Unclaimed Plan Distributions............15
9.4.    De Minimis Plan Distributions. ..............................................................................15
9.5.    Time Bar to Cash Payments....................................................................................16
9.6.    Manner of Payment under the Plan..........................................................................16
9.7.    Expenses Incurred on or after the Effective Date and Claims of the
        Disbursing Agent. .................................................................................................16
9.8.    Fractional Plan Distributions. ................................................................................16
9.9.    Special Distribution Provisions Concerning the Prepetition Credit Facilities.......16
9.10.   Cancellation of Instruments. .................................................................................17

ARTICLE X. PROCEDURES FOR RESOLVING AND TREATING CONTESTED
CLAIMS .............................................................................................................18

10.1.   Objection Deadline. ..............................................................................................18
10.2.   Prosecution of Contested Claims............................................................................18
10.3.   Claims Settlement..................................................................................................18
10.4.   Entitlement to Plan Distributions upon Allowance. ...............................................18
10.5.   Estimation of Claims.............................................................................................18

ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE OCCURRENCE OF THE EFFECTIVE DATE...............................................19

11.1.   Conditions Precedent to Confirmation....................................................................19
11.2.   Conditions Precedent to the Occurrence of the Effective Date. .............................20
11.3.   Waiver of Conditions.............................................................................................20
11.4.   Effect of Non-Occurrence of the Effective Date. ..................................................21

ARTICLE XII. THE DISBURSING AGENT ...........................................................................21

    12.1.   Powers and Duties. ..........................................................................................21
    12.2.   Plan Distributions. ..........................................................................................21
    12.3.   Exculpation. ....................................................................................................22

ARTICLE XIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES .........................................................................................................................22

    13.1.   Assumption and Rejection of Executory Contracts and Unexpired Leases. .........22
    13.2.   Cure. ................................................................................................................23
    13.3.   Claims Arising from Rejection, Expiration or Termination. ...............................24

ARTICLE XIV. RETENTION OF JURISDICTION .................................................................24

ARTICLE XV. MISCELLANEOUS PROVISIONS .................................................................26

    15.1.   Substantial Consummation. .............................................................................26
    15.2.   Payment of Statutory Fees. .............................................................................26
    15.3.   Satisfaction of Claims. ....................................................................................26
    15.4.   Special Provisions Regarding Insured Claims. ................................................26
    15.5.   Third Party Agreements; Subordination. .........................................................27
    15.6.   Exculpation. ....................................................................................................27
    15.7.   Discharge of Liabilities. ..................................................................................27
    15.8.   Discharge of Debtors. .....................................................................................28
    15.9.   Notices. ...........................................................................................................28
    15.10.  Headings. ........................................................................................................29
    15.11.  Governing Law. ..............................................................................................29
    15.12.  Expedited Determination. ...............................................................................30
    15.13.  Exemption from Transfer Taxes. .....................................................................30
    15.14.  Notice of Entry of Confirmation Order and Relevant Dates. .............................30
    15.15.  Interest and Attorneys' Fees. ...........................................................................30
    15.16.  Modification of the Plan. ................................................................................30
    15.17.  Corrective Action. ...........................................................................................31
    15.18.  Revocation of Plan. ........................................................................................31
    15.19.  Setoff Rights. ..................................................................................................32
    15.20.  Compliance with Tax Requirements. ...............................................................32
    15.21.  Rates. ..............................................................................................................32
    15.22.  Dissolution of the Creditors' Committee. ........................................................32
    15.23.  Injunctions. .....................................................................................................33
    15.24.  Binding Effect. ...............................................................................................33
    15.25.  Successors and Assigns. ..................................................................................34
    15.26.  Conflict between Plan, Disclosure Statement and Plan Documents. ...................34
    15.27.  Severability. ....................................................................................................34
    15.28.  No Admissions. ...............................................................................................34

EXHIBITS

Glossary of Defined Terms.................................................................Exhibit A
List of Debtors................................................................................Exhibit B
Terms of New NPG Warrants .............................................................Exhibit C
Terms of New NPG Options ..............................................................Exhibit D
Terms of Reinstated OpCo Term Loan..................................................Exhibit E
Terms of New Term Loan ..................................................................Exhibit F

NPG and its affiliated Debtors and Debtors in Possession in the above-captioned chapter 11 cases hereby collectively and jointly propose the following chapter 11 plan of reorganization:

# ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1.**    **Definitions.**

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as Exhibit "A".

**1.2.**    **Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

**1.3.**    **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan; provided, however, that "or" is disjunctive. The words "include" and "including" are without limitation.

**1.4.**    **Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5.**    **Appendices and Plan Documents.**

All appendices, schedules, and exhibits to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, at http://www.deb.uscourts.gov and http://www.alixpartners.com/cms, or by a written request sent to the following address:

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
Attention: Mark B. Fuhr
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

## ARTICLE II.

## RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES

**2.1.** **Settlement of Intercompany Claims.**

In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan. Such treatment shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. The above treatment serves only as a mechanism to effect a fair distribution of value to the Debtors' constituencies.

**2.2.** **Treatment of Guaranty and Joint Liability Claims Against a Debtor.**

Any holder of a Claim against a Debtor and a Claim based on a guaranty of such base Claim given by a Debtor shall receive only a single recovery in respect of such Claims. Any holder of a Claim against a Debtor and a Claim against another Debtor based on joint or joint and several liability of such Debtors shall receive only a single recovery in respect of such Claims.

**2.3.** **Intercompany Claims.**

Intercompany Claims and Administrative Claims between and among the Debtors shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of the Debtors in respect of such Claims shall be fully reinstated and retained.

# ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting and all confirmation matters, <u>except</u> as otherwise provided herein, all Claims against and all Equity Interests in each of the Debtors shall be classified as set forth in this Article III.

**3.1.** **Administrative Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article VI.

**3.2.** **Claims and Equity Interests.**

The classes of Claims against and Equity Interests in the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims against the Debtors.

Class 2 – OpCo Lender Claims.  Class 2 shall consist of all OpCo Lender Claims against the Debtors.

Class 3 – HoldCo Lender Claims.  Class 3 shall consist of all HoldCo Lender Claims against the Debtors.

Class 4 – Secured Claims.  Class 4 shall consist of all Secured Claims, other than OpCo Lender Claims, against the Debtors.

Class 5 – Unsecured Claims.  Class 5 shall consist of all Unsecured Claims, other than HoldCo Lender Claims, against the Debtors.

Class 6 – NPG Equity Interests.  Class 6 shall consist of all Equity Interests in NPG.

Class 7 – Other Equity Interests.  Class 7 shall consist of all Equity Interests in the Debtors, other than NPG.

**3.3.** **Separate Classification of Secured Claims.**

Although Secured Claims against the Debtors, other than OpCo Lender Claims, have been placed in one category for purposes of nomenclature, each such Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions (to be designated as Class 4A, 4B, 4C, etc.).

# ARTICLE IV.

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.1.**     **Unimpaired Classes of Claims and Equity Interests**.

Class 1 – Priority Claims, Class 4 – Secured Claims, Class 5 – Unsecured Claims and Class 7 – Other Equity Interests are not impaired under the Plan.

**4.2.**     **Impaired Classes of Claims and Equity Interests**.

Class 2 – OpCo Lender Claims, Class 3 – HoldCo Lender Claims and Class 6 – NPG Equity Interests are impaired under the Plan.

**4.3.**     **Impairment Controversies**.

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

# ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**5.1.**     **Claims and Equity Interests**.

The classes of Claims against the Debtors and Equity Interests in the Debtors shall be treated under the Plan as follows:

(a)     Class 1 – Priority Claims.

Each Allowed Priority Claim against any of the Debtors shall be unimpaired under the Plan and, except to the extent that a holder of an Allowed Priority Claim agrees to a different treatment of such Allowed Priority Claim, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, and such holder of an Allowed Priority Claim shall be paid in full and in Cash on or as soon as practicable after the latest to occur of (i) the Plan Distribution Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Priority Claim; and (iii) the date agreed to by the Debtors and the holder of the Allowed Priority Claim.

(b)     Class 2 – OpCo Lender Claims.

Each holder of an Allowed OpCo Lender Claim against any of the Debtors shall receive, on the Effective Date, its Pro Rata Share of (i) the Reinstated OpCo Term Loan, and (ii) 85% of the New NPG Common Stock issued under the Plan on the Effective Date, subject to

dilution for (a) New NPG Common Stock issuable upon the exercise of the New NPG Warrants, (b) New NPG Common Stock issuable upon the exercise of any New NPG Options that may be issued under the Long Term Management Incentive Plan (up to an additional 7.5% of the New NPG Common Stock, on a fully diluted basis), and (c) any additional New NPG Common Stock that may be awarded in accordance with the Long Term Management Incentive Plan.

