# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| NATURAL PRODUCTS GROUP, LLC, <u>et al.</u>,[1] | ) | Case No. 10-_____ (    ) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING
DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING DEBTORS
TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES AND (IV) SCHEDULING A FINAL HEARING
<u>PURSUANT TO BANKRUPTCY RULES 4001(b), (c) AND (d)</u>**

Upon the motion, dated January 27, 2010 (the "<u>Motion</u>"), of Levlad, LLC ("<u>Levlad</u>") and

Arbonne International, LLC ("<u>Arbonne</u>" and, together with Levlad, the "<u>Borrowers</u>"), and each

of their affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "<u>Debtors</u>")

in the above-captioned cases (the "<u>Cases</u>") for interim and final orders under sections 105, 361,

362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States

Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"),

seeking:

(1)    authorization for (a) the Borrowers to obtain up to $20,000,000 in principal

amount of postpetition financing, plus a facility for the issuance of letters of credit in the amount

---

[1]    The debtors and debtors in possession in these cases are Natural Products Group, LLC (Fed. EIN 86-1119470); Arbonne Intermediate Holdco, Inc. (Fed. EIN 87-0735363); Levlad Intermediate Holdco, Inc. (Fed. EIN 87-0735367); Arbonne International, LLC (Fed. EIN 33-0762250); Levlad, LLC (Fed. EIN 95-2973496); Arbonne Institute of Research and Development, LLC (Fed. EIN 33-0762250); Arbonne International Holdings, Inc. (Fed. EIN 20-5585671); and Arbonne International Distribution, Inc. (Fed. EIN 20-5585608).

of $250,000 (the "DIP Financing"), all on the terms and conditions set forth in this Interim Order and the Debtor-in-Possession Credit Agreement, dated on or about January 28, 2010 (substantially in the form attached to this Interim Order as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Credit Agreement"; together with all agreements, documents and instruments delivered in connection therewith, the "DIP Documents"), among the Borrowers, Canadian Imperial Bank of Commerce, in its capacities as administrative agent and collateral agent ("CIBC" or the "DIP Agent") for itself and a syndicate of other financial institutions (together with the DIP Agent and the issuing bank for the letters of credit, the "DIP Lenders"), and (b) Levlad Intermediate Holdco, Inc., and Arbonne Intermediate Holdco, Inc., Debtors in these Cases (collectively, the "Guarantors"), to enter into the Guaranty Agreement, dated on or about January 28, 2010, to jointly and severally guaranty the Borrowers' obligations in respect of the DIP Financing;

(2)     authorization for the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(3)     authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 5(e) below) pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and all other Prepetition Collateral (as defined in paragraph 5(d) below) and (b) provide adequate protection to the lenders (collectively, the "Prepetition Secured Lenders" and, together with the Prepetition Administrative Agent (as defined below), the Prepetition Collateral Agent (as defined below), the Issuing Lender (as defined below) and any other Person owed an Obligation (as each such term is defined in the

Prepetition Credit Agreement), the "Prepetition Secured Parties") under the Credit Agreement, dated as of March 8, 2007 (as heretofore amended, restated, modified or supplemented from time to time, the "Prepetition Credit Agreement"; together with all other documentation executed and delivered in connection with any of the foregoing, the "Prepetition Loan Documents"), among those Debtors party thereto, as borrowers and guarantors, CIBC, as Administrative Agent (in such capacity, the "Prepetition Administrative Agent"), as Collateral Agent (in such capacity, the "Prepetition Collateral Agent"), and as Issuing Lender (in such capacity, the "Issuing Lender"), the Prepetition Secured Lenders, Credit Suisse, as Syndication Agent, Freeport Financial LLC and General Electric Capital Corporation, as Co-Documentation Agents and CIBC World Markets Corp. and Credit Suisse Securities (USA) LLC, in their respective capacities both as Joint Book Runners and as Joint Lead Arrangers (as each such term is defined in the Prepetition Credit Agreement);

(4)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (this "Interim Order") (a) authorizing the Borrowers, on an interim basis, to borrow up to $10,000,000 in principal amount and obtain letters of credit in an amount up to $250,000 under this Interim Order and the DIP Credit Agreement, (b) authorizing the Debtors to use the Cash Collateral and (c) granting adequate protection to the Prepetition Secured Parties; and

