## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| NATURAL PRODUCTS GROUP, LLC, et al.,[1] | Case No. 10-10239 (BLS) |
| | Jointly Administered |
| Debtors. | |
| | Re: Docket Nos. 12, 13, and 16 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (A) APPROVING THE DEBTORS' DISCLOSURE STATEMENT, SOLICITATION PROCEDURES AND FORMS OF BALLOTS AND (B) CONFIRMING THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION

On January 27, 2010 (the "Petition Date"), Natural Products Group, LLC ("NPG") and its

affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") each filed

in the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary

petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

(the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of

Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules").

Prior to the commencement of the Debtors' chapter 11 cases (the "Cases"), on January

13, 2010, the Debtors solicited acceptances of their proposed restructuring by distributing their

Proposal to Restructure, Disclosure Statement and Solicitation of Acceptances of a Prepackaged

---

[1]    The debtors and debtors in possession in these cases, along with the last four digits of their respective federal tax identification numbers, are Natural Products Group, LLC (9470); Arbonne Intermediate Holdco, Inc. (5363); Levlad Intermediate Holdco, Inc. (5367); Arbonne International, LLC (2250); Levlad, LLC (3496); Arbonne Institute of Research and Development, LLC (2250); Arbonne International Holdings, Inc. (5671); and Arbonne International Distribution, Inc. (5608).

Plan of Reorganization [Docket No. 13] (the "Disclosure Statement") to the OpCo Lenders and the HoldCo Lenders.[2] The Disclosure Statement sought approval of the proposed restructuring through a consensual transaction outside of bankruptcy with the unanimous support of the OpCo Lenders and the HoldCo Lenders, or, if such unanimous consent was not obtained, in accordance with the terms of the prepackaged Joint Chapter 11 Plan of Reorganization for Natural Products Group, LLC and Its Affiliated Debtors [Docket No. 12] (the "Plan"), attached as Schedule "3" to the Disclosure Statement, subject to bankruptcy court approval.

The Debtors' noticing, claims, solicitation, balloting and tabulation agent, AlixPartners, LLP ("AlixPartners"), transmitted solicitation packages containing the Disclosure Statement, the Plan and all Schedules and Exhibits thereto to holders of Class 2 – OpCo Lender Claims and holders of Class 3 - HoldCo Lender Claims, as specifically described and attested to in the Affidavit of John S. Franks of AlixPartners, LLP Regarding the Mailing, Voting and Tabulation of Ballots Accepting or Rejecting Prepackaged Joint Chapter 11 Plan of Reorganization for Natural Products Group, LLC and Its Affiliated Debtors [Docket No. 18] (the "Solicitation and Voting Affidavit").

The Disclosure Statement initially established January 27, 2010 at 12:00 Noon (Prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline"). Pursuant to the Disclosure Statement, the Debtors reserved the right to extend the Voting Deadline in their sole discretion. The Debtors extended the Voting Deadline to January 27, 2010 at 1:30 p.m. (Prevailing Eastern Time).

As described in the Solicitation and Voting Affidavit, the Plan was accepted by 100% in both number and amount of holders of the OpCo Lender Claims that cast ballots on the Plan, as

---

[2]    Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the prepackaged Joint Chapter 11 Plan of Reorganization for Natural Products Group, LLC and Its Affiliated Debtors [Docket No. 12].

well as by 100% in both number and amount of holders of the HoldCo Lender Claims that cast ballots on the Plan. Because the Debtors did not receive ballots from all holders of OpCo Lender Claims entitled to vote on the Plan to enable them to consummate a restructuring out of bankruptcy, the Debtors commenced these Cases on January 27, 2010 to implement the Plan.

On the Petition Date, the Debtors filed their Disclosure Statement and Plan and, additionally, filed their Motion for an Order (I) Scheduling a Combined Hearing to Consider (A) Approval of the Disclosure Statement, (B) Approval of the Prepetition Solicitation Procedures and Forms of Ballots, and (C) Confirmation of the Prepackaged Plan; (II) Establishing Deadline and Procedures to Object to the Disclosure Statement and Prepackaged Plan; (III) Approving the Form and Manner of Notice of (A) Commencement of the Chapter 11 Cases and (B) the Combined Hearing; (IV) Directing the Office of the United States Trustee to Not Convene a Meeting of Creditors or Appoint a Statutory Committee; and (V) Granting Related Relief [Docket No. 16] (the "Scheduling Motion"). On January 28, 2010, the Court entered an Order approving the relief requested in the Scheduling Motion [Docket No. 42] (the "Scheduling Order"), which, among other things, (i) established February 16, 2010 at 11:59 p.m. (Prevailing Eastern Time) as the deadline for filing any objections to the Disclosure Statement, the Debtors' solicitation procedures, including the forms of ballots (the "Ballots") used in connection therewith (collectively, the "Solicitation Procedures"), and/or the Plan (the "Objection Deadline"), (ii) established February 18, 2010 at 12:00 Noon (Prevailing Eastern Time) as the deadline for the Debtors to file a reply to any timely filed and served objection, (iii) scheduled a combined hearing commencing on February 22, 2010 at 12:30 p.m. (Prevailing Eastern Time) to consider the adequacy of the Disclosure Statement and Solicitation Procedures, and confirmation of the Plan (the "Confirmation Hearing"), (iv) approved the form of notice of the combined

hearing (the "Combined Hearing Notice") and the two notices of non-voting status (together, the "Non-Voting Notice" and, collectively with the Combined Hearing Notice, the "Confirmation Notices"), and the transmittal letter to the Arbonne Independent Consultants (the "AICs"), as proposed in the Scheduling Motion, and (v) authorized the supplemental publication notice of the Combined Hearing Notice (the "Publication Notice") in the Wall Street Journal (National Edition) on a date no less than seven (7) days prior to the Objection Deadline.