The OpCo Lender Claims shall be Allowed, not subject to offset, defense, counterclaim, reduction or credit of any kind whatsoever, in an amount equal to the sum of (i) the aggregate principal amount outstanding under the OpCo Credit Agreement as of the Petition Date, of approximately $530.5 million, plus (ii) accrued and unpaid interest and default interest under the OpCo Credit Agreement through the Petition Date, plus (iii) amounts drawn on the Letters of Credit from the Petition Date through the Effective Date, plus (iv) accrued and unpaid letter of credit fees, administrative fees, and other fees and expenses (including reasonable fees and out-of-pocket expenses of attorneys and advisors incurred by the Prepetition OpCo Agent and the OpCo Lenders) incurred under the OpCo Credit Agreement through the Petition Date. The provisions of the DIP Order containing the Debtors' stipulations regarding indebtedness and security interests shall be deemed incorporated by reference in their entirety as if fully set forth herein.

    (c)    Class 3 – HoldCo Lender Claims.

Each holder of an Allowed HoldCo Lender Claim against any of the Debtors shall receive, on the Effective Date, its Pro Rata Share of the New NPG Warrants. The HoldCo Lender Claims shall be Allowed in the aggregate amount of $215.6 million.

    (d)    Class 4 – Secured Claims.

Each Allowed Secured Claim, other than a OpCo Lender Claim, against any of the Debtors shall be unimpaired under the Plan, and either (i) all of the legal, equitable, and contractual rights to which such Allowed Secured Claim entitle the holder of such Claim shall be fully reinstated and retained on and after the Effective Date, or (ii) such holder shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for its Allowed Secured Claim, either (w) Cash in the full amount of such Allowed Secured Claim, including any postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in such collateral, (y) the collateral securing such Allowed Secured Claim and any interest on such Allowed Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code.

    (e)    Class 5 – Unsecured Claims.

Each Allowed Unsecured Claim against any of the Debtors shall be unimpaired under the Plan, and either (i) all of the legal, equitable, and contractual rights to which such Allowed Unsecured Claim entitle the holder of such Claim shall be fully reinstated and retained on and after the Effective Date, or (ii) such holder shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for its Allowed Unsecured Claim, Cash in the full

amount of such Allowed Unsecured Claim, including any postpetition interest required to be paid thereon under applicable non-bankruptcy law.

(f)    Class 6 – NPG Equity Interests.

On the Effective Date, all Equity Interests in NPG shall be cancelled, and each holder of an Equity Interest in NPG shall not be entitled to any distribution under the Plan. Holders of Equity Interests in NPG shall not be required to surrender their certificates or other instruments evidencing ownership of such Equity Interests.

(g)    Class 7 – Other Equity Interests.

Each Allowed Equity Interest in the Debtors, other than in NPG, shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable, and contractual rights to which such Equity Interests entitle the holder of such Equity Interests shall be fully reinstated and retained on and after the Effective Date.

## ARTICLE VI.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 6.1.    Unclassified Claims.

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

### 6.2.    Treatment of Administrative Claims.

All Administrative Claims shall be treated as follows:

(a)    Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a DIP Claim, (ii) a Fee Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Creditors' Committee (if any) and the Office of the United States Trustee, notice of such Administrative Claim within thirty (30) days after service of Notice of Confirmation.  Such notice must include at a minimum (i) the name of the Debtor(s) purported to be liable for the Administrative Claim, (ii) the name of the holder of the Administrative Claim, (iii) the amount of the Administrative Claim, and (iv) the basis of the Administrative Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)    Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty (40) days after the Effective Date.  **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c)    Allowance of Administrative Claims/Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 6.2(a) shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Claim or (iii) such later date as may be (A) agreed to by the holder of such Administrative Claim or (B) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)    Payment of Allowed Administrative Claims.

On the Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.

(e)    Allowance and Satisfaction of DIP Claims.

On the Effective Date, all outstanding obligations of the Debtors to the DIP Agent and the DIP Lenders under or in respect of the DIP Facility shall be rolled up into loans under the New Term Loan portion of the Exit Facility with an aggregate principal amount for each of the DIP Lenders under the New Term Loan equal to the amount of such DIP Lenders' loans under the DIP Facility.

Upon payment and satisfaction in full of all obligations as provided in this Section 6.2(e), the DIP Facility shall be deemed terminated, satisfied and discharged and the Debtors shall have no other obligations thereunder or under any note, guaranty, pledge, security, or other agreement or instrument, mortgage or Lien executed or delivered pursuant to, in connection with, or related to, the DIP Facility; and the DIP Agent and the DIP Lenders shall be deemed to have relinquished and released all of the Liens securing the DIP Claims, including, without limitation, Liens granted in connection with or under the DIP Facility or the DIP Order, and Liens, if any, arising under section 506(a) of the Bankruptcy Code in the event that the DIP

Claims would be subject to a permissible setoff under section 553 of the Bankruptcy Code. From and after the Effective Date, the DIP Lenders shall, at the sole cost and expense of the New NPG Group, take all action necessary or requested by the New NPG Group to confirm the removal of any claims, security interests and Liens on the properties or assets of the Debtors or the New NPG Group or any other Person securing the DIP Facility. Notwithstanding this Section 6.2(e), the provisions of the DIP Order that provide that they shall survive the confirmation and consummation of the Plan shall so survive and shall remain in full force and effect from and after the Confirmation Date.

   (f) <u>Allowance and Satisfaction of Claims for Fees and Expenses of the Prepetition OpCo Agent</u>.

    On the Effective Date, the Debtors shall pay a Plan Distribution of Cash, without interest, in an amount equal to all fees and the reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of attorneys and advisors) incurred by, and administration fees payable to, the Prepetition OpCo Agent under the OpCo Credit Agreement for the period through the Effective Date, in each case to the extent not reimbursed on or prior to the Effective Date, without the necessity of filing a fee application or any other application of any kind or nature with the Bankruptcy Court.

**6.3.** **<u>Treatment of Tax Claims.</u>**

    At the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; <u>provided</u>, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with this Section. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

# ARTICLE VII.

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## CLASSES OF CLAIMS OR EQUITY INTERESTS

**7.1.    Classes Entitled to Vote.**

Class 2 – OpCo Lender Claims and Class 3 – HoldCo Lender Claims are impaired and entitled to vote on the Plan.  Class 1 – Priority Claims, Class 4 – Secured Claims, Class 5 – Unsecured Claims, and Class 7 – Other Equity Interests are unimpaired and deemed to have accepted the Plan and, therefore, are not entitled to vote on the Plan.  Class 6 – NPG Equity Interests is deemed to have rejected the Plan and, therefore, is not entitled to vote on the Plan.

**7.2.    Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

**7.3.    Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

**7.4.    Confirmation of All Cases.**

Except as provided in Section 15.18, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

# ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1.    Operations Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**8.2.    Implementing Transactions on or Prior to the Effective Date.**

The following transactions shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date:

(a)    Debtors' Organizational Structure.

Without further order of the Bankruptcy Court, the Debtors shall take the following actions to restructure the organizational structure of the Debtors: (a) on or prior to the Effective Date, (i) Debtors Arbonne HoldCo and Levlad HoldCo shall merge, with Arbonne HoldCo surviving the merger (the surviving company referred to herein as "New HoldCo"), and (ii) NPG shall be converted from a limited liability company to a Delaware corporation (New NPG); (b) on the Effective Date, the Equity Interests in NPG shall be cancelled and New NPG shall issue (i) 85% of the New NPG Common Stock to the OpCo Lenders as set forth in Section 5.1(b), (ii) 10% of the New NPG Common Stock to the New Term Lenders in connection with the New Term Loan portion of the Exit Facility, (iii) 5% of the New NPG Common Stock pursuant to the Long Term Management Incentive Plan, and (iv) 100% of the New NPG Warrants to the HoldCo Lenders as set forth in Section 5.1(c). The issuance of the New NPG Common Stock and the New NPG Warrants and the distribution thereof shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

(b)    New Term Loan under the Exit Facility.

On the Effective Date, Arbonne and Levlad, as borrowers, and certain other Debtors as guarantors, shall enter into the New Term Loan under the Exit Facility with the New Term Lenders. All obligations then outstanding under the DIP Facility shall be rolled into and become the obligations of the parties under the New Term Loan portion of the Exit Facility. The terms of the New Term Loan are set forth on Exhibit "F" hereto.

**8.3.    Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the New NPG Group, the Debtors and their Affiliates to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the stockholders or directors of New NPG, the Debtors and their Affiliates, including, among other things, (a) the issuance of the New NPG Common Stock, the New NPG Warrants and the New NPG Options, the execution, delivery and performance of the Exit Facility (including the New Term Loan and Reinstated OpCo Term Loan) and the incurrence of indebtedness and the granting of liens thereunder, (b) the adoption of the New NPG Constituent Documents, (c) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (d) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, and (e) resolving all intercompany accounts of the Debtors through capital contributions, compromise, or in any other reasonable fashion. On the Effective Date, the officers of the Debtors and the New NPG Group are authorized and directed to do all things and

to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors and the New NPG Group, as applicable. All obligations of the Debtors to indemnify and hold harmless their current and former directors, officers and employees, whether arising under the Debtors' constituent documents, contract, law or equity, shall be assumed by, and assigned to, the applicable member of the New NPG Group upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date. The prosecution of any so-indemnified Cause of Action against the Persons to whom such rights(s) of indemnification are owed shall be, upon the occurrence of the Effective Date, enjoined and prohibited.