(5)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Borrowers, on a final basis, to continue to use the Cash Collateral and to borrow the balance of

the loans under the DIP Credit Agreement, and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The Bankruptcy Court having considered the Motion, the Affidavit of Mark I. Lehman in Support of First Day Motions and Applications, sworn to on the 27th day of January, 2010, the declaration of Henry S. Hsu in support of the Motion, and the evidence submitted at the hearing on Motion and this Interim Order (the "Interim Hearing"), and in accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), notice of the Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on January [28], 2010; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors' business; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; based upon the record established at the Interim Hearing; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Petition Date.* On January 27, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy for the District of Delaware (the "Court"). The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

2. *Disposition/Jurisdiction.* This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d).

3. *Committee Formation.* A statutory committee of unsecured creditors has not been appointed in these Cases.

4. *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on January 27, 2010 to certain parties in interest, including: the Debtors' 30 largest unsecured creditors (on a consolidated basis) (including counsel if known), the Prepetition Administrative Agent, the other Prepetition Secured Parties, the DIP Agent, the Prepetition Collateral Agent, the Issuing Lender, Credit Suisse, Freeport Financial LLC, General Electric Capital Corporation, CIBC World Markets Corp., Credit Suisse Securities (USA) LLC (including counsel if known), all parties requesting notice pursuant to Bankruptcy Rule 2002, the United States Trustee for the District of Delaware, and the Internal Revenue Service. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

5. *Debtors' Stipulations.* Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 20 below) the Debtors admit, stipulate, and agree that:

(a)     as of the Petition Date, the Debtors that are the Borrowers and the Guarantors (as such terms are defined in the Prepetition Loan Documents) were justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, under the Prepetition Loan Documents, to the (i) Prepetition Secured Parties in the aggregate principal amount of approximately $532 million in respect of loans made, letters of credit issued or other financial accommodations made by the Prepetition Secured Parties pursuant to, and in accordance with the terms of, the Prepetition Loan Documents and (ii) counterparties to Swap Agreements (as defined in the Prepetition Credit Agreement) in amounts yet to be determined, plus, in each case, accrued and unpaid interest thereon and costs and expenses including, without limitation, attorneys' fees, financial advisors' fees, agents' fees, other professional fees and disbursements and other obligations, as set forth in the Prepetition Loan Documents (collectively, the "Prepetition Indebtedness");

(b)     the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with its terms, and no portion of the Prepetition Indebtedness or any payments made to the Prepetition Secured Lenders or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(c)     each Debtor hereby forever waives and releases any and all Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Prepetition Secured Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or

pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state of federal law;

(d)     pursuant to a certain (i) Guarantee and Collateral Agreement dated as of March 8, 2007 and (ii) Deposit Account Control Agreement dated as of July 16, 2009 (in each case as heretofore amended, restated, modified, ratified or supplemented from time to time, together with any and all other security agreements, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, assignments or other security documents, the "Prepetition Collateral Documents"), (I) the Debtors have granted valid, binding, perfected, enforceable, first priority liens upon and security interests in the property described in the Prepetition Collateral Documents (collectively, the "Prepetition Collateral") to the Prepetition Collateral Agent for the benefit of the Prepetition Secured Parties, and (II) the Prepetition Collateral Agent's first priority liens upon and security interests in the Prepetition Collateral, for the benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law' and

(e)     substantially all cash, securities or other property (and the proceeds therefrom) as of the Petition Date, including without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts with the Prepetition Secured Parties (collectively, the "Depository Institutions") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Prepetition Loan Documents and applicable law,

for the benefit of the Prepetition Secured Parties. All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property) are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

6. *Findings Regarding The DIP Financing.*

(a) Good cause has been shown for the entry of this Interim Order.

(b) The Debtors have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral (including the Cash Collateral) in order to, among other things, continue operations, preserve the value of the Debtors' businesses, make payroll and satisfy other working capital and general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of the Debtors' estates to avoid irreparable harm to the Debtors, their estates, their creditors and equity holders and the possibility of a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(c) The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting the DIP Liens (as defined in paragraph 9 below) and the Superpriority

Claims (as defined in paragraph 8 below) under the terms and conditions set forth in this Interim Order and the DIP Documents.