On February 12, 2010, the Debtors filed notices of filing certain Plan Documents [Docket No. 65].

On February 18, 2010, the Debtors filed their Memorandum of Law in Support of (I) Approval of the Disclosure Statement, (II) Approval of Prepetition Solicitation Procedures and Forms of Ballots, and (III) Confirmation of the Prepackaged Plan (the "Confirmation Memorandum"). Further, on that same date, the Debtors filed the declarations of Mark I. Lehman and Henry S. Hsu in support of confirmation of the Plan (collectively, the "Declarations in Support of the Plan").

The Confirmation Hearing having been held on February 22, 2010.

NOW, THEREFORE, the Court having considered the Plan, the Solicitation and Voting Affidavit, the Declarations in Support of the Plan, the Confirmation Memorandum, all evidence proffered or adduced and the arguments of counsel at the Confirmation Hearing, and the entire Record[3] of these Cases, and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law and hereby orders:[4]

---

[3]    As such term is defined below.

[4]    This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any and all

4

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.     Jurisdiction and Venue. This Court has subject matter jurisdiction over the Cases to approve the Disclosure Statement and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334. Venue before this Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409: Approval of the adequacy of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b). The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

B.     Burden of Proof. The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

C.     Adequacy of Disclosure Statement. The Disclosure Statement (i) is accurate and contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy law, (ii) contains "adequate information," as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code, with respect to the Debtors, the Plan and all of the transactions contemplated therein, and (iii) is approved in all respects.

D.     Judicial Notice. This Court takes judicial notice of the docket in these Cases maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings, notices and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Cases.

---

findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

5

E.     The Record.  The following record (the "Record") was established to support

confirmation of the Plan:

   (i)     All documents identified by the Debtors at the Confirmation Hearing,
           including, without limitation, the Plan, the Disclosure Statement and all
           exhibits, schedules and attachments thereto and filed in connection
           therewith, and the Plan Documents, all of which were admitted into
           evidence without objection;

   (ii)    The Declarations in Support of the Plan;

   (iii)   The Solicitation and Voting Affidavit;

   (iv)    The entire record of these Cases and the docket maintained by the clerk of
           the Court and/or its duly appointed agent, including, without limitation, all
           pleadings and other documents filed, all orders entered, and all evidence
           and argument made, proffered, or adduced at the hearings held before the
           Court during the pendency of these Cases, as to all of which the Court
           took judicial notice at the Confirmation Hearing; and

   (v)     The statements and argument of counsel on the record at the Confirmation
           Hearing, and all papers and pleadings filed with the Court in support of, in
           opposition to, or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the Record in support of confirmation of the Plan and all

related matters demonstrates, by a clear preponderance of the evidence, that the Plan should be

confirmed.

F.     No Objections.  No creditor, equity interest holder or other party in interest has

filed or raised at the Confirmation Hearing an objection to the approval of the adequacy of the

Disclosure Statement, confirmation of the Plan or the entry of this Confirmation Order.

G.     Solicitation and Notice.  To obtain the requisite acceptance of the Plan, on

January 13, 2010, the Debtors commenced solicitation of acceptances and rejections of the Plan

by distributing the Disclosure Statement and related materials to holders of Claims against the

Debtors classified in impaired classes entitled to vote under the Plan.

   (i)     As evidenced by the Solicitation and Voting Affidavit, the Debtors

6

transmitted the following to all known holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan: (a) the Disclosure Statement and all Schedules thereto, including the Plan and all exhibits thereto, and (b) an applicable ballot, customized for each impaired Class being solicited (collectively, the "Solicitation Packages").

(ii)     The forms of Ballots distributed in the Solicitation Packages adequately addressed the needs of these Cases and were appropriate for holders of Claims in Class 2 – OpCo Lender Claims and Class 3 – HoldCo Lender Claims, which were the only impaired Classes entitled to vote on the Plan. Further, the period during which the Debtors solicited votes to accept or reject the Plan was reasonable in the circumstances of these Cases and enabled holders of impaired Claims to make an informed decision to accept or reject the Plan.

(iii)    The Debtors were not required to solicit votes from the holders of Class 1 – Priority Claims, Class 4 – Secured Claims, Class 5 – Unsecured Claims or Class 7 – Other Equity Interests, as all such Classes are unimpaired under the Plan. The Debtors were not required to solicit votes from the holders of Class 6 – NPG Equity Interests, as such Class is deemed to reject the Plan.

(iv)     In addition to the foregoing, in compliance with the requirements of the Scheduling Order, commencing on January 28, 2010, the Debtors, through the Claims Agent, transmitted (a) the Combined Hearing Notice to all known holders of Claims against the Debtors classified in impaired classes entitled to vote under the Plan and other parties in interest [Docket No. 27], and (b) the Non-Voting Notice to all known holders of Claims against and Equity

7

Interests in the Debtors that were classified as unimpaired under the Plan or were deemed to reject the Plan [Docket Nos. 28 and 29, respectively], each of which provided (a) the date of the commencement of the Debtors' Cases, (b) notice of implementation of the automatic stay pursuant to section 362 of the Bankruptcy Code, (c) the date of the Confirmation Hearing, (d) the procedures for obtaining a copy of the Disclosure Statement and prepackaged Plan, (e) the deadlines and procedures for filing Objections to the Disclosure Statement, the Solicitation Procedures, and (f) confirmation of the Plan, and, in the case of the Non-Voting Notice only, the treatment to be received by non-voting classes under the prepackaged Plan.