**8.4.**     **<u>Re-Vesting of Assets</u>.**

Upon the occurrence of the Effective Date, <u>except</u> as otherwise expressly provided in the Plan, title to all of the Assets of the Debtors shall vest in the New NPG Group free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances and without further order of the Bankruptcy Court. On and after the occurrence of the Effective Date, <u>except</u> as otherwise provided in the Plan, the New NPG Group may operate their businesses and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

**8.5.**     **<u>Initial Boards of Directors</u>.**

(a)     Except as otherwise set forth herein or disclosed to the Bankruptcy Court prior to the conclusion of the Confirmation Hearing, on the Effective Date, the initial board of directors (or managers, as applicable) of each entity in the New NPG Group shall be comprised of the individuals who hold such positions as of the Effective Date.

(b)     On the Effective Date, the board of directors of New NPG shall consist of five members, composed of (i) the chief executive officer of Arbonne, (ii) one (1) director selected by EOS, (iii) one (1) director selected by TCW and (iv) two (2) directors which shall be Independent Directors selected by the Majority Consenting OpCo Lenders other than EOS and TCW.

(c)     The identities of the members of the board of directors (or managers, as applicable) of each member of the New NPG Group will be disclosed prior to the conclusion of the Confirmation Hearing.

(d)     From and after the Effective Date, the members of the board of directors (or managers, as applicable) of each member of the New NPG Group shall be selected and determined in accordance with the provisions of the respective New NPG Constituent Documents and applicable law.

**8.6. Management and Officers.**

On the Effective Date, the New NPG Group shall adopt the New NPG Constituent Documents. Except as otherwise set forth herein, the officers of the Debtors as of the Effective Date shall continue in such positions after the Effective Date with the New NPG Group in accordance with their respective employment agreements, if any, and applicable law. Subject to any applicable employment agreements and applicable law, from and after the Effective Date, the officers of each of the entities in the New NPG Group shall be selected and appointed by the board of directors or members, as applicable, of such entity, in accordance with, and pursuant to, the provisions of applicable law and the respective New NPG Constituent Documents.

**8.7. Director and Officer Liability Insurance.**

The Debtors shall purchase, on or before the Effective Date, an insurance policy that provides director and officer liability tail coverage for a period of six (6) years for, among others, any current or former directors and officers who will not be serving in such capacities after the Effective Date. The cost of the premium for such policy shall not exceed $120,000.

**8.8. Long Term Management Incentive Plan.**

On the Effective Date, the Debtors shall implement a Long Term Management Incentive Plan for the benefit of certain employees of the Debtors which shall provide for the issuance of Equity Interests in New NPG consisting of:

(a) An award of 5% of New NPG Common Stock upon the Effective Date, subject to four-year annual vesting and other terms; and

(b) New NPG Options as set forth on Exhibit "D" attached hereto and subject to other terms.

Eligibility to participate in the Long Term Management Incentive Plan shall be determined by the chief executive officer and the compensation committee of the board of directors of New NPG. All New NPG Common Stock and New NPG Options issued under the Long Term Management Incentive Plan shall be dilutive to the New NPG Common Stock granted to the OpCo Lenders and to the lenders under the New Term Loan portion of the Exit Facility and pursuant to the New NPG Warrants and not dilutive to any New NPG Common Stock or New NPG Options theretofore granted pursuant to the Long Term Management Incentive Plan.

**8.9. Causes of Action.**

Except as otherwise provided in the Plan, (a) all Causes of Action of any of the Debtors and their respective Estates shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, New NPG, and (b) the rights of New NPG to commence, prosecute or settle such Causes of Action, in its sole discretion, shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the New NPG Group will not pursue any and all available Causes of Action against them. The New NPG Group and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors and the New NPG Group expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

**8.10. <u>Appointment of the Disbursing Agent</u>.**

Upon the occurrence of the Effective Date, New NPG shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**8.11. <u>Sources of Cash for Plan Distributions</u>.**

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from the Debtors' existing Cash balances or the liquidation of Assets.

**8.12. <u>Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent</u>.**

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (<u>including</u> the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641, <u>et seq.</u>), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

**8.13. <u>Releases by the Debtors</u>.**

**As of the Effective Date, for good and valuable consideration, the Debtors and the New NPG Group in their individual capacities and as Debtors in Possession will be deemed to release and forever waive and discharge all Causes of Action that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the New NPG Group, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or the New NPG Group against (a) the Debtors' and their non-Debtor subsidiaries' present and former officers, directors, managers and**

employees, in their respective capacities as such, (b) holders of Equity Interests in NPG, including Harvest Partners, and their respective present and former officers, directors and employees, in their respective capacities as such, (c) the OpCo Lenders and the Prepetition OpCo Agent, in their respective capacities as such, (d) the HoldCo Lenders and the Prepetition HoldCo Agent, in their respective capacities as such, (e) the DIP Lenders and the DIP Agent, in their respective capacities as such, and (f) each of the foregoing's respective successors and assigns, and each of their respective agents, attorneys, advisors, accountants, investment bankers, bankruptcy and restructuring advisors, and financial advisors, in their respective capacities as such; <u>except</u>, that nothing in this Section shall be construed to release any party or entity from (a) conduct that (i) would violate any provision in a written agreement with the Debtors or their non-Debtor subsidiaries relating to nonsolicitation, noncompetition, nondisparagement, nondisclosure/use of trade secrets and confidential information, and inventions, and return of company property, or (ii) is, with respect to the Debtors and their non-Debtor subsidiaries, theft, tortious interference with contract or a prospective business relationship, or defamation (including slander and libel), as determined by a Final Order, or (b) any objections by the Debtors or the New NPG Group to Claims filed by such party or entity against any Debtor and/or its Estate (other than the Claims of the Prepetition OpCo Agent, the OpCo Lenders, the Prepetition HoldCo Agent, the HoldCo Lenders, the DIP Agent and the DIP Lenders, which are or shall be deemed Allowed as set forth in this Plan and the DIP Order).

**8.14.** <u>**Releases by Creditors and Equity Security Holders**</u>.

Subject to the occurrence of the Effective Date, any holder of a Claim or Equity Interest that is impaired or unimpaired under the Plan, for good and valuable consideration, will be presumed conclusively to have released each of (a) the Debtors', their non-Debtor subsidiaries', and the New NPG Group's respective present and former officers, directors, managers and employees, in their respective capacities as such, (b) holders of Equity Interests in NPG, including Harvest Partners, and their respective present and former officers, directors and employees, in their respective capacities as such, (c) the OpCo Lenders and the Prepetition OpCo Agent, in their respective capacities as such, (d) the HoldCo Lenders and the Prepetition HoldCo Agent, in their respective capacities as such, (e) the DIP Lenders and the DIP Agent, in their respective capacities as such, and (f) each of the foregoing's respective successors and assigns, and each of their respective agents, attorneys, advisors, accountants, investment bankers, bankruptcy and restructuring advisors, and financial advisors, in their respective capacities as such, from any Causes of Action that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the New NPG Group, the Chapter 11 Cases, the Plan or the Disclosure Statement; <u>except</u> that the foregoing releases shall not apply to any holder of a Claim or Equity Interest if such holder "opts out" of the releases provided in this Section 8.14 by filing with the Bankruptcy Court on or prior to the Plan Objection Deadline a timely written notice of election to opt out of the releases contained in this Section 8.14. Any "opt out" of the releases contained in this Section 8.14 shall not and shall not be construed in any way to affect any other release, exculpation or injunction provided in the Plan,

**including without limitation the releases, exculpations and injunctions provided in Sections 8.13, 12.3, 15.3, 15.6, 15.7, 15.8, and 15.23 of the Plan.**

## ARTICLE IX.

## PLAN DISTRIBUTION PROVISIONS

### 9.1. Plan Distributions.

Except as otherwise set forth in the Plan, the Disbursing Agent shall make all Plan Distributions. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date. The Disbursing Agent and its agents shall have no obligation to recognize any transfer of a Claim after the Effective Date.

### 9.2. Timing of Plan Distributions.

Except for Plan Distributions that shall be made on the Effective Date in accordance with the Plan, each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

### 9.3. Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, if any, or the Debtors' records, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to New NPG.

### 9.4. De Minimis Plan Distributions.

No Plan Distribution of less than ten dollars ($10.00) shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing

Agent.  If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall revert to New NPG.

**9.5.    Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.  Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to New NPG.

**9.6.    Manner of Payment under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may be, in addition to the foregoing, made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.7.    Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent.**

Except as otherwise ordered by the Bankruptcy Court or as provided herein, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business.  Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by the Bankruptcy Court.