(d)     The terms of the DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order and the DIP Credit Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Administrative Agent, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to, guaranties issued by and letters of credit issued for the account of, the Debtors pursuant to the DIP Credit Agreement and (ii) all other "Obligations" of the Debtors under the DIP Documents, this Interim Order or in respect of overdrafts and related liabilities arising from treasury, depository and cash management services, or in connection with any automated clearing house transfers of funds, owing to the DIP Agent or any DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent, the DIP Lenders and their respective affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

7.     *Authorization Of The DIP Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to enter into the DIP Documents and, in the case of (i) the Borrowers, to borrow thereunder up to an aggregate principal amount of $10,000,000 plus an amount of up to $250,000 that may be used for letters of credit (plus interest, fees and other expenses provided for in the DIP Documents) pending entry of the Final Order, all in accordance with the terms of this Interim Order, the DIP Credit Agreement and the other DIP Documents, and (ii) the Guarantors, to guaranty such borrowing, the obligations with respect to any letters of credit and all other DIP Obligations.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents and to pay all fees and expenses that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents,

in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (A) shorten the Maturity Date (as defined in the DIP Credit Agreement) on terms and conditions other than those set forth in the DIP Credit Agreement, (B) increase the Commitments or the L/C Commitment (as each such term is defined in the DIP Credit Agreement) or the rate of interest payable on the Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein in any such case to be materially more restrictive;

(iii) the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Documents, including, without limitation, the Fee Letter among the DIP Agent, DIP Lenders party thereto and the Borrowers dated as of January 7, 2010 (the "Fee Letter"), and costs and expenses as may be due from time to time under the DIP Documents, all as provided in the DIP Documents and all of which constitute DIP Obligations; and

(iv) the performance of all other acts required under or in connection with the DIP Documents.

(c) Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or

recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

8.    *Superpriority Claims.*

(a)    Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against each of the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against each of the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Claims (as defined in paragraph 15(a) below) granted hereunder, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof including, without limitation, subject to entry of the Final Order, all proceeds or other amounts received in respect of the Debtors' claims and causes of action arising under state or federal law under sections 541,

542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (collectively, the "Causes of Action").

(b)     For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930 of title 28 of the United States Code and (ii) after the occurrence and during the continuance of an "Event of Default" under the DIP Credit Agreement, the payment of allowed professional fees and disbursements incurred by the Debtors or the official committee of unsecured creditors appointed in the Cases (the "Committee"), if any such Committee is appointed in the Cases, in an aggregate amount incurred after the Event of Default not in excess of $1,000,000 (plus all unpaid professional fees and expenses allowed by this Court that were incurred prior to the occurrence of such Event of Default and which were incurred in accordance with the Agreed Budget, which is attached to the DIP Credit Agreement as Exhibit K), provided that (w) cash or other amounts on deposit in the L/C Cash Collateral Account (as defined in the DIP Credit Agreement) shall not be subject to the Carve Out, (x) no portion of the Carve Out shall be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation or any threatened litigation against the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, (y) so long as an Event of Default shall not have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, and (z) nothing in this Interim Order shall impair the right of any

party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

9. *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any Collateral, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "DIP Liens"):

(a) First Lien On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities,

chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of or other ownership interests in (including partnership, member or trust interests) the subsidiaries of the Debtors, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing, <u>provided</u> that, the Unencumbered Property shall not include the Causes of Action but, subject to the entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Causes of Action.

(b) <u>Liens Junior To Certain Existing Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Agent (for its own benefit and the benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in clauses (a) and (c) of this paragraph 9, as to which the DIP Liens will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected, enforceable and unavoidable liens in existence immediately prior to the Petition Date or to valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders are immediately junior only to such valid, perfected and unavoidable liens.