(v)     As evidenced by the Affidavit of Erin Ostenson [Docket No. 63], and in compliance with the requirements of the Scheduling Order, the Debtors caused the Publication Notice to be published in The Wall Street Journal on February 5, 2010. The Confirmation Notices were also published electronically at http://www.deb.uscourts.gov and http://www.npginfo.com.

(vi)    The Debtors complied with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on the Plan and the provision of notice of the Confirmation Hearing and the Objection Deadline. As such, the notice provided was due and proper with respect to all matters relating to the approval of the Disclosure Statement, the Solicitation Procedures and confirmation of the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were

8

provided actual or constructive notice.

H. <u>Voting</u>. As evidenced by the Solicitation and Voting Affidavit, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law. Each class of Claims and Equity Interests either (i) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code, (ii) is not impaired as provided in section 1124 and 1129(a)(8)(B) of the Bankruptcy Code and is deemed, under section 1126(f) of the Bankruptcy Code, to have voted to accept the Plan, or (iii) is deemed, under section 1126(g) of the Bankruptcy Code, to have voted to reject the Plan.

I. <u>Compromises and Settlements under and in Connection with the Plan</u>. All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, the Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan. Intercompany Claims and Administrative Claims between and among the Debtors shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of the Debtors in respect of such Claims shall be fully reinstated and retained. The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan is proper, and the terms and provisions of Article II of the Plan do not discriminate unfairly, and are fair and equitable and within the bounds of reasonableness.

9

J.     Releases, Exculpations and Injunctions. The Plan provides for various releases, exculpations and injunctions. With regard to the releases contained in Section 8.14 of the Plan, each holder of an impaired Claim against the Debtors was also given the opportunity to "opt out" of such releases by making a timely written election by the Objection Deadline. No holder of a Claim against or Equity Interest in the Debtors chose to "opt out" of the releases in Section 8.14 of the Plan and such releases are therefore deemed to be consensual. Furthermore, the releases, exculpations and injunctions provided in the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtors, their Estates and their creditors, and are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (iv) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

K.     Securities Under the Plan. Pursuant to the Plan, and without further corporate or other action, the following equity and rights will be issued by New NPG: (i) shares of New NPG Common Stock, (ii) New NPG Warrants and (iii) New NPG Options, each as described in the Plan.

L.     Exit Facility. The Exit Facility (including the New Term Loan and the Reinstated OpCo Term Loan) is an essential element of the Plan, and entry into the Exit Facility is in the best interests of the Debtors, their estates, and their creditors. The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility on the terms described therein. The Debtors have provided sufficient and adequate notice of the Exit Facility to all parties in interest, including the New Term Lenders and the OpCo Lenders. All documents

10

necessary to implement the Plan, including, without limitation, the Exit Facility, shall, upon execution or as otherwise provided in Section 8.2(b) of the Plan, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

M. <u>Executory Contracts and Unexpired Leases</u>. The Debtors have exercised reasonable business judgment in determining whether to reject, assume or assume and assign each of their executory contracts and unexpired leases under the terms of the Plan and this Confirmation Order. Each pre- or post-confirmation rejection, assumption or assumption and assignment of an executory contract or unexpired lease pursuant to Article XIII of the Plan will be legal, valid and binding upon the applicable Debtor and all non-Debtor parties to such executory contract or unexpired lease, as applicable, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Each of the executory contracts and unexpired leases to be rejected, assumed or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

(i) The Plan constitutes a motion to assume such executory contracts and unexpired leases (collectively, the "Assumed Contracts") as set forth in Section 13.1(a) of the Plan. Except as otherwise provided in a separate order of the Court, any non-Debtor party to an Assumed Contract was required to object to such assumption and assignment or to the cure amounts proposed by the Debtors in connection therewith by no later than ten (10) business days prior to the Confirmation Hearing. Upon the entry of this Confirmation Order, (a) all of the requirements of sections 365(b) and (f) of the Bankruptcy Code will have been satisfied with respect to each Assumed Contract for which no timely objection was filed; (b) all rights to object to the assumption of any such Assumed Contract will have been waived; (c) except as the Court

11

may hereafter determine is necessary and appropriate to effect the purpose of the Bankruptcy Code and equity, all rights to object to the cure amounts with respect to any such Assumed Contracts will have been waived; and (d) the assumption of such Assumed Contracts will have been approved. Any objections filed with respect to an Assumed Contract will be resolved as set forth in Article XIII of the Plan.

N.     Standing. The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan. Furthermore, the Plan reflects the date it was filed with the Court and identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).

O.     The Plan Complies with the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)). As set forth below and as demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules and applicable nonbankruptcy law relating to the confirmation of the Plan. In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

P.     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons. The Debtors' classification has a rational basis because it is based on the respective legal rights of each holder of a Claim against or Equity Interest in the applicable Debtor's Estate and was not proposed to create a consenting impaired class and, thereby, manipulate class voting. Article III of the Plan designates classes of Claims and Equity Interests that require classification.

12

Q. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. Article IV of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

R. Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article V of the Plan specifies the treatment of classes and interests under the Plan, including those which are impaired.

S. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article V of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; provided, however, to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Court hereby finds that such better treatment does not need to be made available to other members of the class.

T. Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, the issuance of certain equity securities and debt as described above.

U. Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan complies fully with the requirements of section 1123(a)(6) of the Bankruptcy Code. As evidenced by the New NPG Constituent Documents, the charter documents of New NPG include such provisions as are required by section 1123(a)(6) of the Bankruptcy Code.