**9.8.    Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars (whether in Cash or notes) will be made.  Fractional shares and fractions of dollars (whether in Cash or notes) shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

**9.9.    Special Distribution Provisions Concerning the Prepetition Credit Facilities.**

The following additional provisions shall apply specifically to Plan Distributions to be made to the holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims under the Plan:

(a)    <u>Service of the Prepetition OpCo Agent and the Prepetition HoldCo Agent</u>.  The Prepetition OpCo Agent and the Prepetition HoldCo Agent and their agents, successors and assigns or such entity appointed by the Prepetition Lenders shall facilitate the making of Plan Distributions to the holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims for which they serve as agent and upon the completion thereof, shall be discharged of all their respective obligations associated with the Prepetition Credit Facilities.  The rights of holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims shall continue in effect for the sole purpose of allowing the Prepetition OpCo Agent and the Prepetition HoldCo Agent to make Plan Distributions on account of such Claims.

(b)    <u>Distributions</u>.  On the Plan Distribution Date, all OpCo Lender Claims and HoldCo Lender Claims shall be settled and compromised in exchange for the distribution to the Prepetition OpCo Agent and the Prepetition HoldCo Agent of the applicable Plan Distributions to the holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims as specified in Sections 5.1(b) and 5.1(c), as applicable; <u>provided</u>, that the Prepetition OpCo Agent and the Prepetition HoldCo Agent shall return to the Disbursing Agent any Plan Distributions held on account of any Allowed OpCo Lender Claims or Allowed HoldCo Lender Claims as to which the requirements of Section 9.10 are not satisfied by the first anniversary of the Effective Date.

(c)    <u>Enforcement of Rights of the Prepetition OpCo Agent and the Prepetition HoldCo Agent</u>.  The rights, liens (including the charging liens), and Claims of the Prepetition OpCo Agent and the Prepetition HoldCo Agent with respect to the collection of their fees, expenses or any indemnification obligations from the holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims shall survive confirmation of the Plan and may be fully enforced by the Prepetition OpCo Agent and the Prepetition HoldCo Agent.  All distributions to the Prepetition OpCo Agent and the Prepetition HoldCo Agent on behalf of the holders of Allowed OpCo Lender Claims and Allowed HoldCo Lender Claims shall be applied by the Prepetition OpCo Agent and the Prepetition HoldCo Agent as provided by the applicable agreement.

**9.10.    <u>Cancellation of Instruments</u>.**

As a condition to receiving any Plan Distribution, on or before the Plan Distribution Date, to the extent that an Allowed Claim is evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, such certificate, instrument or note shall thereafter be cancelled and extinguished and shall represent only the right, if any, to participate in the distributions contemplated by this Plan; <u>provided</u>, however, that the provisions of the OpCo Credit Agreement governing the relationship of the Prepetition OpCo Agent and the OpCo Lenders, including but not limited to those provisions relating to the Prepetition OpCo Agent's rights of indemnification from the OpCo Lenders, shall not be affected by and shall survive the Plan, entry of the Confirmation Order or the occurrence of the Effective Date; <u>provided</u>, <u>further</u>, that the provisions of the OpCo Credit Agreement governing the Prepetition OpCo Agent's rights of indemnification from the Debtors (and following the Effective Date, from the New NPG Group) shall not be affected by and shall survive the Plan, entry of the Confirmation Order or the occurrence of the Effective Date.

# ARTICLE X.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

### 10.1.  Objection Deadline.

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

### 10.2.  Prosecution of Contested Claims.

The Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

### 10.3.  Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

### 10.4.  Entitlement to Plan Distributions upon Allowance.

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 15.19.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

### 10.5.  Estimation of Claims.

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement, and

resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE XI.

### CONDITIONS PRECEDENT TO
### CONFIRMATION OF THE PLAN AND
### THE OCCURRENCE OF THE EFFECTIVE DATE

**11.1.   Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)      The Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) approving the manner of solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan, (vi) approving the Plan Documents, and (vii) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan and the Plan Documents;

(b)      The Confirmation Order, the Plan and all other definitive documentation are consistent with the Restructuring Term Sheet and otherwise in form and substance reasonably satisfactory to the Debtors and the Majority Consenting OpCo Lenders; provided, that all post-restructuring documentation shall be in form and substance reasonably satisfactory only to the Majority Consenting OpCo Lenders;

(c)      The Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation;

(d)      The Debtors shall have received a binding commitment for the New Term Loan portion of the Exit Facility with terms and conditions that are consistent with the Restructuring Term Sheet;

(e)      The Schedule of Rejected Executory Contracts and Unexpired Leases, if any, shall be reasonably satisfactory to the Debtors and the Majority Consenting OpCo Lenders; and

(f)      Subject to Section 11.3 and Section 15.16, the Confirmation Order shall be entered no later than April 5, 2010.

**11.2.** **Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date:

(a)     Subject to Section 11.3 and Section 15.16, the Confirmation Order shall have been entered no later than April 5, 2010, and such Confirmation Order shall have become a Final Order on or before the fifteenth (15th) day following entry of such order;

(b)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to (i) the obligations of the Debtors under the Plan and the Plan Documents, and (ii) the obligations of the New Term Lenders to make loans under the New Term Loan portion of the Exit Facility;

(c)     The Confirmation Order, the Plan and all other definitive documentation shall continue to be consistent with the Restructuring Term Sheet and otherwise in form and substance reasonably satisfactory to the Debtors and the Majority Consenting OpCo Lenders; provided, that all post-restructuring documentation shall continue to be in form and substance reasonably satisfactory only to the Majority Consenting OpCo Lenders;

(d)     All actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed;

(e)     The Exit Facility shall have become effective and all conditions to the effectiveness thereof shall have been satisfied or waived;

(f)     The outstanding Letters of Credit either (i) shall have been (x) returned to the issuer marked cancelled or (y) cash collateralized with Cash in an amount equal to 105% of the face amount of the outstanding Letters of Credit or (ii) the issuer shall have been provided with back-to-back letters of credit in an amount equal to 105% of the face amount of the outstanding Letters of Credit and in form and substance and from a financial institution acceptable to the issuer;

(g)     The New NPG Common Stock and New NPG Warrants to be issued under the Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding;

(h)     The payment of all fees, reasonable costs and expenses of (i) the DIP Agent incurred under the DIP Facility and (ii) the Prepetition OpCo Agent incurred under the OpCo Credit Agreement on or prior to the Effective Date; and

(i)     Subject to Section 11.3 and Section 15.16, fifteen (15) days shall not have passed following entry of the Confirmation Order.

**11.3.** **Waiver of Conditions.**

The Debtors may, with the prior written consent of the Majority Consenting OpCo Lenders, waive any one or more of the conditions set forth in Section 11.1 or Section 11.2 without notice or order of the Bankruptcy Court and without notice to any parties in interest;

provided, however, that, any extension by more than fifteen (15) days of the time periods set forth in Section 11.1(f), Section 11.2(a) and Section 11.2(i) shall require the prior written consent of the Requisite Consenting OpCo Lenders; provided further, however, that with respect to waiving the conditions set forth in Section 11.1(f), Section 11.2(a) and Section 11.2(i), the prior written consent of the OpCo Lenders shall not be required if the non-occurrence of such condition or conditions is a result of a material breach of the OpCo Plan Support Agreement by one or more OpCo Lenders party to such agreement and such breach has a material adverse effect on the Debtors or their ability to consummate the transactions contemplated by the OpCo Lender Plan Support Agreement in accordance with the terms of the Restructuring Term Sheet.

**11.4.** **Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in a Debtor; (b) prejudice in any manner the rights of the Debtors, including, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

**ARTICLE XII.**

**THE DISBURSING AGENT**

**12.1.** **Powers and Duties.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article X, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in Article X; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

**12.2.** **Plan Distributions.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Plan Distribution Date therefor.

**12.3.  Exculpation.**

**Except as otherwise provided in this Section, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this Section shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.**

## ARTICLE XIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**13.1.  Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)  On the Effective Date, all executory contracts and unexpired leases of the Debtors shall be assumed pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in any "Schedule of Rejected Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing; (iii) all executory contracts and unexpired leases rejected under this Plan or by order of the Bankruptcy Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; and (v) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory.