(c) <u>Liens Priming Prepetition Secured Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Agent (for its own benefit and the

benefit of the DIP Lenders) is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Collateral Agent (for the benefit of itself and the Prepetition Secured Parties) (including, without limitation, the Adequate Protection Liens (as defined in paragraph 15(b) below), but shall not be senior to any valid, perfected, enforceable and unavoidable security interests in and liens of other parties, if any, on the Prepetition Collateral existing as of the Petition Date or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Collateral Agent (for the benefit of itself and the other Prepetition Secured Parties) become subject after the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(d)     _Liens Senior To Certain Other Liens_.  The DIP Liens and the Adequate Protection Liens shall not be, (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (ii) subordinated to or made _pari passu_ with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

10.     _Protection Of DIP Lenders' Rights_.  So long as there are any DIP Obligations or the DIP Lenders have any Commitment or L/C Commitment under the DIP Credit Agreement, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall take no

action to foreclose upon or recover in connection with the liens granted pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise exercise remedies against any Collateral of the Debtors or their subsidiaries without the prior written consent of the DIP Agent and reasonable notice to the Debtors.

11.    *Remedies After Event Of Default.*  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement), all rights and remedies under the DIP Documents, other than those rights and remedies against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five business days' prior written notice to the Debtors (with a copy to counsel for the Committee, if any, and to the United States Trustee for the District of Delaware), all rights and remedies against the Collateral provided for in the DIP Documents and this Interim Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and each of the Debtors hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, the Prepetition Collateral Agent or any of the other the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the

Collateral. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement.

12. *Limitation On Charging Expenses Against Collateral.* Notwithstanding anything to the contrary contained herein, subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, (a) no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Administrative Agent, as the case may be, (b) no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or the Prepetition Administrative Agent and (c) nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.

13. *Payments Free And Clear.* Any and all payments or proceeds remitted (a) to the DIP Agent on behalf of the DIP Lenders or (b) without prejudice to the right of any other party (but subject to the limitations thereon described in paragraph 20 below), to the Prepetition Administrative Agent on behalf of the Prepetition Secured Parties, in each case, pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and

31932895.DOCX

clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

14. *Use Of Prepetition Collateral (including Cash Collateral).* The Debtors are hereby authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Petition Date through and including the Maturity Date under the DIP Credit Agreement for the same purposes as set forth in and in accordance with the terms and conditions of this Interim Order, and the DIP Credit Agreement, including, without limitation the Agreed Budget (as defined in the DIP Credit Agreement), provided that, (a) the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

15. *Adequate Protection.* The Prepetition Administrative Agent and the other Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the Collateral Diminution (as defined below). As used in this Interim Order, "Collateral Diminution" shall mean an amount equal to the diminution of the value of any of the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and unavoidable liens or security interests from and after the Petition Date for any reason provided for in the Bankruptcy Code, including, without limitation, the priming of the Prepetition Collateral Agent's security interests in and liens on the Prepetition Collateral by the DIP Liens, and the depreciation, sale, loss or use of such Prepetition Collateral, including Cash Collateral, whether in accordance with the

terms and conditions of this Interim Order, the DIP Credit Agreement or otherwise. Cash payments from the proceeds of the Prepetition Collateral made to the Prepetition Collateral Agent pursuant to paragraph 15(d) of this Interim Order shall not constitute Collateral Diminution. As adequate protection for any Collateral Diminution, the Prepetition Administrative Agent, the Prepetition Collateral Agent and the other Prepetition Secured Parties are hereby granted the following:

(a) Adequate Protection Claims. Allowed superpriority administrative claims as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Adequate Protection Claims"), which shall have recourse to and be payable from all pre- and post-petition property of the Debtors including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of Causes of Action. The Adequate Protection Claims shall be subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Commitments and the L/C Commitments have been terminated.

(b)     Adequate Protection Liens.  As security for the payment of the amount of any Collateral Diminution, the Prepetition Administrative Agent (for itself and for the benefit of the Prepetition Secured Parties) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of Causes of Action, subject and subordinate only to (i) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, (ii) the DIP Liens and any liens on the Collateral senior to such DIP Liens, and (iii) the Carve Out (the "Adequate Protection Liens").