13

V.  Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  The Plan complies fully with the requirements of section 1123(a)(7) of the Bankruptcy Code.  Section 8.5(b) of the Plan provides for the selection of the members of the board of directors for New NPG (the "Initial Board").  Section 8.5(a) of the Plan provides that, on the Effective Date, the initial board of directors (or managers, as applicable) of each entity in the New NPG Group, except for New NPG, shall be comprised of the individuals who hold such positions as of the Effective Date.  Under Section 8.6 of the Plan, the current management and officers, respectively, of the Debtors will continue their service.  All of these provisions are consistent with the interests of creditors and equity security holders.

W.  Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

X.  Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Plan complies fully with the requirements of section 1129(a)(2) of the Bankruptcy Code. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules and the Scheduling Order governing notice, disclosure and solicitation in connection with the Plan, the Disclosure Statement, the Solicitation Procedures, the Plan Documents and all other matters considered by the Court in connection with these Cases.

Y.  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code.  Having examined the totality of the circumstances surrounding the Plan, the Court has determined that the Plan was proposed in good faith and not by any means forbidden by law.  The Plan achieves the

14

rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations and providing the means through which the Debtors' businesses may operate as a viable enterprise. The Plan is the result of extensive arm's-length discussions, debate and/or negotiations among the Debtors and key stakeholders and is overwhelmingly supported by the creditors and other parties in interest in these Cases. It is clear that the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code.

Z.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). The Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code. Section 6.2 of the Plan clearly provides that each Professional Person who holds or asserts a Fee Claim will be required to file with the Court, and serve upon all parties required to receive notice, a Fee Application within forty (40) days after the Effective Date. Failure to file and serve such notice timely and properly will result in the Fee Claim being forever barred and discharged. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) of the Plan will become an Allowed Administrative Claim only to the extent allowed by an order of this Court. Pursuant to Section 15.15 of the Plan, no award or reimbursement of attorneys' fees or related expenses or disbursements will be allowed on, or in connection with, any Claims, except as set forth in the Plan or as ordered by the Court. All accrued fees and expenses of professionals through the Effective Date remain subject to final review for reasonableness by the Court under applicable provisions of the Bankruptcy Code. The foregoing procedures for this Court's review and ultimate determination of fees and expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

AA.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Plan complies fully with the requirements of section 1129(a)(5) of the Bankruptcy Code. Section 8.5(b) of the

Plan describes the process pursuant to which the members of the Initial Board for New NPG will be determined. Section 8.5(a) of the Plan provides that, on the Effective Date, the initial board of directors (or managers, as applicable) of each entity in the New NPG Group, except New NPG, shall be comprised of the individuals who hold such positions as of the Effective Date. Section 8.6 of the Plan states that upon the occurrence of the Effective Date, the management, control and operation of each entity in the New NPG Group, shall be the general responsibility of each such entity's then current board and management. The identification of the proposed officers and directors of the New NPG Group as set forth in the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

BB.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan complies fully with the requirements of section 1129(a)(6) of the Bankruptcy Code. Pursuant to Section 15.21, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable and thus satisfied.

CC.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the Liquidation Analysis attached as Schedule "6" to the Disclosure Statement and by the evidence adduced in the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims. Furthermore, a liquidation under chapter 7 as set forth in the Liquidation Analysis would profoundly and adversely affect the ultimate proceeds available for distribution to all holders of Allowed Claims in the Cases. Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee

16

in bankruptcy and professional advisors to such trustee. Additionally, consummation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization. In the context of the erosion of the asset values and the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Therefore, the "best interests" test is satisfied with respect to each of these classes.

DD. Acceptance or Rejection by Classes (11 U.S.C. § 1129(a)(8)). Classes 1, 4, 5 and 7 are unimpaired under the Plan and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Solicitation and Voting Affidavit, Classes 2 and 3 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 6 – NPG Equity Interests is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied with respect to such rejecting class. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b) of the Bankruptcy Code with respect to such rejecting class, as set forth below.

EE. Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)). The Plan complies fully with the requirements of section 1129(a)(9) of the Bankruptcy Code. Consistent with section 1129(a)(9)(A), on the Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder

17

MIAMI 862183 (2K)

having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business. As required by section 1129(a)(9)(B) of the Bankruptcy Code, Section 5.1(a) of the Plan provides that, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, and such holder of an Allowed Priority Claim shall be paid in full in Cash on or as soon as practicable after the latest to occur of (i) the Plan Distribution Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Priority Claim; and (iii) the date agreed to by the Debtors and the holder of the Allowed Priority Claim. Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Section 6.3 of the Plan provides that, at the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. Section 6.3 of the Plan also provides for a permanent injunction in the Confirmation Order against any holder of an Allowed Tax Claim prohibiting them from commencing or continuing any action or proceeding against any responsible person,

18

officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with Section 6.3. Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

FF. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. The Plan complies fully with the requirements of section 1129(a)(10) of the Bankruptcy Code. For each of the Debtors, at least one class of impaired creditors has accepted the Plan, determined without including any acceptance of the Plan by an insider.

GG. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan complies fully with the requirements of section 1129(a)(11) of the Bankruptcy Code. Based on the Record before the Court, the Court concludes that the Debtors will have sufficient means to meet all of their obligations under the Plan. The Record establishes that the New NPG Group will emerge from bankruptcy as a viable, financially healthy business enterprise, unlikely to be in need of further financial reorganization. Based on the foregoing findings and conclusions, the Plan satisfies the feasibility standard of section 1129(a)(11).

HH. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Plan complies fully with the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 15.2 of the Plan provides for the payment of all statutory fees by the Debtors on or before the Effective Date. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

II. <u>Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16))</u>. Sections 1129(a)(13)-(16) are inapplicable as the Debtors (i) do not provide retiree benefits[5] (1129(a)(13)), (ii) have no

---

[5]      As defined in section 1114 of the Bankruptcy Code, "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependants, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under the Bankruptcy Code.