(b)  Inclusion of a contract, lease or other agreement on any "Schedule of Rejected Executory Contracts and Unexpired Leases" shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

(c)  The Plan shall constitute a motion to reject such executory contracts and unexpired leases set forth in any "Schedule of Rejected Executory Contracts and Unexpired

Leases" filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing, and the Debtors shall have no liability thereunder <u>except</u> as is specifically provided in the Plan. The Debtors reserve the right to amend the Schedule of Rejected Executory Contracts and Unexpired Leases on or prior to the Confirmation Date to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) and unexpired lease(s) shall be deemed to be, respectively, assumed or rejected by the Debtors pursuant to this Article XIII. Any such amendment to the Schedule of Rejected Executory Contracts and Unexpired Leases must be reasonably satisfactory to the Majority Consenting OpCo Lenders. The Debtors will provide notice of any amendments to the Schedule of Rejected Executory Contracts and Unexpired Leases to the parties to the executory contracts or unexpired lease affected thereby. The listing of a document on the Schedule of Rejected Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtors that such document is an executory contract or that the Debtors have any liability thereunder. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of rejections under this Section pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

(d)     The Plan shall constitute a motion to assume such executory contracts and unexpired leases assumed pursuant to Section 13.1(a). Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and (b) of the Bankruptcy Code. Any non-Debtor counterparty to an agreement designated as being assumed in Section 13.1(a) who disputes the assumption of such executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the assumption, which objection shall set forth the basis for the dispute by no later than ten (10) Business Days prior to the Confirmation Hearing. The failure to timely object shall be deemed a waiver of any and all objections to the assumption of executory contracts and unexpired leases designated as being assumed in Section 13.1(a).

## 13.2.  <u>Cure</u>.

At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. The Debtors' election regarding satisfaction of any monetary default in excess of $100,000 under an executory contract or unexpired lease to be assumed under this Plan shall require the prior written consent of the Majority Consenting OpCo Lenders. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assigned; or (iii) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. The Debtors believe that they are current on all obligations under all of the executory contracts and unexpired leases to be assumed pursuant to Section 13.1(a), and thus the Debtors do not believe that any cure obligations are owed. Any non-Debtor counterparty to an executory contract or

unexpired lease who disputes whether the Debtors have any cure obligations with respect to the executory contract or unexpired lease to which they are a party must file with the Bankruptcy Court, and serve upon the Debtors and the Creditors' Committee, a written objection regarding the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtors, including the lack of any cure obligations.

**13.3.  <u>Claims Arising from Rejection, Expiration or Termination.</u>**

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to this Article XIII, no later than thirty (30) days after the Confirmation Date. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or this Section 13.3, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the New NPG Group, their respective Estates, Affiliates, or Assets.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

**ARTICLE XIV.**

**<u>RETENTION OF JURISDICTION</u>**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) that relates to the following:

(i)  To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XIII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (<u>including</u>, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)  To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that,

pursuant to the Plan, may be instituted by the Disbursing Agent or the New NPG Group, as applicable, after the Effective Date;

(iii)    To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)    To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)    To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan or its interpretation, implementation, enforcement, or consummation;

(viii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the New NPG Group, the Debtors, the Debtors in Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors commenced by the Disbursing Agent, the Debtors or any third parties, as applicable, before or after the Effective Date;

(xiv)   To enter an order or final decree closing the Chapter 11 Cases;

(xv)   To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi)   To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

# ARTICLE XV.

## MISCELLANEOUS PROVISIONS

### 15.1.   Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 15.2.   Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

### 15.3.   Satisfaction of Claims.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever against the Debtors and the Debtors in Possession, or any of their Estates, Assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in Possession shall be satisfied, discharged, and released in full.  Neither the New NPG Group nor the Debtors shall be responsible for any pre-Effective Date obligations of the Debtors or the Debtors in Possession, except those expressly assumed by the New NPG Group or any such Debtor, as applicable.  Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the New NPG Group, the Debtors, their respective successors or assigns, or their Estates, Affiliates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

### 15.4.   Special Provisions Regarding Insured Claims.

Plan Distributions to each holder of an Allowed Insured Claim against any Debtor shall be made in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified; except, that there shall be deducted from any Plan

Distribution on account of an Insured Claim, for purposes of calculating the Allowed amount of such Claim, the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim. Nothing in this Section 15.4 shall constitute a waiver of any Claim, right, or Cause of Action the Debtors or their Estates may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which a Debtor is an insured or beneficiary.

**15.5.  Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise compromised and settled pursuant to the Plan. Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtors to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a Subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Equity Interest.

**15.6.  Exculpation.**

**None of the Debtors, the New NPG Group, Harvest Partners, the OpCo Lenders and the Prepetition OpCo Agent, in their respective capacities as such, the HoldCo Lenders and the Prepetition HoldCo Agent, in their respective capacities as such, the DIP Lenders and the DIP Agent, in their respective capacities as such, or any of their respective officers, directors, members, employees, agents, representatives, advisors, attorneys or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, (a) the filing and prosecution of the Chapter 11 Cases, (b) the negotiation, filing and pursuit of approval of the Disclosure Statement, (c) the negotiation, filing and pursuit of confirmation of the Plan, (d) the consummation of the Plan, or (e) the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.**

**15.7.  Discharge of Liabilities.**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors and the New NPG Group shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the New NPG Group and its

Affiliates, the Debtors, their Assets, or any property dealt with under the Plan, any further Claim or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, NEW NPG AND ITS AFFILIATES SHALL NOT HAVE OR BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN AND NO SUCH LIABILITY, CLAIM, OR OBLIGATION FOR ANY ACTS SHALL ATTACH TO NEW NPG OR ITS AFFILIATES.**

### 15.8. **Discharge of Debtors.**

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims against the Debtors of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, the New NPG Group, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, the New NPG Group, their Estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, the New NPG Group, their Estates, or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and operates as an injunction against the prosecution of any action against the Debtors, the New NPG Group or property of the Debtors or the New NPG Group or their Estates to the extent it relates to a discharged Claim.

### 15.9. **Notices.**

Any notices, requests, and demands to or upon the Debtors or the New NPG Group, or the Majority Consenting OpCo Lenders or Requisite Consenting OpCo Lenders, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Natural Products Group, LLC
c/o Arbonne International, LLC
9400 Jeronimo Road
Irvine, CA 92618
Attention: Ashley J. Good, Esq.
Telephone: (949) 460-1147
Facsimile: (949) 460-1204

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Attention: Thomas E Lauria, Esq.
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

Fox Rothschild LLP
919 N. Market St, 16th floor
Wilmington, DE 19801
Attention: Jeffrey M. Schlerf, Esq.
Telephone: (302) 622-4212
Facsimile: (302) 656-8920

Canadian Imperial Bank of Commerce
425 Lexington Avenue, 4th Floor
New York, NY 10017
Attn:   Charles Mulkeen
Telephone: (212) 856-3880
Facsimile: (212) 856-4135

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
Attn: Mark F. Liscio, Esq.
Telephone: (212) 836-8000
Facsimile: (212) 836-6525

**15.10.  Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**15.11.  Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements,

documents, and instruments executed in connection with the Plan, <u>except</u> as otherwise expressly provided in such instruments, agreements or documents.

**15.12.  Expedited Determination.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**15.13.  Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**15.14.  Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, Notice of Confirmation and all relevant deadlines and dates under the Plan, <u>including</u>, but not limited to, the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**15.15.  Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, <u>except</u> as set forth in the Plan or as ordered by the Bankruptcy Court.

**15.16.  Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors (a) at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code; or (b) at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  Notwithstanding the foregoing, any modification to the Plan must be approved in writing by the Majority Consenting OpCo Lenders; <u>provided</u>, that any modification, at any time, of (i) any term or provision of this Plan, the effect of which is to modify the form of, or decrease the amount or percentage of, the aggregate recovery (or any component thereof) to be paid, issued or distributed to the OpCo Lenders (or

any one of them) by more than 0.75% of the aggregate outstanding amount of the OpCo Lender Claims, (ii) any term or provision of this Plan, the effect of which is to materially modify the form of, or materially increase the amount or percentage of, the recovery (or any component thereof) to be paid, issued or distributed to any Person(s) (other than the OpCo Lenders) pursuant to this Plan, (iii) Section 11.1(f), Section 11.2(a) or Section 11.2(i), the effect of which is to extend any of the time periods specified therein for a period of greater than fifteen (15) days, and (iv) any of the provisions of this Section 15.16, shall require the prior written consent of the Requisite Consenting OpCo Lenders. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

## 15.17. <u>Corrective Action</u>.

Prior to the Effective Date, upon the prior written consent of the Majority Consenting OpCo Lenders, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

## 15.18. <u>Revocation of Plan</u>.

The Debtors reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date; <u>provided</u>, however, that unless otherwise agreed to in writing by the Majority Consenting OpCo Lenders, revocation of the Plan shall be permitted only in the event that the board of directors of the Debtors has determined in good faith, after consultation with legal counsel, that pursuing the Plan would be inconsistent with its applicable fiduciary obligations; <u>provided</u> <u>further</u>, that nothing contained in the Plan shall be deemed to prevent the Debtors from taking or failing to take any action that they are obligated to take (or fail to take) in the performance of their fiduciary or similar duty which the Debtors owe to any other Person.

If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors in accordance with this Section 15.18, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor.