(c)     Fees And Expenses.  As additional adequate protection, subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay indefeasibly in cash:  (i) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Administrative Agent under the Prepetition Credit Agreement arising prior to the Petition Date; and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Administrative Agent under the Prepetition Credit Agreement arising

subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 15(c) of this Interim Order (including professional fees and expenses of Kaye Scholer LLP, Potter Anderson & Corroon LLP, Capstone Advisory Group, LLC and any other professionals or advisors retained by or on behalf of the Prepetition Administrative Agent) shall be made within ten (10) business days after the receipt by the Debtors, the Committee, if any, and the United States Trustee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the Committee, if any, and the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the Committee, if any, or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Administrative Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(d)     Following the indefeasible payment in full in accordance with the DIP Credit Agreement of all DIP Obligations and the termination of the Commitments and the L/C Commitment, as additional adequate protection and without prejudice to the right of any other party (but subject to the limitations thereon described below in paragraph 20), the Debtors shall pay indefeasibly in cash to the Prepetition Administrative Agent, for the benefit of the Prepetition Secured Parties, in permanent

reduction of the outstanding principal balance of the Prepetition Indebtedness in accordance with the application of payments provisions of the Prepetition Loan Documents, all proceeds from a sale, lease or other disposition of the Collateral, after deducting the necessary direct costs of the Debtors in connection therewith which are reasonably acceptable to the Prepetition Administrative Agent. If there is a dispute concerning whether an expense constitutes a necessary direct cost, the amount of such expense shall nevertheless be paid to the Prepetition Administrative Agent, and the Debtors reserve the right to seek a Court order directing reimbursement of such amount. Subject to and as permitted by the DIP Credit Agreement, such proceeds (i) will be paid directly to the Prepetition Administrative Agent or (ii) if received by the Debtors, will be paid by the Debtors to the Prepetition Administrative Agent on the same business day as received by the Debtors.

(e)     Information. The Debtors shall promptly provide to the Prepetition Administrative Agent any written financial information, periodic reporting or other information that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders, and such other reports, information and materials as reasonably requested by the Prepetition Administrative Agent.

16.     *Reservation Of Rights Of Prepetition Parties.* Under the circumstances and given that the adequate protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection

provided hereby so as to provide different or additional adequate protection, provided, however, that any such additional or modified adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Interim Order and the DIP Documents.

17.    *Perfection Of DIP Liens And Adequate Protection Liens.*  The DIP Agent and the Prepetition Administrative Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders, or the Prepetition Administrative Agent or Prepetition Collateral Agent on behalf of the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.    The Prepetition Administrative Agent, the Prepetition Collateral Agent and the Prepetition Secured Parties shall not file any such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the security interests and liens granted thereto hereunder, unless the DIP Agent on behalf of the DIP Lenders shall theretofore have done so.   The Debtors shall execute and deliver to the DIP Agent and the Prepetition Administrative Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Administrative Agent

may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date. Upon entry of the Final Order, pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Borrowers or any Guarantor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the DIP Agent for the benefit of the DIP Lenders a senior security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrowers or any Guarantor in favor of the DIP Agent for the benefit of the DIP Lender in accordance with the terms of the DIP Documents.

18. *Preservation Of Rights Granted Under The Interim Order.*

(a) No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order or the DIP Documents to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, the Prepetition Collateral Agent and the other Prepetition Secured Parties, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof), the Commitments, the L/C Commitments or the Adequate Protection Claims remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy

Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations and the Adequate Protection Claims shall have been indefeasibly paid in full in accordance with the DIP Credit Agreement, (i) the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Credit Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Agent and the Prepetition Administrative Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Administrative Agent or (ii) it shall constitute an Event of Default under the DIP Credit Agreement and a termination of the right to use Cash Collateral if any order is entered converting or dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, the Adequate Protection Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Adequate Protection Claims shall have been indefeasibly paid in full in accordance with the DIP Credit Agreement (and that such Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Claims incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Administrative Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations, or any Adequate Protection Claims incurred by the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Administrative Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations and all Adequate Protection Claims.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, the Prepetition Collateral Agent and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of

the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Claims. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Adequate Protection Claims and all Prepetition Indebtedness are indefeasibly paid in full (in the case of the DIP Obligations, in accordance with the DIP Credit Agreement), and the Commitments and the L/C Commitment have been terminated.