19

domestic support obligations (1129(a)(14)), (iii) are not individuals (1129(a)(15)), and (iv) are for-profit businesses (1129(a)(16)).

JJ.  Nonconsensual Confirmation (Cramdown) of Non-Accepting Classes (11 U.S.C. § 1129(b)). The Plan does not discriminate unfairly and is fair and equitable to each Class of Claims or Equity Interests that has not accepted the Plan, specifically Class 6 – NPG Equity Interests. Further, within their respective Classes, there exists no unfair discrimination of any of the holders of Claims or Equity Interests. Finally, the Plan does not violate the "absolute priority" rule contained in section 1129(b)(2).

KK.  Confirmation of Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan that has been filed in these Cases which has been found to satisfy the requirements of section 1129(a) of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

LL.  Principal Purpose of Plan (11 U.S.C. § 1129(d)). The Plan complies fully with the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

MM.  Satisfaction of Confirmation Requirements. The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

NN.  Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record in these Cases, the Debtors, the New NPG Group, the Prepetition Lenders, the Prepetition Agents, the DIP Lenders, the DIP Agent, and Harvest Partners, and each of their respective current or former officers, directors, members, employees, agents, attorneys, advisors, accountants, restructuring

consultants, financial advisors, and investment bankers have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

OO.    <u>Conditions Precedent to Confirmation</u>. Upon entry of this Confirmation Order, all conditions precedent to confirmation of the Plan contained in Section 11.1 of the Plan, if not waived pursuant to Section 11.3 of the Plan, shall be, and hereby are satisfied.

PP.    <u>Plan Documents</u>. The Plan Documents, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and the Court so finds.

QQ.    <u>Plan Consolidation</u>. The consolidation of the Debtors for purposes of confirmation of the Plan and making Plan Distributions is appropriate. Furthermore, no holder of a Claim or Equity Interest has objected or opposed such consolidation.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### Disclosure Statement

1.    In accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), the Disclosure Statement is hereby approved in all respects. The Disclosure Statement: (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtors' solicitation of

21

acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act, rule 506 thereunder and similar provisions of applicable state securities laws.

## Solicitation/Plan Documents

2. The solicitation of votes to accept or reject the Plan pursuant to the Solicitation Procedures (a) was appropriate and satisfactory based on the circumstances of these Cases, (b) was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and (c) is hereby approved in all respects. Notice of the filing of the Plan Documents (a) was appropriate and satisfactory based on the circumstances of these Cases, (b) was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and (c) is hereby approved in all respects.

## Ballots

3. The forms of Ballots distributed in the Solicitation Packages are in compliance with Bankruptcy Rule 3018(c), as modified, conform to Official Form Number 14, and are hereby approved in all respects.

## Notice of the Confirmation Hearing

4. Notice of the Confirmation Hearing (a) complied with the terms of the Scheduling Order, (b) was appropriate and satisfactory based on the circumstances of these Cases, (c) was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (d) is hereby approved in all respects.

MIAMI 862183 (2K)

## Confirmation of the Plan

5.      Pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby
CONFIRMED.  Any objections to the Plan are OVERRULED and denied.

6.      The consolidation described in Section 2.1 of the Plan is approved.

7.      The following are hereby incorporated by reference into and are an integral part
of this Confirmation Order: (a) the Plan, (b) the exhibits to the Plan, and (c) the Plan Documents.
The failure to reference any particular Plan Document, or any provision of a Plan Document or
the Plan in this Confirmation Order will have no effect on the Court's approval and authorization
of, or the validity, binding effect or enforceability of, the Plan and the Plan Documents in their
entirety.

## Compromises and Settlements Under the Plan

8.      The settlements and compromises set forth in the Plan, including, without
limitation, Article II of the Plan, are approved in all respects.

9.      The grouping of the Debtors pursuant to Section 2.1 of the Plan for purposes of
voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims
against and Equity Interests in the Debtors is approved in its entirety.

10.     The treatment of Intercompany Claims as provided in Article II of the Plan is
approved in its entirety.

## Classification and Treatment

11.     All Claims and Equity Interests shall be, and hereby are, classified and treated as
set forth in the Plan.  The Plan's classification scheme shall be, and hereby is, approved.

12.     The treatment of all Claims and Equity Interests as provided in the Plan and the
Plan Documents shall be, and hereby is, approved.

MIAMI 862183 (2K)

## Administrative Claims

13.     The holder of an Administrative Claim, other than (i) a DIP Claim, (ii) a Fee

Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and

not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective

Date, must file with the Bankruptcy Court and serve on the Debtors, the Creditors' Committee (if

any) and the Office of the United States Trustee, notice of such Administrative Claim within

thirty (30) days after service of Notice of Confirmation.  Such notice must include at a minimum

(i) the name of the Debtor(s) purported to be liable for the Administrative Claim, (ii) the name of

the holder of the Administrative Claim, (iii) the amount of the Administrative Claim and (iv) the

basis of the Administrative Claim.  **Failure to file and serve such notice timely and properly**

**shall result in the Administrative Claim being forever barred and discharged.**

14.     An Administrative Claim with respect to which notice has been properly filed and

served pursuant to Section 6.2(a) of the Plan shall become an Allowed Administrative Claim if

no objection is filed within thirty (30) days after the later of (i) the Effective Date, (ii) the date of

service of the applicable notice of Administrative Claim or (iii) such later date as may be (A)

agreed to by the holder of such Administrative Claim or (B) approved by the Bankruptcy Court

on motion of a party in interest, without notice or a hearing.  If an objection is filed within such

thirty (30) day period (or any extension thereof), the Administrative Claim shall become an

Allowed Administrative Claim only to the extent allowed by Final Order.  A Fee Claim in

respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b)

of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of

the Bankruptcy Court.