In the event that the Debtors choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Debtors reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned. With respect to those Debtors for which the Confirmation Hearing has been adjourned, and subject to this Section 15.18 and Section 15.16, the Debtors reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at

such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

**15.19.  Setoff Rights.**

Other than with respect to the OpCo Lender Claims and the DIP Claims (as to which any and all rights of setoff or recoupment have been waived), in the event that any Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, setoff against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor may have against the holder of any Claim.

**15.20.  Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution.  The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**15.21.  Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

**15.22.  Dissolution of the Creditors' Committee.**

Upon the Effective Date, the Creditors' Committee, if any, shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Creditors' Committee, and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**15.23. <u>Injunctions</u>.**

The Confirmation Order will contain an injunction permanently enjoining the commencement or prosecution of certain actions, which injunction shall provide, inter alia:

(a) **On the Effective Date and <u>except</u> as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the New NPG Group or its Affiliates, the Debtors or their Affiliates, the Estates, the Assets, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):**

(i) **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (<u>including</u>, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

(ii) **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

(iii) **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

(iv) **asserting any setoff, right of subrogation or recoupment of any kind; <u>provided</u>, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 15.19; and**

(b) **all Persons are permanently enjoined from commencing or continuing in any manner any Cause of Action, whether directly, derivatively, on account of or respecting any Cause of Action which has been released pursuant to the Plan, including pursuant to Sections 8.13, 8.14, 12.3, 15.3, 15.6, 15.7, and 15.8 of the Plan.**

**15.24. <u>Binding Effect</u>.**

The Plan shall be binding upon the New NPG Group, the Debtors, the holders of all Claims and Equity Interests, parties in interest, Persons and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**15.25. <u>Successors and Assigns</u>.**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**15.26. <u>Conflict between Plan, Disclosure Statement and Plan Documents</u>.**

(a)     Except as provided in Section 15.26(b) below, in the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the terms and provisions of the Plan shall control and govern.

(b)     In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Plan Documents, including without limitation the Exit Facility, the terms and provisions of the Plan Documents shall control and govern.

**15.27. <u>Severability</u>.**

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH AND SUBJECT TO SECTION 15.16 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

**15.28. <u>No Admissions</u>.**

None of the filing of the Plan, the taking by the Debtors, the OpCo Lenders and the Prepetition OpCo Agent, in their respective capacities as such, the HoldCo Lenders and the Prepetition HoldCo Agent, in their respective capacities as such, the DIP Lenders and the DIP Agent, in their respective capacities as such, of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by any such party against interest, or be or be deemed to be a waiver of any rights, claims or remedies that such parties may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved.  In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and the Plan Documents, and any statement contained herein or therein, may not be used by any Person, party or entity against any of the Debtors, the OpCo Lenders, the Prepetition OpCo Agent, the HoldCo Lenders, the Prepetition HoldCo Agent, the DIP Lenders and the DIP Agent.

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR**

**LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, NPG OR ANY OF ITS SUBSIDIARIES AND AFFILIATES, AS DEBTORS AND DEBTORS IN POSSESSION IN THESE CHAPTER 11 CASES.**

**[Signatures on following pages]**

Dated:  January 27, 2010

Respectfully submitted,

**NATURAL PRODUCTS GROUP, LLC**

By: _____
Name:  Mark I. Lehman
Title:   Chief Financial Officer and Secretary

**ARBONNE INTERMEDIATE HOLDCO, INC.**

By: _____
Name:  Mark I. Lehman
Title:   Secretary and Treasurer

**LEVLAD INTERMEDIATE HOLDCO, INC.**

By: _____
Name:  Mark I. Lehman
Title:   Secretary and Treasurer

**ARBONNE INTERNATIONAL, LLC**

By: _____
Name:  Mark I. Lehman
Title:   Chief Financial Officer and Secretary

**LEVLAD, LLC**

By: _____
Name:  Mark I. Lehman
Title:   Chief Financial Officer and Secretary

**ARBONNE INSTITUTE OF RESEARCH AND DEVELOPMENT, LLC**

By: _____
Name:  Mark I. Lehman
Title:   Chief Financial Officer and Secretary

**ARBONNE INTERNATIONAL HOLDINGS, INC.**

By: _____
Name: Mark I. Lehman
Title:  Chief Financial Officer and Secretary

**ARBONNE INTERNATIONAL DISTRIBUTION, INC.**

By: _____
Name: Mark I. Lehman
Title:  Chief Financial Officer and Secretary

## EXHIBIT "A"

## GLOSSARY OF DEFINED TERMS

1.      "Administrative Claim" means a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Fee Claims, DIP Claims and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

2.      "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

3.      "AIRD" means Arbonne Institute of Research and Development, LLC.

4.      "Allowed," when used

        (a)      with respect to any Claim, except for a Claim that is an Administrative Claim or a Letter of Credit Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim;

        (b)      with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 6.2(c) of this Plan;

        (c)      with respect to a Letter of Credit Claim, means such Letter of Credit Claim to the extent the Debtors' reimbursement obligation to the holder of the Letter of Credit Claim has become noncontingent and fixed as a result of a draw on the underlying letter of credit by the counterparty thereto; and

        (d)      with respect to Equity Interests in any Debtor, means the Equity Interests in any Debtor as reflected in the stock transfer ledger or similar register of such Debtor as of the Effective Date.

5.      "Arbonne" means Arbonne International, LLC.

6.      "Arbonne HoldCo" means Arbonne Intermediate Holdco, Inc.

7.      "Assets" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

8.      "Avoidance Actions" means all Causes of Action of the Estates that arise under section 544, 545, 547, 548, 550, 551 and/or 553 of the Bankruptcy Code.

9.      "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

10.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

11.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

12.      "Bar Date Notice" means the notice of establishment of a bar date for filing proofs of Claim against the Estates, as approved by the Bar Date Order.

13.      "Bar Date Order" means an order of the Bankruptcy Court entered in the Chapter 11 Cases, pursuant to Bankruptcy Rule 3003(c), (i) establishing a bar date for filing certain proofs of Claim in the Chapter 11 Cases; (ii) establishing ramifications for failure to comply therewith; (iii) approving a proof of Claim form and notice of bar date; and (iv) approving notice procedures.

14.      "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

15.      "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

16.      "Causes of Action" means all claims, rights, actions, causes of action, demands, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

17.      "Chapter 11 Cases" means the cases that will be commenced under chapter 11 of the Bankruptcy Code in the Bankruptcy Court with respect to each of the Debtors styled as <u>In re Natural Products Group, LLC, et al.</u>, Chapter 11 Case No. 10-10239.

18.      "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.   For avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtors if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when

injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtors have received one or more demands for payment for injuries or damages arising from such acts or omissions.

19.     "Claim Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

20.     "Claims Agent" means the Person designated by order of the Bankruptcy Court to process proofs of claim.

21.     "Company" shall mean the Debtors and their non-Debtor subsidiaries.

22.     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

23.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

24.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

25.     "Contested" (a) when used with respect to a Claim, means such Claim as to which a proof of claim has been filed with the Bankruptcy Court, and as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or as to which an objection has been filed on or before the Effective Date; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and (b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer ledger or similar register as of the Effective Date.

26.     "Creditors' Committee" means an Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, if any.

27.     "Debtor" means any of NPG and its direct and indirect subsidiaries that are debtors in the Chapter 11 Cases, including those parties listed on Exhibit "B" to the Plan.

28.     "Debtor in Possession" means any Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

29.     "DIP Agent" means Canadian Imperial Bank of Commerce, as administrative and collateral agent under the DIP Facility.

30.     "DIP Claim" means a Claim of the DIP Lenders arising under, in connection with, or related to, the DIP Facility, including with respect to any and all guarantees, pledges and other agreements, documents, notes and instruments executed or delivered by any Debtor with respect to any and all obligations under the DIP Facility.

31.    "DIP Facility" means a Debtor-In-Possession Credit Agreement to be entered into between Arbonne and Levlad, as borrowers, and certain other Debtors as guarantors, the DIP Agent, and those OpCo Lenders who agree to participate as lenders, together with all documents, instruments, notes, instruments and other agreements executed, delivered or filed pursuant to or in connection with the aforementioned Debtor-In-Possession Credit Agreement and the orders of the Bankruptcy Court authorizing and governing such facility, as such Debtor-In-Possession Credit Agreement, documents, notes, instruments and other agreements may have been or shall be amended, supplemented, modified or allonged.

32.    "DIP Lender" means any lending institution from time to time party to the DIP Facility, and its successors and assigns.

33.    "DIP Order" means an order of the Bankruptcy Court approving the DIP Facility, authorizing the Debtors that are parties thereto to enter into the DIP Facility, granting certain rights, protections and liens to and for the benefit of the DIP Lenders as set forth therein, and authorizing the Debtors to make borrowings under the DIP Facility.

34.    "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

35.    "Disbursing Agent" means New NPG or, after the occurrence of the Effective Date, any agent selected by New NPG, acting on behalf of the Debtors in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

36.    "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

37.    "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code.