19. *Non-Debtor Guarantees.* Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors, if any, to the Prepetition Secured Parties with respect to the Prepetition Indebtedness owed by the Debtors to the Prepetition Secured Parties.

20. *Effect Of Stipulations On Third Parties.* The Debtors' admissions, stipulations and releases contained in this Interim Order including, without limitation, paragraph 5 of this Interim Order: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest, including the Committee, if any, for all purposes unless (1) a

party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is the earlier of (a) five (5) business days prior to the hearing in respect of confirmation of a plan of reorganization in the Debtors' Cases or (b) seventy-five (75) days from the entry of this Interim Order (or, in the case of the Committee, if any, sixty (60) days from the appointment of the Committee, if any), (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding: (a) the Debtors' admissions stipulations and releases contained in paragraph 3 of this Interim Order shall be binding on all parties in interest, including the Committee, if any; (b) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent Chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Indebtedness and the Prepetition Secured Parties' security interests in and liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Committee, if any, or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding

or contested matter is properly filed as of such dates, the Debtors' admissions, stipulations and releases contained in paragraph 5 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Interim Order shall be deemed to grant standing to any party, including the Committee, if any, to commence any such adversary proceeding or contested matter.

21. *Limitation On Use Of DIP Financing Proceeds And Collateral.* The Debtors shall use the proceeds of the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order and in the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Credit Agreement, Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation against any of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent or any other Prepetition Secured Party or asserting any defense, claim, counterclaim, or offset with respect to the DIP Obligations or the Prepetition Indebtedness or the security interests in or liens on the Collateral or the Prepetition Collateral, (b) to prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Administrative Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Interim Order, (c) to seek to modify any of the rights granted to the DIP

Agent, the DIP Lenders, the Prepetition Administrative Agent or the other Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Loan Documents, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents.

22. *Exculpation.* Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Borrowers and the Guarantors.

23. *Interim Order Governs.* In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

24. *Retention Of Jurisdiction.* The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

25. *Binding Effect; Successors And Assigns.* The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent, the other Prepetition Secured Parties and the Debtors and their respective successors and assigns, provided that, the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the other Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

26. *Limitation Of Liability.* The Debtors shall seek in the Final Order, in addition to the protections offered to the DIP Agent, the DIP Lenders, the Prepetition Administrative Agent and the Prepetition Secured Parties in this Interim Order, the following provisions: "In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent, the Prepetition Administrative Agent, the DIP Lenders and the Prepetition Secured Parties shall not: (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner"

or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability act of 1980 or any similar federal or state statute)."

27.     *No Impact On Certain Contracts/Transactions.*   No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560, and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Interim Order.

28.     *Effectiveness.*   This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

29.     *Headings.*   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

30.     *Final Hearing.*   The Final Hearing is scheduled for February _____, 2010 at _____ _.m., prevailing Eastern time, before this Court.

31.     The Debtors shall promptly mail a copy of this Interim Order (which shall constitute adequate notice of the Final Hearing, including without limitation) to the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court, the Office of the United States Trustee, to any Committee or Committee counsel, if the same shall have been appointed, and to the Internal Revenue Service. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written

objections, which objections shall be served upon (a) White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131, Attn: Thomas E. Lauria, Esq., tlauria@whitecase.com; and Fox Rothschild LLP, 919 Market Street, Suite 1600, Wilmington, Delaware 19801, Counsel for Debtors; (b) Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attn.: Mark F. Liscio, Esq., mliscio@kayescholer.com and Scott D. Talmadge, Esq., stalmadge@kayescholer.com; and Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, Wilmington, Delaware 19801, Attn: Laurie Selber Silverstein, Esq., lsilverstein@potteranderson.com, Counsel for DIP Agent and Prepetition Administrative Agent; (d) attorneys for the Committee, if any; and (e) the Office of the United States Trustee for the District of Delaware, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than February _____, 2010 at 4:00 p.m., prevailing Eastern time.

Dated: Wilmington, Delaware
      January ___, 2010

                    _____

                    United States Bankruptcy Judge

## Schedule 1 - Guarantors

Levlad Intermediate Holdco, Inc.

Arbonne Intermediate Holdco, Inc.