15.     Each Professional Person who holds or asserts a Fee Claim shall be required to

file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee

24

Application within forty (40) days after the Effective Date. **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

## Enforceability of Plan and Plan Documents

16.     Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law. Each of the Plan Documents (to the extent not already approved by order of this Court) is hereby approved. The Debtors and the New NPG Group may modify, amend or enter into the Plan Documents, without further order of the Court, in accordance with the provisions of the Plan and the Plan Documents. The New NPG Common Stock shall be governed by and subject in all respects to the NPG stockholders agreement (the "New NPG Stockholders Agreement") filed with the Plan Documents, and all holders of New NPG Common Stock shall be bound by such New NPG Stockholders Agreement regardless of whether such holders execute the New NPG Stockholders Agreement.

## Authorization to Implement the Plan

17.     Upon the entry of this Confirmation Order, the New NPG Group, the Debtors and their Affiliates are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the stockholders or directors of New NPG, the Debtors and their Affiliates, including, without limitation, the Plan Documents (as they may be amended or modified as contemplated or permitted by the Plan), prior to, on and after the Effective Date. All such actions taken or caused

25

to be taken shall be, and hereby are, authorized and approved by the Bankruptcy Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including without limitation, any action otherwise required by the stockholders or directors of New NPG, the Debtors and/or their Affiliates.

18.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of New NPG, the Debtors and/or their Affiliates or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

19.     The Initial Board of directors of New NPG is authorized to serve, is duly qualified and shall be empowered to act as permitted by applicable nonbankruptcy law on the Effective Date without further reference to the Court.

## Cancellation of Instruments and Securities

20.     Upon the occurrence of the Effective Date, all notes, instruments, certificates and other documents evidencing the OpCo Lender Claims and the HoldCo Lender Claims shall be cancelled and annulled, except for the rights of the holders of OpCo Lender Claims and HoldCo Lender Claims, respectively, to receive the treatment provided under the Plan; provided, however, that the provisions of the OpCo Credit Agreement governing the relationship of the Prepetition OpCo Agent and the OpCo Lenders, including but not limited to those provisions relating to the Prepetition OpCo Agent's rights of indemnification from the OpCo Lenders, shall not be affected by and shall survive the Plan, entry of this Confirmation Order or the occurrence of the Effective Date; provided, further, that the provisions of the OpCo Credit Agreement governing the Prepetition OpCo Agent's rights of indemnification from the Debtors (and following the Effective Date, from the New NPG Group) shall not be affected by and shall

26

survive the Plan, entry of this Confirmation Order or the occurrence of the Effective Date.

21.     On the Effective Date, the existing Equity Interests in NPG shall be cancelled.

## Vesting of Assets

22.     Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, title to all of the Assets of the Debtors and their respective Estates shall vest in the New NPG Group free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances (except for liens granted to secure the repayment of the Exit Facility). On and after the occurrence of the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the New NPG Group may operate their businesses and may use, acquire and dispose of their Assets without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code and Bankruptcy Rules.

## Retention of Causes of Action

23.     No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the New NPG Group will not pursue any and all available Causes of Action against them. The New NPG Group and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, <u>except</u> as otherwise provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors and the New NPG Group expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan by reason of entry of this Confirmation Order.

MIAMI 862183 (2K)

## DIP Facility

24.     On the Effective Date, all outstanding obligations of the Debtors to the DIP Agent and the DIP Lenders under or in respect of the DIP Facility shall be paid in full in accordance with the terms of the DIP Facility and rolled up into loans under the New Term Loan portion of the Exit Facility with an aggregate principal amount for each of the DIP Lenders under the New Term Loan equal to the amount of such DIP Lenders' loans under the DIP Facility.

## Exit Facility

25.     The provisions of the Exit Facility and Section 7.12 of the Plan are approved in their entirety.   The Debtors and the New NPG Group are hereby authorized to execute any documents required to effectuate the Exit Facility without further approval of the board of directors of the Debtors or the New NPG Group.  The Debtors, the New NPG Group or the agent under the Exit Facility (the "Administrative Agent") are authorized to file any necessary terminations and releases related to the Exit Facility without any consent from third parties.  The Exit Facility shall constitute legal, binding and authorized obligations of the New NPG Group, enforceable in accordance with their terms.  On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility shall be deemed to be approved and shall be legal, binding and enforceable liens on the collateral granted thereunder.  In furtherance of the foregoing, the New NPG Group and any other person granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such liens and security interests to third parties.  In accordance with the provisions of the Exit Facility,

28

the Administrative Agent shall not be obligated to make any payments to any Term Lender (as defined in the Exit Facility), whether of principal, interest or otherwise, until such time as such Term Lender (or its successor or assign) has delivered to the Administrative Agent a Lender Addendum (as defined in the Exit Facility), duly executed by an authorized officer of such Term Lender (or its successor or assign), and shall hold all such funds on behalf of each Term Lender until the earlier of (x) such time as such Term Lender has delivered to the Administrative Agent a Lender Addendum duly executed by an authorized officer of such Term Lender and (y) the date the Term Loans (as defined in the Exit Facility) of all Lenders (as defined in the Exit Facility) other than the Unsigned Lenders (as defined in the Exit Facility) shall have been paid in full. Each Lender shall be bound by and subject to the terms and conditions of the Exit Facility regardless of whether such Lender constitutes an Unsigned Lender at any time.