38.    "Effective Date" means a date selected by the Debtors which shall be a Business Day that is no later than three (3) days after all of the conditions specified in Section 11.2 have been satisfied or waived (to the extent waivable).

39.    "EOS" means Eos Capital Partners IV, L.P.

40.    "Equity Interest" means any outstanding ownership interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units, or their equivalents, or other rights to purchase or otherwise receive any ownership interest in any of the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

41.     "Estate" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

42.     "Exit Facility" means the (a) credit agreement to be dated on or about the Effective Date and to be entered into between Arbonne and Levlad, as borrowers, and certain other subsidiaries of NPG, as guarantors, and the New Term Lenders and the OpCo Lenders, as applicable, and which will consist of the (i) New Term Loan and (ii) Reinstated OpCo Term Loan, and (b) all related documents, instruments and agreements entered into, executed or delivered in connection therewith.

43.     "Fee Application" means an application for allowance and payment of a Fee Claim (including Claims for "substantial contribution" pursuant to section 503(b) of the Bankruptcy Code).

44.     "Fee Claim" means a Claim of a Professional Person.

45.     "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order in the future.

46.     "Harvest Partners" means (a) Harvest Partners, LP, Harvest Partners, LLC, Harvest Partners, Inc., Harvest Partners IV, L.P., Harvest Partners IV GmbH & Co. KG, Harvest Associates IV, L.L.C., Harvest Advisors IV, L.L.C., Harvest Capital Associates IV, L.L.C., Harvest Employee Associates IV, L.L.C., Harvest Capital Associates Management IV, L.L.C., Harvest Associates IV Verwaltungs GmbH, Harvest IV GmbH, L.L.C., IST Associates, LLC, and IST Advisors, LLC and (b) each of their members, partners, principals and investors (but with respect to those entities identified in this subsection (b), only in their capacity as either a member, partner, principal or investor of any of the foregoing entities).

47.     "HoldCo Credit Agreement" means the HoldCo Credit Agreement, dated as of June 19, 2006, among Arbonne HoldCo and Levlad HoldCo, as borrowers, the several lenders from time to time party thereto, Wilmington Trust FSB, as successor in interest to Credit Suisse, New York Branch, as administrative agent, Credit Suisse Securities (USA) LLC and CIBC World Markets Corp., as joint lead arrangers and joint bookrunners, CIBC World Markets Corp., as syndication agent, and CitiCorp North America, Inc. and UBS Securities LLC, as co-documentation agents, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

48.     "HoldCo Lender Claim" means a Claim of a HoldCo Lender arising under the HoldCo Credit Agreement.

49.     "HoldCo Lenders" means the lenders under the HoldCo Credit Agreement.

50.     "Independent Director" means any Person who, on the Effective Date, (i) does not hold any shares of New NPG Common Stock, (ii) is not an Affiliate of any stockholder of New NPG or any Affiliate of a stockholder of New NPG, (iii) has no material business or other relationship with New NPG, a stockholder of New NPG, any Affiliate of a stockholder of New NPG or the lenders of New NPG, (iv) is not employed by or providing services to New NPG (and has not been so employed or provided such services within two years of the date of appointment) and (v) is qualified to act as a director of New NPG based on his or her experience and integrity.

51.     "Insider" means a Person that would fall within the definition assigned to such term in section 101(31) of the Bankruptcy Code.

52.     "Insured Claim" means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors.

53.     "Intercompany Claim" means a Claim held by any Debtor against any other Debtor based on any fact, action, omission, occurrence or thing that occurred or came into existence prior to the Petition Date.

54.     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

55.     "IRS" means the United States Internal Revenue Service.

56.     "Letter of Credit" means and refers to any letter of credit issued under the OpCo Credit Agreement prior to the Petition Date.

58.     "Letter of Credit Claim" means a Claim against a Debtor (other than a Claim in respect of a Letter of Credit) that is covered in whole or in part by a letter of credit issued at the request of any Debtor with respect to which an actual draw on such letter of credit has been made.

59.     "Levlad" means Levlad, LLC.

60.     "Levlad HoldCo" means Levlad Intermediate Holdco, Inc.

61.     "Long Term Management Incentive Plan" means that certain incentive plan covering certain members of the senior management of the New NPG Group to be adopted by New NPG on the Effective Date.

62.     "Majority Consenting OpCo Lenders" means the Requisite Consenting OpCo Lenders that hold a majority of the outstanding principal amount of the Allowed OpCo Lender Claims held by the Requisite Consenting OpCo Lenders.

63.     "New HoldCo" means the legal entity formed by the merger of Arbonne HoldCo and Levlad HoldCo pursuant to the Plan.

64.     "New NPG" means the legal entity selected by the Debtors to serve as the ultimate parent of the New NPG Group.

65.     "New NPG Common Stock" means the common stock of New NPG.

66.     "New NPG Constituent Documents" means the by-laws and certificates of incorporation for New NPG and New HoldCo, as of the Effective Date.  The New NPG Constituent Documents shall be in substantially the form filed with the Bankruptcy Court as Plan Documents.

67.     "New NPG Group" means New NPG and its direct and indirect subsidiaries.

68.     "New NPG Guarantors" means all of the domestic subsidiaries of New NPG, each of which shall guarantee the obligations of New NPG under the Exit Facility.

69.     "New NPG Options" means the options to be issued pursuant to the Long Term Management Incentive Plan and which shall have the terms set forth on Exhibit "D" hereto.

70.     "New NPG Warrants" means the warrants to be issued to the HoldCo Lenders on the Effective Date pursuant to the Plan and which shall have the terms set forth on Exhibit "C" hereto.

71.     "New Term Loan" means the term loan to be provided as part of the Exit Facility, on the terms set forth on Exhibit "F" hereto.

72.     "New Term Lender" means any lending institution from time to time party to the Exit Facility that provides loans under the New Term Loan, and its successors and assigns.

73.     "Notice of Confirmation" means the notice of entry of the Confirmation Order.

74.     "NPG" means Natural Products Group, LLC.

75.     "OpCo Credit Agreement" means the Credit Agreement, dated as of March 8, 2007, among Arbonne HoldCo and Levlad HoldCo, as guarantors, Levlad and Arbonne, as borrowers, the several lenders from time to time party thereto, Canadian Imperial Bank of Commerce, as administrative agent and collateral agent, CIBC World Markets Corp. and Credit Suisse Securities (USA) LLC, as joint lead arrangers and joint bookrunners, Credit Suisse, as syndication agent, and Freeport Financial LLC and General Electric Capital Corporation, as co-documentation agents, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

76.     "OpCo Lender Claim" means any Claim against any of the Debtors arising under, in connection with, or related to, the OpCo Credit Agreement, including, without limitation, any Claim with respect to any and all guarantees, pledges, notes and other agreements and documents executed and/or delivered by any Debtor pursuant to, in connection with, or related to, the OpCo Credit Agreement, including, without limitation, any Claim under the Loan Documents (as defined in the OpCo Credit Agreement) and the Letters of Credit.

77.     "OpCo Lenders" means, collectively, the lenders and other institutions that are parties to the OpCo Credit Agreement and their respective successors and assigns.

78.     "OpCo Plan Support Agreement" means that certain plan support agreement dated as of December 18, 2009, by and among certain of the Debtors and certain of the OpCo Lenders.

79.     "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

80.     "Petition Date" means, with respect to any Debtor, the date on which the Chapter 11 Case of such Debtor was commenced.

81.     "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

82.     "Plan Distribution" means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim or Allowed Equity Interest.

83.     "Plan Distribution Date" means with respect to any Claim, (a) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim, or (b) if not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, but is not earlier than thirty (30) days following the previous Plan Distribution Date.

84.     "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan including, without limitation, the Exit Facility, New NPG Constituent Documents, New NPG Options, and New NPG Warrants.

85.     "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.

86.     "Prepetition Agents" means the Prepetition OpCo Agent and the Prepetition HoldCo Agent, each in their respective capacities as administrative agents in respect of the Prepetition Credit Facilities.

87.     "Prepetition Credit Facilities" means the OpCo Credit Agreement and the HoldCo Credit Agreement.

88.     "Prepetition HoldCo Agent" means Wilmington Trust FSB, as administrative agent under the HoldCo Credit Agreement.

89.     "Prepetition Lenders" means the OpCo Lenders and the HoldCo Lenders.

90.     "Prepetition OpCo Agent" means Canadian Imperial Bank of Commerce, as administrative agent under the OpCo Credit Agreement.

92.     "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Secured Claims, Administrative Claims, and Tax Claims.

93.     "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

94.     "Pro Rata Share" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Disbursing Agent; or (b) as determined or estimated by the Bankruptcy Court.

95.     "Reinstated OpCo Term Loan" means the term loan under the Exit Facility that will reinstate $125 million of obligations under the OpCo Credit Agreement on the terms set forth on Exhibit "E" hereto.