## Disbursing Agent/Distributions

26.     Upon the occurrence of the Effective Date, New NPG shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan. Pursuant to the terms and provisions of and except as otherwise provided in the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Plan Distribution Date therefor.

27.     Except as otherwise ordered by this Court or as provided herein, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by this Court.

MIAMI 862183 (2K)

28. Interest accrued after the Petition Date shall accrue and be paid on Claims only to the extent specifically provided for in the Plan, this Confirmation Order, or as otherwise required by the Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Court.

## Executory Contracts and Unexpired Leases

29. Except as otherwise provided for in the Plan, on the Effective Date, all executory contracts and unexpired leases of the Debtors shall be, and hereby are, assumed, assumed and assigned, or rejected in accordance with Article XIII of the Plan.

30. On the Effective Date, all executory contracts and unexpired leases of the Debtors shall be assumed pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in any "Schedule of Rejected Executory Contracts and Unexpired Leases" filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing; (iii) all executory contracts and unexpired leases rejected under the Plan or by order of the Bankruptcy Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to Section 13.2 of the Plan and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; and (v) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory.

31. Inclusion of a contract, lease or other agreement on any "Schedule of Rejected

MIAMI 862183 (2K)

Executory Contracts and Unexpired Leases" constitutes adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

32.     The Plan constitutes a motion to reject such executory contracts and unexpired leases set forth in any "Schedule of Rejected Executory Contracts and Unexpired Leases" filed by the Debtors with the Bankruptcy Court prior to the Confirmation Hearing, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of this Confirmation Order constitutes approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

33.     The Plan constitutes a motion to assume such executory contracts and unexpired leases assumed pursuant to Section 13.1(a) of the Plan. Entry of this Confirmation Order constitutes approval of such assumptions pursuant to sections 365(a) and (b) of the Bankruptcy Code. Any non-Debtor counterparty to an agreement designated as being assumed in Section 13.1(a) of the Plan who disputes the assumption of such executory contract or unexpired lease was required to file with this Court, and serve upon the Debtors, a written objection to the assumption no later than ten (10) Business Days prior to the Confirmation Hearing. The failure by any party to timely object to such assumption is hereby deemed a waiver of any and all objections to the assumption of executory contracts and unexpired leases designated as being assumed in Section 13.1(a).

34.     Notwithstanding any provision to the contrary in the Plan or this Confirmation

31

Order, any Claims of an AIC arising under an AIC contract that is assumed pursuant to the Plan shall be adjudicated in the manner and in the forum set forth in such assumed AIC contract.

35. Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to Article XIII of the Plan, no later than thirty (30) days after the Confirmation Date. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or Section 13.3 of the Plan, as applicable, shall be forever barred from assertion and shall not be enforceable against the Debtors, the New NPG Group, their respective Estates, Affiliates or Assets.

## Releases and Exculpations

36. The releases set forth in Sections 8.13 and 8.14 of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.

37. Except as otherwise provided in the Plan, the Disbursing Agent, together with its officers, directors, employees, agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross

32

negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained herein or in Section 12.3 of the Plan shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.

38.     None of the Debtors, the New NPG Group, Harvest Partners, the OpCo Lenders and the Prepetition OpCo Agent, in their respective capacities as such, the HoldCo Lenders and the Prepetition HoldCo Agent, in their respective capacities as such, the DIP Lenders and the DIP Agent, in their respective capacities as such, or any of their respective officers, directors, members, employees, agents, representatives, advisors, attorneys or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, (a) the filing and prosecution of the Cases, (b) the negotiation, filing and pursuit of approval of the Disclosure Statement, (c) the negotiation, filing and pursuit of confirmation of the Plan, (d) the consummation of the Plan, or (e) the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.

MIAMI 862183 (2K)

## Retention of Jurisdiction

39.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall

retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy

Code; (b) arising in or related to the Cases or the Plan; or (c) that relates to the matters set forth

in Article XIV of the Plan.

## Effect of Confirmation

40.     The rights afforded in the Plan and the treatment of all Claims and Equity

Interests therein shall be in exchange for and in complete satisfaction, discharge and release of

all Claims and Equity Interests of any nature whatsoever against the Debtors and the Debtors in

Possession, or any of their Estates, Assets, properties or interests in property. Except as

otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Claims

against and Equity Interests in the Debtors and the Debtors in Possession shall be satisfied,

discharged and released in full. Neither the New NPG Group nor the Debtors shall be

responsible for any pre-Effective Date obligations of the Debtors or the Debtors in Possession,

except those expressly assumed by the New NPG Group or any such Debtor, as applicable.

Except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be

precluded and forever barred from asserting against the New NPG Group, the Debtors, their

respective successors or assigns, or their Estates, Affiliates, Assets, properties, or interests in

property any event, occurrence, condition, thing, or other or further Claims or Causes of Action

based upon any act, omission, transaction, or other activity of any kind or nature that occurred or

came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor

were known or existed prior to the Effective Date.

41.     Except as otherwise provided in the Plan or this Confirmation Order, on the

Effective Date, without further notice or order, all Claims of any nature whatsoever shall be

34

automatically discharged forever. Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. This Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, the New NPG Group, their Estates, or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and operates as an injunction against the prosecution of any action against the Debtors, the New NPG Group or property of the Debtors or the New NPG Group or their Estates to the extent it relates to a discharged Claim.

42. Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors and the New NPG Group shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the New NPG Group and its Affiliates, the Debtors, their Assets, or any property dealt with under the Plan, any further Claim or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

35

43.     Except as otherwise provided in the Plan, the New NPG Group shall not have or be construed to have or maintain any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date of the Plan and no such liability, claim, or obligation for any acts shall attach to the New NPG Group.