96.     "Requisite Consenting OpCo Lenders" means OpCo Lenders comprising more than one-half of the number of all OpCo Lenders that vote to accept or reject the Plan and holding at least two-thirds of the aggregate amount of Allowed OpCo Lender Claims that vote to accept or reject the Plan.

97.     "Restructuring Term Sheet" means that certain term sheet that is annexed to the Disclosure Statement as Schedule 2.

98.     "Schedules" means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs, if any, filed by the Debtors with the Bankruptcy Court.

99.     "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the

benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case the class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

100.    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

101.    "Solicitation Agent" means the Person selected by the Debtors to act as the Debtors' agent in soliciting the Plan and tabulating votes in connection with the Plan.

102.    "Subordinated Claim" means a Claim against any Debtor subordinated by a Final Order.

103.    "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

104.    "TCW" means TCW Shared Opportunity Fund V, L.P.

105.    "Unsecured Claim" means any Claim against a Debtor other than an Administrative Claim, a Priority Claim, a Tax Claim, a Fee Claim, a Secured Claim, an OpCo Lender Claim, or a HoldCo Lender Claim.

106.    "Voting Deadline" means the deadline established by the Debtors for voting to accept or reject the Plan.

# EXHIBIT "B"

## LIST OF DEBTORS

### <u>List of the Debtors and Tax Identification Numbers</u>

| Case No. | Debtor | Tax ID Number |
|---|---|---|
| To Be Determined | Natural Products Group, LLC | 86-1119470 |
| To Be Determined | Arbonne Intermediate Holdco, Inc. | 87-0735363 |
| To Be Determined | Levlad Intermediate Holdco, Inc. | 87-0735367 |
| To Be Determined | Arbonne International, LLC | 33-0762250 |
| To Be Determined | Levlad, LLC | 95-2973496 |
| To Be Determined | Arbonne Institute of Research and Development, LLC | 33-0762250 |
| To Be Determined | Arbonne International Holdings, Inc. | 20-5585671 |
| To Be Determined | Arbonne International Distribution, Inc. | 20-5585608 |

## NEW NPG WARRANTS

### PRINCIPAL TERMS AND CONDITIONS

**ISSUER:**    New NPG

**HOLDERS:**    HoldCo Lenders

**ENTITLEMENT:**    New NPG will authorize the issuance of the New NPG Warrants, which shall entitle the holders thereof to purchase New NPG Common Stock equal to 5% of the equity interests of New NPG (excluding New NPG Common Stock reserved for issuance pursuant to the Long Term Management Incentive Plan).

**EXERCISE:**    The aggregate cash exercise price of the New NPG Warrants shall be an amount equal to 100% of the principal amount, plus all swap amounts, accrued interest, fees and expenses outstanding under the OpCo Credit Agreement as of the Effective Date plus the principal, interest, fees and expenses outstanding under the New Term Loan portion of the Exit Facility as of the Effective Date.  The aggregate cash exercise price of the New NPG Warrants shall be allocated among all holders of New NPG Warrants on a Pro Rata basis.

**EXPIRATION**:    Each New NPG Warrant may be exercised at any time prior to the fifth anniversary of the Effective Date.

**VOTING RIGHTS:**    Neither the New NPG Warrants nor the New NPG Common Stock purchased pursuant to such New NPG Warrants shall have any voting rights.

**TRANSFERABILITY:**    The New NPG Warrants will be not transferable.  The holders of New NPG Warrants shall be required to enter into a stockholders agreement containing standard tag-along and drag-along rights prior to exercising any of the New NPG Warrants.

**GOVERNING LAW:**    Delaware

**OTHER TERMS:**    All other items to be developed on terms to be agreed upon.

# EXHIBIT "D"

## <u>NEW NPG OPTIONS</u>

## PRINCIPAL TERMS AND CONDITIONS

**ISSUER:**            New NPG

**HOLDERS:**           Certain members of management of the New NPG Group

**EXERCISE:**          New NPG Options will be issued to permit holders thereof to acquire 5% in the aggregate of the New NPG Common Stock.  The exercise price shall be based upon an aggregate equity value of New NPG of $75 million.

                       New NPG Options will be issued to permit holders thereof to acquire an additional 2.5% of the New NPG Common Stock.  The exercise price shall be based upon an aggregate equity value of New NPG of $300 million.

**EXPIRATION**:        Each New NPG Option may be exercised at any time prior to the seventh anniversary of the Effective Date.

**VESTING:**           Annual based over a period of 4 years

**GOVERNING LAW:**     Delaware

**OTHER TERMS:**       All other items to be developed on terms to be agreed upon.

# EXHIBIT "E"

## REINSTATED OPCO TERM LOAN

## PRINCIPAL TERMS AND CONDITIONS

| | |
|---|---|
| **BORROWERS:** | Arbonne International, LLC and Levlad, LLC |
| **AMOUNT:** | $125 million |
| **ADMINISTRATIVE AGENT:** | Canadian Imperial Bank of Commerce |
| **LENDERS:** | OpCo Lenders |
| **PRICING:** | Interest on the Reinstated OpCo Term Loan shall accrue at a rate of LIBOR plus 7% per annum (with a LIBOR floor of 3%), payable quarterly on a paid in kind basis; provided, that if the borrowers are in compliance with certain financial covenants to be developed, 50%-100% of such interest shall be paid in cash. |
| | The Reinstated OpCo Term Loan shall provide for annual amortization in an amount to be determined, based on Excess Cash Flow (to be defined in a manner satisfactory to the OpCo Lenders). |
| **MATURITY DATE:** | 5 years, but may be prepaid in whole or in part, without penalty, at any time in the sole discretion of the borrowers. |
| **SECURITY:** | The obligations of the borrowers under the Reinstated OpCo Term Loan shall be secured by a pari passu lien in and to substantially all of the assets of the Company, subject only to certain customary permitted liens. |
| **COVENANTS:** | Usual and customary for transactions of this type. |
| **FINANCIAL COVENANTS:** | Usual and customary for transactions of this type. |
| **REPRESENTATIONS AND WARRANTIES:** | Usual and customary for transactions of this type. |

# EXHIBIT "F"

## NEW TERM LOAN

## PRINCIPAL TERMS AND CONDITIONS

**BORROWERS:**

Arbonne International, LLC and Levlad, LLC

**AMOUNT:**

On the Effective Date, all outstanding obligations under the DIP Facility will be rolled into the New Term Loan portion of the Exit Facility. The DIP Facility will provide for borrowings up to $20 million available in two draws as follows: (i) $10 million shall be drawn on the effective date of the DIP Facility and (ii) up to $10 million shall be available through June 30, 2010 in one subsequent draw upon the satisfaction of certain conditions to be determined, of which $2 million in the aggregate may be used to issue new letters of credit or replace existing letters of credit when they expire. Any commitment of an OpCo Lender to participate in the DIP Facility constitutes a commitment of such lender to participate in the New Term Loan portion of the Exit Facility.

**ADMINISTRATIVE AGENT:**

TBD

**PARTICIPANTS:**

All OpCo Lenders who are DIP Lenders.

**PRICING AND OTHER INDUCEMENTS:**

Commitment Fee: None (commitment fee paid in connection with DIP Facility).

Interest Rate: LIBOR plus 10% per annum (with a LIBOR floor of 3%) payable quarterly.

Deferred Fee: 3% (the "Deferred Fee"), which Deferred Fee shall be fully earned on the effective date of the DIP Facility, and shall be payable on the one year anniversary thereof; provided, however, that the Deferred Fee shall be waived and not be due and payable if all obligations owing under the New Term Loan are indefeasibly paid in full in cash on or before the one year anniversary of the effective date of such facility.

Participation Fee/Provider Fee: In consideration of providing the commitment in respect of the New Term Loan, the lenders under the New Term Loan portion of the Exit Facility shall receive their Pro Rata share of 10% of the New NPG Common Stock on the Effective Date.

Default Rate: 2%, above the otherwise applicable rate, but in no event in excess of the maximum lawful rate.

**LETTERS OF CREDIT:**

Letters of credit will be cash collateralized in an amount at least equal to 105% of the aggregate stated amount of such letters of credit.

**MATURITY DATE:**

4 years, but may be prepaid in whole or in part, without penalty, at any time in the sole discretion of the borrowers.

**SECURITY:** The obligations of the borrowers under the New Term Loan shall be secured by a first lien in and to substantially all of the assets of the Company, subject only to certain customary permitted liens.

**COVENANTS:** Usual and customary conditions and covenants for transactions of this type, including (i) satisfactory verification of certain matters relating to compliance with environmental laws and regulations, (ii) the New Term Lenders shall be satisfied that the Company is in compliance in all material respects with all applicable environmental laws and regulations, (iii) follow up audits by third party consultant engaged by the New Term Lenders and (iv) submittal of required air permit applications for certain locations to be designated by the New Term Lenders and agreed to by the borrowers.

**FINANCIAL COVENANTS:** Usual and customary for transactions of this type.

**REPRESENTATIONS AND WARRANTIES:** Usual and customary for transactions of this type.