44.     Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment to the fullest extent provided in section 1146(a) of the Bankruptcy Code.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Transfers made under the Plan include, without limitation, any transfer, sale, or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale, or exchange closes.  To effectuate the terms of this Confirmation Order and Section 15.13 of the Plan, this Court may enter any order necessary or appropriate to implement Section 15.13 of the Plan.

36

45.     The issuance of the New Securities and the distribution thereof in accordance with

the Plan shall be exempt from registration under applicable securities laws pursuant to section

1145(a) of the Bankruptcy Code.

46.     Subject to applicable securities laws, restrictions in the New NPG Constituent

Documents and the Plan, the New Securities are transferable without registration under the

Securities Act unless any recipient of such securities is an "underwriter" with respect to such

securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.

47.     The issuance of the New Securities and the distribution thereof in accordance with

the Plan shall be exempt from registration under the Securities Act pursuant to Section 4(2)

thereof and Regulation D promulgated thereunder.

## **Injunctions**

48.     On the Effective Date and except as otherwise provided in the Plan, all Persons

who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall

be permanently enjoined from taking any of the following actions against or affecting the New

NPG Group or its Affiliates, the Debtors or their Affiliates, the Estates, the Assets, or the

Disbursing Agent, or any of their current or former respective members, directors, managers,

officers, employees, agents, and professionals, successors and assigns or their respective assets

and property with respect to such Claims or Equity Interests (other than actions brought to

enforce any rights or obligations under the Plan):

   (a) commencing, conducting or continuing in any manner, directly or
       indirectly, any suit, action or other proceeding of any kind (including,
       without limitation, all suits, actions, and proceedings that are pending as of
       the Effective Date, which must be withdrawn or dismissed with
       prejudice);

   (b) enforcing, levying, attaching, collecting or otherwise recovering by any
       manner or means, whether directly or indirectly, any judgment, award,
       decree or order;

37

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(d) asserting any setoff; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 15.19 of the Plan.

49.     All Persons are permanently enjoined from commencing or continuing in any manner any Cause of Action, whether directly, derivatively, on account of or respecting any Cause of Action which has been released pursuant to the Plan, including pursuant to Sections 8.13, 8.14, 12.3, 15.3, 15.6, 15.7, and 15.8 of the Plan.

## Miscellaneous Provisions

50.     Nothing in the Plan or this Confirmation Order shall release, discharge, enjoin or preclude any liability of any Debtor that arises anew under any federally enforceable law or regulation as a consequence of such Debtor being the owner or operator of property or a facility after the Effective Date. Nothing in the Plan or this Confirmation Order shall release, discharge, enjoin or preclude any liability of a Debtor to the United States, except to the extent such liability constitutes a claim or debt (in each case, as defined in section 101 of the Bankruptcy Code), as of the date of confirmation of the Plan, that is subject to discharge under section 1141 of the Bankruptcy Code; provided further, that nothing in this Confirmation Order discharges any liability that is not discharged under the Plan.

51.     Any relief provided under the Plan or this Confirmation Order to non-debtors shall not release, discharge, enjoin or preclude any liability of such non-debtors to the United States under any federal laws.

52.     Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to exercise of the police or regulatory powers of the United States, the jurisdiction

of the Bankruptcy Court and any other tribunal shall not be enlarged, reduced, or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

53.    Notwithstanding any provision to the contrary in the Plan (including but not limited to Section 6.3 thereof), this Confirmation Order, and any implementing Plan Documents, nothing in the Plan shall restrict the ability of the Internal Revenue Service ("IRS") to pursue enforcement to the extent allowed by nonbankruptcy law against any non-debtors for any liabilities arising under the Internal Revenue Code, nor affect the rights of the IRS to assert setoff and recoupment and such rights are expressly preserved. To the extent any Allowed Tax Claims of the IRS are not paid in full in cash on the Effective Date, interest shall accrue on such claims from the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622.

54.    Notwithstanding any provision to the contrary in the Plan or this Confirmation Order, any Allowed Unsecured Claim that is treated in accordance with Section 5.1(e)(i) of the Plan shall have disputes adjudicated in the manner and in the forum set forth by nonbankruptcy law governing such disputes; provided, however, any dispute implicating section 1124 of the Bankruptcy Code may be determined by the Bankruptcy Court.

55.    Pursuant to the Plan, as confirmed by this Confirmation Order, the Debtors will be restructured and reorganized and, from and after the Effective Date, the reorganized Debtors will employ "fresh start accounting." The board of New NPG may retain one or more consultants to assist it in determining the "enterprise value" of the New NPG Group based on its estimated fair value. Nothing contained in the Plan, this Confirmation Order, the Plan Documents, or the Disclosure Statement shall be binding, conclusive and/or control the determination of the estimated enterprise value for the fresh start accounting under US GAAP.

MIAMI 862183 (2K)

56.     The stay in effect in the Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order, Section 15.23 of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

57.     During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors in Possession, subject to the oversight of the Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Court that are then in full force and effect.

58.     In accordance with Section 15.14 of the Plan, the Debtors will serve and publish notice of the entry of this Confirmation Order.

59.     To the extent that any provisions of this Confirmation Order may be inconsistent with the terms of the Plan or any Plan Documents, the terms of this Confirmation Order shall be binding and conclusive. To the extent that any provision of any Plan Document may be in conflict with or inconsistent with any provision of the Plan, the terms of the Plan shall govern and be binding and conclusive.

60.     As soon as practicable after the occurrence of the Effective Date, the Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on all parties entitled to receive notice in these Cases.

61. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

62. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated: Wilmington, Delaware
February 22, 2010

UNITED STATES BANKRUPTCY JUDGE

MIAMI 862183 (2K)